# Exhibit A

## \*\*\*\*\*\*\*RETURN\*\*\*\*\*\*\*

**FIREXO, INC.**                **CASE NO: 2021-CV-H 339**
   -vs
**FIREXO GROUP LIMITED**

Received this writ on the _____ day of _____, _____, at _____ o'clock ____.M., and on the _____ day of _____, _____, I served the same on the within named by _____.

RETURN OF SERVICE OF SUMMONS (PERSONAL)

    Fees          I received this summons on _____, _____
Service  $_____  at _____ o'clock _____.M. and made personal service
Mileage $_____  upon _____
Total    $_____  by locating him/her, and tendering a copy of summons and
Date _____  accompanying documents, on _____,
                                _____.

_____
Sheriff, Bailiff, Process Server

By _____
     Deputy

RETURN OF SERVICE OF SUMMONS (RESIDENCE)

    Fees          I received this summons on _____, _____
Service  $_____  at _____ o'clock _____.M. and made residence service
Mileage $_____  upon _____
Total    $_____  by locating him/her, and tendering a copy of summons and
Date _____  accompanying documents, on _____,
                                _____.

_____
Sheriff, Bailiff, Process Server

By _____
     Deputy

RETURN OF SERVICE OF SUMMONS (FAILURE TO SERVICE)

    Fees          I received this summons on _____, _____
Service  $_____  at _____ o'clock _____.M. and failed to make service
Mileage $_____  upon _____
Total    $_____  _____, _____.
Date _____

_____
Sheriff, Bailiff, Process Server

By _____
     Deputy

IN THE COMMON PLEAS COURT OF OTTAWA, COUNTY, OHIO

JOHN C. KLAEHN
CLERK OF COURTS
OTTAWA COUNTY, OHIO
2021 OCT 29 P 3: 15

| | | |
|---|---|---|
| Firexo, Inc.<br>2435 Gill Road<br>Port Clinton, Ohio 45452 | * | Case No.:<br>21-CVH-339<br>Judge Bruce Winters |
| Plaintiff,<br>vs. | * | **PRECIPIE FOR SERVICE OF PROCESS** |
| Firexo Group Limited<br>c/o Coyle White Devine,<br>Boughton Business Park,<br>Bell Lane Amersham,<br>Buckinghamshire<br>HP6 6FA UK | * | Richard R. Malone (0008885)<br>Paul T. Belazis (0030356)<br>**Malone, Ault & Farell**<br>7654 W. Bancroft Street<br>Toledo, Ohio 43617<br>Telephone - (419) 843-1333<br>Telecopier - (419) 843-3888<br>Malone@maf-law.com<br>Belazis@maf-law.com<br>Counsel for Plaintiff |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To the Clerk of Court:

Please prepare and issue a Summons for Service of the Complaint upon defendant Firexo Group Limited, c/o Coyle White Devine, Boughton Business Park, Bell Lane Amersham, Buckinghamshire, HP6 6FA UK. Please deliver a copy of the issued Summons to counsel for Plaintiff. Counsel for Plaintiff will assume responsibility for service of the Summons and Complaint upon the Defendant.

Respectfully,

Paul T Bel

Paul T. Belazis

IN THE COURT OF COMMON PLEAS
OTTAWA COUNTY, OHIO

Plaintiff
FIREXO, INC.
2435 GILL ROAD
PORT CLINTON, OH 43452

SUMMONS ON COMPLAINT
OHIO RULE (4)
OF CIVIL PROCEDURES
BY PERSONAL SERVICE

-vs-

Defendant
FIREXO GROUP LIMITED

CASE NO: 2021-CV-H 339

\* \* \* \* \* \* \* \* \* \* \*

To: FIREXO GROUP LIMITED
C/O COYLE WHITE DEVINE, BOUGHTON
BUSINESS PARK
BELL LANE AMERSHAM
BUCKINGHAMSHIRE HP6 6FA, UK

You are hereby summoned that a complaint (copy of which is hereto attached and made a part hereof) has been filed against you in this court by the plaintiff(s) named herein.

You are required to serve upon the Plaintiff's attorney, or upon the Plaintiff if (he/she) has no attorney of record, a copy of your answer to the complaint within twenty-eight (28) days after the service of this summons upon you, exclusive of the date of service. Said answer must be filed with this Court within three (3) days after service on the Plaintiff's attorney.

The name and address of the Plaintiff's attorney is as follows:

RICHARD R. MALONE
MALONE, AULT & FARELL
7654 W. BANCROFT ST.
TOLEDO, OH 43617
(419) 843-1333

If you fail to appear and defend, judgment by default will be taken against you for the relief demanded in the complaint.

JOHN C. KLAEHN
Clerk of Courts



By: _Julie Sebastiano_
JULIE SEBASTIANO
Deputy Clerk

Oct 29, 2021

IN THE COMMON PLEAS COURT OF OTTAWA, COUNTY, OHIO

JOHN C. KLAEHN
CLERK OF COURTS
OTTAWA COUNTY, OHIO

| | | |
|---|---|---|
| Firexo, Inc.<br>2435 Gill Road<br>Port Clinton, Ohio 45452 | * | Case No.: 21-CVH-339  2021 OCT 29 P 3: 15 |
| | * | Judge Bruce Winters |
| Plaintiff,<br>vs. | * | **COMPLAINT FOR DAMAGES WITH<br>JURY DEMAND ENDORSE THEREON** |
| | * | |
| Firexo Group Limited<br>c/o Coyle White Devine,<br>Boughton Business Park,<br>Bell Lane Amersham,<br>Buckinghamshire<br>HP6 6FA UK | * | Richard R. Malone (0008885)<br>Paul T. Belazis (0030356)<br>**Malone, Ault & Farell**<br>7654 W. Bancroft Street<br>Toledo, Ohio 43617<br>Telephone - (419) 843-1333<br>Telecopier - (419) 843-3888 |
| Defendant. | * | Malone@maf-law.com<br>Belazis@maf-law.com |
| | * | Counsel for Plaintiff |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PARTIES

1. Plaintiff, Firexo, Inc. (hereinafter "Plaintiff" or "Firexo"), is a Florida corporation licensed to do business in the State of Ohio.

2. Firexo's principal place of business is Port Clinton, Ottawa County, Ohio.

3. Plaintiff is in the business of selling fire extinguishers and fire extinguishing products through a sole distributorship agreement with defendant Firexo Group Limited (hereinafter "FGL").

4. Though its agreement with FGL, Firexo has the sole right to sell and/or distribute for sale in the United States fire extinguishers and fire extinguishing products manufactured by FGL.

1

5. Defendant FGL is a British company doing business in Ottawa County, Ohio.

6. Upon information and belief, FGL's principal place of business is Reading, Berkshire, in the United Kingdom.

7. FGL manufactures fire extinguishers and fire extinguishing products that are subsequently sold in the United States through FGL's exclusive distributorship agreement with Firexo.

## STATEMENT OF FACTS

8. In August 2019, Firexo entered into a contractual agreement with FGL, giving Firexo the sole right to distribution and sale of FGL fire extinguishers and fire extinguishing products in the United States.

9. In an effort to induce Firexo to enter into a sole distributorship agreement, FGL represented that its product line was "biodegradable," "nontoxic," and "environmentally friendly" and that it did not contain toxic and/or environmentally harmful chemicals found in all competing fire extinguishing products sold in the United States.

10. In addition, FGL represented that it was in the process of securing UL certification for its products and that it possessed the expertise and capacity to successfully and expeditiously secure such certification within six months.

11. In the United States, large corporate facilities, industrial facilities, and government entities, including school systems, police and fire agencies, and federal, state and local government facilities (the "Prospective Customers"), represent the largest market for sale of fire extinguishing products.

2

12. All such Prospective Customers require UL certification of fire extinguishing products.

13. The purchase of such products for the home use constitutes a significantly smaller market for sales which typically occur through distributors or retail sellers.

14. The home market end users typically do not require UL certification but certification is sometimes required by distributors and retailers who sell fire extinguishing products for home use.

15. Based on its distributorship agreement with FGL, and in reliance on FGL's representations, Firexo established relationships with distributors and retail companies throughout the United States for distribution and sale of FGL fire extinguishers.

16. Firexo also invested significant sums of money to develop this distribution business and network.

17. In early 2020, Firexo received its first shipment of fire extinguishers from FGL for distribution and sale in the United States.

18. Firexo thereafter began distribution and sale of FGL products for home use to distributors and retail companies with whom it had established relationships.

19. Firexo also made representations to its distributors, based on FGL's representations and assurances, that UL certification of its fire extinguishing products was imminent.

20. FGL products not yet distributed or sold by Firexo were stored in its Port Clinton, Ohio warehouse.

21. Starting in August 2020, Firexo detected corrosion on the threaded portion of the top spray assembly which connected to the opening of the fire extinguishing vessel on some of the FGL fire extinguisher in its Port Clinton warehouse.

22. Detailed information related to this corrosion was immediately provided to FGL, including photographs.

23. Firexo thereafter engaged in ongoing verbal and electronic communications with FGL representatives in an effort to resolve concerns related to this corrosion which represented a serious potential defect in FGL's product line, including repeated requests that FGL secure an independent third-party analysis to determine the cause of the corrosion.

24. Despite repeated efforts to address and resolve concerns related to flaws in the design and/or manufacture of FGL's fire extinguishers, FGL neglected and refused to take any action to determine the cause of the corrosion or to acknowledge that a problem existed.

25. Rather, FGL attempted to minimize the problem and insisted that Firexo should continue selling its products throughout the United States.

26.. On or about November 2, 2020, based on FGL's failure to take corrective action, Firexo suspended the sale of all FGL product lines that had shown evidence of corrosion.

27. Over 6000 fire extinguishing vessels were affected by this suspension in sales activity.

28. Although Firexo immediately notified FGL of the suspension of sales activity, FGL again declined to take any action to determine the cause of the corrosion, insisting instead that Firexo should return the product to the stream of commerce.

4

29. Efforts to resolve this dispute continued through November and December 2020 but repeated requests for an independent scientific analysis to determine the cause of the corrosion continued to be rejected by FGL

30. On or about January 19, 2021, Firexo received notification that a fire extinguisher sold to an end user had failed, with the customer reporting that the customer heard a "popping" sound during the night and discovered the top assembly handle of the fire extinguisher disconnected from the vessel and embedded in a ceiling tile.

31. The vessel, like those earlier detected by Firexo in its warehouse, showed evidence of corrosion around the threaded portion of the spray assembly where it connects to the opening of the fire extinguishing vessel.

32. FGL was immediately notified of this field failure.

33. On January 20, 2021, immediately after learning of the above referenced field failure, Firexo began notifying all distributors, retailers and other known customers who had purchased the FGL extinguishers that the use of these products should be discontinued and the products should be returned.

34. All customers who could be identified were directed to return the product, and were provided with pre-paid methods of return, and given a full refund.

35. These actions were immediately reported to FGL.

36.. Between January 22, 2021 and February 12, 2021, Firexo received four additional reports of field failures in which corrosion of the threads at the top of the extinguisher vessel had appeared to be the cause.

37. These additional field failures again were immediately reported to FGL, but, FGL again refused to acknowledge the existence of any problem, and refused to take steps to

5

determine the cause of the defect in its extinguishers, or otherwise assist in the resolution of this serious and dangerous problem.

38. In addition, FGL declined to assist in any recall effort of the extinguishers that had been sold, or to accept return of the unsold product that remained in Firexo's warehouse.

39. Based on FGL's refusal to conduct an independent investigation of the cause of the product failures, Firexo retained an independent metallurgical engineering firm to conduct a failure analysis of the corroded vessels.

40. The report of the engineers, dated February 12, 2021, confirmed a defect in the design of the vessels, which resulted in the corrosion and failure of the vessels in the field.

41. Firexo also filed a report with the Consumer Product Safety Council (CPSC) pursuant to statutory duty advising of the product recall and the surrounding circumstances. This report was supplied to FGL.

42. Only after Firexo submitted a report of product defect to the CPSC did FGL agree to accept return of the extinguishers subject to the design flaw and to repair and return the flawed extinguishers.

43. None, however, were repaired or returned and FGL has refused to provide any evidence that the cause of the problem has been corrected.

44. Firexo incurred substantial expense to purchase extinguishers from FGL for distribution and sale in the United States.

45. FGL subsequently incurred additional expense to recall and reimburse customers for return of extinguishers found to be defectively designed and unsafe and to carry out its statutory duty to report the defect and otherwise comply with obligations related to protection of consumer safety.

6

46. FGL has failed to reimburse Firexo for any expense.

47. Although FGL has represented that the design defect has been corrected, it has refused, despite repeated requests, to provide any documentation to support its representations or to permit FGL to contact any of its engineers to discuss these serious design and safety concerns.

48. Further, FGL has failed to supply Firexo with any additional supply of extinguishers for sale in the United States.

49. After making representations to Firexo and to the general public that its fire extinguishing products were "nontoxic," "biodegradable," and "environmentally friendly," FGL has now retreated from those initial representations and advised Firexo that the terms initially represented as accurately describing its products can no longer be used in their marketing or sale of the product.

50. At all times relevant hereto, FGL knew or should have known that its fire extinguishing products were defectively designed and posed a danger to end users and others in the stream of commerce but failed to advise Firexo of these design defects.

51. FGL knowingly, recklessly and/or negligently misrepresented its expertise and professional engineering capacity to develop fire extinguishing products capable of securing UL certification within promised timeframes or within any reasonable period of time.

52. After more than a year and a half, UL certification has yet to be secured and FGL has represented that another year may lapse before certification is secured.

53. Further, FGL knowingly, recklessly and/or negligently misrepresented the toxicity and environmental impact of the chemicals used in its fire extinguishing products.

54. FGL breached its contract with Firexo by failing to provide products safe for distribution and sale in the United States.

7

55. FGL breached common law and statutory duties to Firexo related to the sale of goods.

56. FGL breached common law and statutory warranties, including the warranties of merchantability and fitness.

57. FGL has breached its duty of good faith and fair dealing in its business and contractual relationship with Firexo.

58. FGL made false and misleading representation related to its professional expertise and ability to develop and manufacture safe and effective fire extinguishing products, its expertise and ability to secure UL certification, and its development of nontoxic and environmentally friendly fire extinguishing products.

59. FGL's false representations evidenced fraud and/or misrepresentation in the inducement of a contractual and business relationship with Firexo and in the subsequent execution of its contractual duties.

60. FGL fraudulently and/or negligently induced Firexo to enter into a business and contractual relationship selling its fire extinguishers and fire extinguishing products in the United States.

61. Firexo relied on the false representations of FGL to its detriment.

62. As a direct and proximate result of FGL's acts and omissions, including its acts and omissions in the design, manufacture, distribution and sale of fire extinguishing products that were defectively designed and unsafe for use, its failure to produce UL certified or other saleable fire extinguishing products as promised, its false representations related to the extent of its expertise, qualifications, and ability to design, manufacture and secure UL certification of its products, and its false representations related to the toxicity and environmental impact of its

products, FGL has breached it contractual and statutory duties to Firexo and caused Firexo to suffer permanent damage to its business relationships, industry wide reputational damage, and monetary damages that include, without limitation, expenses incurred in the initial purchase of extinguishers that proved to be defectively designed, expenses incurred in the recall and return of defectively designed extinguishers, and loss of past, present and future profits.

63. As a direct and proximate result of FGL's acts and omissions, including but not limited to multiple false representations on which Firexo reasonably relied, Firexo has suffered monetary losses that include, without limitation, past, present and future loss of profit, along with ongoing consequential damages.

## CLAIMS FOR RELIEF

64. FGL's acts and omissions give rise to a claim for breach of contract.

65. FGL's acts and omissions give rise to a claim for breach of the waranties of merchantability and fitness.

66. FGL's acts and omissions give rise to a claim for breach of the duty of good faith and fair dealing.

67. FGL's acts and omissions give rise to claims for fraud and misrepresentation.

## PRAYER FOR RELIEF

Wherefore, plaintiff prays for an award of damages in an amount to be proven at trial, together with attorneys' fees and the costs of these proceedings.

Respectfully submitted,

*Richard R. Malone / PTB*
Richard R. Malone
Paul T. Belazis
Counsel for Plaintiff Firexo, Inc.

9

## JURY DEMAND

Plaintiff hereby demands trial by jury of all issues and claims so triable.

*Richard R. Malone IPB*
Richard R. Malone