

jblake@calfee.com  
614.621.7789 **Direct**

**Calfee, Halter & Griswold LLP**  
Attorneys at Law

1200 Huntington Center  
41 South High Street  
Columbus, Ohio 43215-3465  
614.621.1500 **Phone**

January 21, 2022

**VIA EMAIL**

Paul T. Belazis  
Malone, Ault & Farell  
7654 W. Bancroft Street  
Toledo, OH 43617  
belazis@maf-law.com

Aaron M. Bernay  
Frost Brown Todd LLC  
3300 Great American Tower  
301 East Fourth Street  
Cincinnati, OH 45202  
abernay@fbtlaw.com

Re:   Firexo Group Limited Matters

Messrs. Belazis and Bernay:

As you know, this firm represents Firexo Group Limited ("FGL") in the two matters currently pending in the U.S. District Court for the Northern District of Ohio, Case Nos. 3:21-cv-2266 and 3:21-cv-2336 (the "Firexo Matters"). We are writing you pursuant to Judge Zouhary's Civil Case Management Procedures, which require the parties to engage in preliminary meet-and-confer obligations before filing a motion to dismiss. As set forth below, the claims filed against FGL in the Firexo Matters are legally deficient and subject to dismissal. We do not believe these deficiencies can be cured through amendment to either of the Complaints.

**A.   The Courts of England and Wales have exclusive jurisdiction over the Firexo Matters.**

The Firexo Matters involve claims against FGL for breach of contract, fraud, and violations of various federal and state securities laws. None of those claims has merit. The claims are not only meritless, they are also governed by the exclusive jurisdiction clause in the Joint Venture Agreement (the "JVA"). That clause unambiguously provides that any dispute between the parties related to the JVA must be brought in the courts of England and Wales:

> Each party irrevocably agrees that the courts of England and Wales shall have exclusive jurisdiction to settle any dispute or claim that arises out of or in connection with this agreement or its subject matter or formation.

JVA, Section 32.2, attached hereto as Exhibit A. Thus, if a claim "arises out of" or is "in connection with" the subject matter of the JVA, the courts in England and Wales have exclusive jurisdiction. Undoubtedly, all of the claims raised in the Firexo Matters "arise out of" or are "in connection with" the JVA.

The JVA was entered into by and between Scot Smith and FGL in August 2019. The purpose of the JVA was to form a Joint Venture Company—later formed as Firexo, Inc. Pursuant to the JVA, the new entity was to sell and distribute FGL's fire extinguishing products within the United States. *Id.* at Section 2.1. In exchange for a £1.7 million investment, Scot Smith became the Investor Director for Firexo, Inc. and controlled 70% of Firexo, Inc's shares. *Id.* at 3.4 and 6.1. The JVA then goes on to extensively cover the operation of the business, its management, and the parties' rights and obligations respecting the shares of Firexo, Inc.

### 1. The breach of contract matter is covered by the JVA.

The JVA applies to all of the claims in the breach of contract matter (Case No. 3:21-cv-2336). The Complaint specifically references the JVA numerous times. *See, e.g.*, Compl. at ¶¶ 3, 4, 7, 8, 9, 15, 59, 60, and 62. Indeed, Firexo, Inc. alleges in its Complaint that the JVA gave "Firexo the sole right to distribution and sale of FGL fire extinguishers and fire extinguishing products in the United States." *Id.* at ¶ 8. Firexo, Inc. then bases its entire Complaint on the purported ways in which FGL thwarted Firexo's ability to sell and distribute the products. Clearly, the entire Complaint is connected to or arises out of the JVA and is therefore subject to the exclusive jurisdiction of the courts in England and Wales.

As for the specific counts, Firexo alleges that FGL breached the JVA (Count I) and then claims that FGL breached its warranties supposedly covering the products described in the JVA (Count II). Likewise, the breach of the duty of good faith and fair dealing (Count III) relates back to the claim in Count I and, in any event, the duty of good faith and fair dealing does not create an independent cause of action under Ohio law. *See, e.g.*, *JP Morgan Chase Bank, N.A. v. Horvath*, 862 F. Supp. 2d 744, 751 (S.D. Ohio 2012) (citing *Krukrubo v. Fifth Third Bank,* 10th Dist. Franklin No. 07AP-270, 2007-Ohio-7007, ¶ 19).

As for the fraud claim (Count IV), that is plainly barred by Ohio's economic loss rule because it does not exist independent of the contract. *See, e.g.*, *Mohan Jain v. Omni Publ'g, Inc.*, 8th Dist. Cuyahoga No. 92121, 2009-Ohio-5221, ¶ 27 (citing *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 151 (9th Dist. 1996)); *Stancik v. Deutsche Nat'l Bank*, 8th Dist. Cuyahoga No. 102019, 2015-Ohio-2517, ¶ 40 (June 25, 2015). Specifically, "[u]nder Ohio law . . . claims for fraud are not permitted when the damages resulting from the alleged fraud are not distinct from the damages available under a breach of contract claim*." Parma Cmty. Gen. Hosp. v. Premier Anesthesia of Parma*, 2011 U.S. Dist. LEXIS, *9 (N.D. Ohio Feb. 4, 2011).

Accordingly, all of the claims in the Complaint are either subject to the exclusive jurisdiction clause in the JVA or are not cognizable under Ohio law.

    **2.**    **The securities matter is covered by the JVA.**

Just like the breach of contract matter discussed above, the securities matter (Case No. 3:21-cv-2266) is also subject to the exclusive jurisdiction clause in the JVA. The securities Complaint indeed focuses on the circumstances and communications that led to Mr. Smith and Firexo entering into the JVA and Mr. Smith's investment in Firexo's U.S. distributor—Firexo, Inc. *See* Compl. at ¶¶ 2–3, 14–18, 23, 25. That investment resulted in the formation of Firexo, Inc. and is the purpose for the joint venture and the JVA. *Id.* at ¶ 18. Mr. Smith lists various complaints regarding the joint venture and compares them to complaints that other European joint venture partners have with FGL. *Id.* at ¶¶ 23, 25. These complaints about the joint venture and JVA form the basis for Mr. Smith's purported fraud and securities claims. As a result, there is no doubt that the securities matter is a "dispute or claim that arises out of or in connection with [the JVA] or its subject matter or formation" under the JVA's exclusive jurisdiction clause. JVA, Section 32.2.

The securities matter is simply an attempt for a third bite at the apple. The first attempt is litigation pending in the High Court in London (as set described below). The second attempt is the breach of contract matter described herein. The securities matter is the third attempt, and it tries to shoehorn Mr. Smith's complaints about the joint venture and JVA into federal and state securities claims. That shoe does not fit, however, because all of Mr. Smith's complaints about the joint venture and JVA relate to his investment in Firexo, Inc., *not* his separate investment in FGL. There is very little detail about the circumstances that led to his investment in FGL. Indeed, none of the alleged misrepresentations forming the basis for the securities claims are connected to the investment in FGL, as the Complaint only connects them to the JVA and formation of Firexo, Inc. As set forth below, there are no facts alleged that support fraud-based claims under the state and federal securities laws, let alone facts sufficient to satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(B) and the Private Securities Litigation Reform Act (the "PSLRA"). At bottom, the securities matter is Mr. Smith's attempt to transform his breach of contract claims relating to Firexo, Inc. into state and federal securities claims relating to investment in another entity (FGL), with no factual or legal support.

**B.**    **There is already litigation pending in England that involves all of the issues raised in the Firexo Matters.**

As you are no doubt aware, there is already litigation pending in England between FGL and Mr. Smith (the "UK Litigation"). That litigation predates the Firexo Matters by several months and involves all of the same issues. Indeed, the UK Litigation details the negotiation of the JVA, the formation of Firexo, Inc., and the shares acquired by Mr. Smith during that process. *See* Defendants' Defence and Counterclaim at paras. 11–28, attached hereto as Exhibit B. In paragraph 2.2 of Mr. Smith's Defence and Counterclaim, Mr. Smith also directly challenges the parties' differing interpretations of the JVA. *Id.* at para. 2.2. The interpretation of the JVA, whether FGL breached any of its obligations under the JVA, and Mr. Smith's entitlement to shares of either Firexo, Inc. or FGL are all at the fore of the UK Litigation and clearly arise out of the same subject matter as the Firexo Matters pending in the Northern District of Ohio.

3

With respect to the securities matter, contrary to Mr. Bernay's statement during the initial conference with the Court that the UK Litigation has nothing to do with Mr. Smith's investment in FGL, the Defence and Counterclaim in the UK Litigation make clear that the *entirety* of that litigation is about Mr. Smith's investment in FGL. The Defence and Counterclaim repeatedly allege that Mr. Smith is entitled to increase his ownership of FGL to up to 44% of the entire issued capital of FGL pursuant to the terms of the JVA.[1] These allegations highlight the risk that the UK Litigation and the securities matter produce inconsistent judgments on securities issues. They also demonstrate that Mr. Smith's allegations in the securities matter are nonsensical. To wit, in the securities matter, Mr. Smith seeks to *rescind* his purchase of FGL shares or, in the alternative, Mr. Smith seeks damages relating to his purchase of FGL shares, on the basis that Mr. Smith was allegedly fraudulently induced by FGL into purchasing FGL shares. In the UK Litigation, under his tortured interpretation of the JVA, Mr. Smith seeks to *increase* his existing ownership in shares of FGL—the same company that he claims fraudulently induced him to purchase its shares in the securities matter. To be clear, in this country, Mr. Smith seeks to return his FGL shares on the basis that FGL defrauded him into purchasing them. In another country, Mr. Smith seeks to become up to a 44% owner of the entire issued capital of FGL, notwithstanding the alleged FGL fraud. The theories cannot possibly stand together.

Moreover, the claims in the securities matter risk infringing upon extraterritoriality principles. The agreements underlying Mr. Smith's purchase of FGL are governed by the laws of England and Wales and/or reference various statutes, regulations and legislative acts of the United Kingdom. *See* Compl. at ¶ 20 (i.e., Application Form; Financial Promotion Certificate). This makes logical sense because the FGL shares are foreign securities that are not traded on a domestic market in the United States. As set forth above, Mr. Smith is indeed litigating claims against FGL in the High Court in London relating to his investment in FGL, which is the court in which the securities claims should be litigated due to the exclusive jurisdiction provision of the JVA and the provisions of the agreements underlying Mr. Smith's purchase of FGL shares.

There is also an entire section in Mr. Smith's Counterclaim in the UK Litigation titled "Product Issues." *Id.* at paras. 69–71. That section details the precise facts and allegations highlighted by Firexo, Inc. in the breach of contract matter. While Mr. Smith states that he is not specifically asserting the so-called "Product Issues" in the UK Litigation, it is virtually impossible to separate them from the wide-ranging allegations in the rest of the Defence and Counterclaim. *Id.* at para. 70.2. Most notably, Mr. Smith makes the following statement in the Defence and Counterclaim, which makes very clear that he is forum shopping in multiple jurisdictions, testing international waters on his products liability claims to see if anything floats: "At present, the Defendants do not seek any relief in relation to the Product Issues in these proceedings, *although they reserve their right to seek appropriate relief in the future should it be considered appropriate to do so*." *Id.* at para. 70. At best, he is seeking an advisory opinion in the Northern District of Ohio on how the court might rule if it could ignore the exclusive jurisdiction clause in the JVA. At worst, he is seeking to determine which court will provide him with the best decision on products liability

---

[1] Mr. Smith's co-Defendant in the UK Litigation also claims an ownership interest in the FGL shares. But it is unclear from the pleadings how co-Defendants allocate their purported ownership interest.

issues by simultaneously litigating them in each court, while reserving his right to litigate them in additional unnamed jurisdictions. To the latter point, Mr. Smith goes as far as to state in the UK Litigation that the "Product Issues are likely to be better determined in a *future* action before an appropriate court (in *whatever jurisdiction*), at which all relevant parties may be properly represented." *Id.* That cannot possibly be the Ottawa County Court of Common Pleas (where these spurious claims were brought) or the U.S. District Court for the Northern District of Ohio, given the pending UK Litigation and the JVA's exclusive jurisdiction clause.

### C. The securities matter fails to state a claim.

In addition to the array of jurisdictional and substantive flaws noted above, the securities matter fails to state a claim upon which relief can be granted for numerous reasons, which are set forth below in summary fashion.

- *Twombly/Iqbal* pleading standards.

    o Mr. Smith's purported claims lack factual support and instead rely on formulaic recitations of statutory provisions and elements of the causes of action.

    o Counts Five, Six and Seven alleging violations of Ohio securities laws lack factual support sufficient to state a claim that is plausible on its face. Listed here are several non-exhaustive examples that demonstrate Mr. Smith's recitation of statutory language under Ohio securities laws is insufficient to withstand a motion to dismiss these claims. The Complaint does not allege that FGL delivered any prospectus, report or other document relating to FGL shares, earnings, or accounts, that were false in any material respect, and thus Count Five is subject to dismissal. Similarly, the Complaint does not allege any facts in support of the conclusory statement that FGL sold non-exempt securities that were not registered, nor that FGL made, recorded or published any report of a securities transaction that was false, nor that FGL coerced, misled or manipulated any person involved in the preparation or review of its audited financial statements in connection with the purchase of securities that rendered the financial statements materially misleading. And thus Counts Six and Seven are subject to dismissal.

- Failure to plead common law fraud and Ohio securities fraud claims with particularity under Rule 9(b).

    o Counts One and Two do not identify facts supporting the basic elements of a fraud claim (i.e., who, what, when, where and how alleged misrepresentations were made), let alone satisfy the pleading standards of Federal Rule of Civil Procedure 9(b). *See Cole v. Harris*, No. 4:09-cv-1270, 2010 WL 11681664, *3-5 (N.D. Ohio Jan. 4, 2010) (dismissing fraud claim for failure to meet requirements of Rule 9(b)).

5

- o Counts Six and Seven alleging fraud-based violations of Ohio securities laws are subject to Rule 9(b) pleading standards and Mr. Smith makes no attempt to satisfy such heightened pleading standards. *See, e.g.*, *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs., LLC*, 813 F. Supp. 2d 871, 8789 (S.D. Ohio 2011) (dismissing claim under O.R.C. § 1707.43 for failure to plead with particularity under Rule 9(b)), *aff'd*, 700 F.3d 829 (6th Cir. 2012).

- Failure to plead federal securities fraud claims with particularity under Rule 9(b) and PSLRA heightened pleading standards.

  - o In addition to failing to meet the pleading requirements of Rule 9(b), Counts Three and Four make no effort to satisfy the heightened pleading standards of the PSLRA (i.e., no identification of specific misrepresentations, the person(s) who made each alleged misrepresentation and the person(s) to whom each alleged representation was made, the method by which the alleged misrepresentations were communicated, when and where the misrepresentations were made, the reasons why each statement was misleading, or any facts giving rise to a strong inference of scienter). *See, e.g.*, *Tullis v. UMB Bank, N.A.*, 464 F. Supp. 2d 725, 732 (N.D. Ohio 2006) (Zouhary, J.) (dismissing Section 10(b) claim for failure to meet PSLRA heightened pleading standards); *see also Cole v. Harris*, No. 4:09-cv-1270, 2010 WL 11681664, *5–6 (N.D. Ohio Jan. 4, 2010) (dismissing with prejudice federal securities claims for failure to meet heightened pleading standards of Rule 9(b) and PSLRA, which supplement Rule 9(b) pleading standards).

- Failure to plead other basic elements of Section 10(b) and Section 17(a) claims.

  - o Counts Three and Four make no attempt to plead factual support for the basic elements of a Section 10(b) claim (i.e., reliance, materiality, economic loss, transaction causation/loss causation). They merely track statutory language and formulaic recitations of the elements of this cause of action. *See, e.g.*, Compl. at ¶ 41. The same is true of the purported Section 17(a) claim. *Id.* at ¶ 42.

**D.  The PSLRA automatic stay applies to both Firexo Matters**

Both the securities matter and the breach of contract matter are subject to an automatic stay of discovery under the PSLRA during pendency of FGL's forthcoming motion to dismiss. The PSLRA provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss." 15 U.S.C. § 78u-4(b)(3)(B); 15 U.S. § 77z-1(b)(1). The PSLRA automatic stay "is triggered by the mere indication by defense of its intention to file a motion to dismiss." *In re Carnegie Int'l Corp. Sec. Litig.*, 107 F. Supp. 2d 676, 683 (D.Md. 2000) (collecting cases). The automatic stay applies to state law claims in addition to the federal securities claims. *See SG Cowen Sec. Corp. v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 189 F.3d 909, 913, n. 1 (9th Cir. 1999) (PSLRA automatic stay applies to state law claims because the stay "would be rendered meaningless if securities plaintiffs could circumvent the stay simply by asserting pendent state law claims in

federal court in conjunction with their federal law claims."); *see also Riggs v. Teemer*, No. 03-Civ-4014-MP, 2003 WL 21345183, *1 (S.D.N.Y. June 9, 2003) (PSLRA stay applies equally to related state law claims).

Where a federal securities action and a related state law action are proceeding in parallel, federal courts will stay all discovery in the state law action pursuant to the PSLRA automatic stay to prevent plaintiffs from colluding and using state law actions to evade the stay imposed by the PSLRA in federal securities actions. *See, e.g.*, *In re Cardinal Health Inc. Sec. Litig.*, 365 F. Supp. 2d 866, 870, 872, 874-77 (S.D. Ohio 2005) (citing 15 U.S.C. § 78u-4(b)(3)(D)) (granting stay of discovery in state court action during pendency of motion to dismiss federal securities claims to prevent circumvention of PSLRA automatic stay).

Mr. Smith is the plaintiff in one action and controls the actions of the plaintiff in the other. Both complaints contain claims based on the same facts and the same alleged conduct (i.e., alleged representations about the certification of Firexo products and their environmental impact and alleged failures to provide accurate information regarding those issues). Because both plaintiffs seek the same information from FGL, staying all discovery and other proceedings in the breach of contract action during the pendency of FGL's forthcoming motion to dismiss is necessary to prevent circumvention of the PSLRA stay.

We look forward to receiving your response to the issues raised above. In all likelihood, we anticipate that we will not be able to resolve these issues prior to filing a motion to dismiss. However, we understand the Court's direction requiring us to meet-and-confer in good faith prior to the phone conference scheduled for February 7, 2022. Once you have a chance to review our letter and prepare your written response, please let us know when you are available for a call, which we can conduct jointly or one-on-one.

Respectfully,

/s/ *Jason J. Blake*

Jason J. Blake

cc: Mitchell Blair (mblair@calfee.com)
    David Bules (dbules@calfee.com)
    Richard Malone (malone@maf-law.com)

Enclosures