

**Aaron M. Bernay**
Member
513.651.6831 (t)
513.651.6981 (f)
abernay@fbtlaw.com

February 3, 2022

**VIA ELECTRONIC MAIL (jblake@calfee.com)**

Jason J. Blake
Calfee, Halter & Griswold LLP
1200 Huntington Center
41 South High Street
Columbus, Ohio 43215-3465

    Re:   *Smith v. Firexo Group Limited,* **Case No. 3:21-cv-02266-JZ (N.D. Ohio)**

Dear Jake:

    I write on behalf of Plaintiff Scot Smith in relation to the securities claims brought against Defendant Firexo Group Limited ("FGL") in the above-referenced proceeding. Paul Belazis will write under separate cover concerning Firexo Inc.'s litigation against FGL (Case No. 3:21-cv-2336 (JZ)).

    Before turning to the major bullet points outlined in your January 21 letter ("Letter"), I want to address a factual issue. Your Letter improperly conflates Mr. Smith's investment in Firexo Inc. with his standalone share purchases in FGL. These are individual transactions that occurred at different times with separate consideration and attendant documentation. They are not governed by a single agreement, as FGL claims, nor do any of Mr. Smith's defenses and counterclaims in the English litigation concern his individual stock purchases of FGL. While the actions before this Court and the High Court of England share a certain factual nexus, the cases involve different parties (in terms of the Firexo Inc. action) and different claims based on different agreements and laws. This is not a situation where Mr. Smith made a single investment in a single entity governed by a single agreement.

    As such, nothing in the parties' Joint Venture Agreement ("JVA") governs or relates to Mr. Smith's standalone purchases of FGL shares. For Fed. R. Civ. P. 9(b) and 12 purposes, the Complaint (Dkt. 1) makes clear that there are two key misrepresentations at issue – that Firexo carried certain European accreditations (that it did not and still does not possess) and that Firexo is environmentally friendly (which it is not). These misrepresentations permeate all of Mr. Smith's causes of action and are set out in sufficient detail. To the extent that Firexo demands additional details, Mr. Smith will seek leave to file a First Amended Complaint.

Jake Blake, Esq.
February 3, 2022
Page 2

I. The JVA Does Not Govern the Securities Action

The JVA does not govern Mr. Smith's purchase of FGL securities. Following his investment in Firexo Inc. on August 3, 2019, Mr. Smith purchased 2,964 ordinary shares of FGL in four tranches over the span of thirteen months (September 2019 through August 2020). Complaint at ¶ 19. Mr. Smith's subscriptions involved separate consideration and documentation (*i.e.*, Application Form for Subscriptions in Sterling and Financial Promotion Certificate) from the JVA agreement. *Id.* at ¶ 20. Simply because Mr. Smith decided, following his initial investment in Firexo Inc., that he wished to purchase shares of FGL itself, does not mean that the existing JVA applies to the subsequent transactions. Nothing in the JVA contemplates or concerns Mr. Smith's purchase of individual shares of FGL. Therefore, Mr. Smith's standalone purchase of FGL shares is not a claim "arising out of or in connection with [the JVA agreement] or its subject matter."

Moreover, the Securities Action does not represent a third bite of the apple. (Letter at 3.) FGL pigeonholes Mr. Smith's securities-based allegations as solely concerning the joint venture between him and FGL. While FGL's misrepresentations undoubtedly impacted Firexo Inc., they also induced Mr. Smith to directly invest in FGL. Issues with Firexo products and FGL's misrepresentations have a material impact on FGL's value since FGL exists to manufacture and market Firexo fire suppression products. Accordingly, FGL's misrepresentations were not specific to Firexo Inc. but inherent to FGL itself.

II. The English Case Does Not Concern the Matters Before This Court

As noted in Mr. Belazis' letter, the High Court of England action references defect issues with Firexo products but does not contain an actionable claim arising from those defects. Similarly, Mr. Smith's individual share subscriptions in FGL are not at issue in the High Court action. In fact, Mr. Smith's individual holdings are not mentioned in the November 12, 2021 Defence and Counterclaim or anywhere else in the proceeding for that matter. Initiated by FGL, the High Court of England case turns solely on a question of contractual interpretation related to the JVA's allocation of shares in the event FGL pursues an initial public offering.

Mr. Smith's litigation position in England is entirely consistent with his Ohio-based securities claims. Mr. Smith's defenses (again, Mr. Smith did not bring the English action) and counterclaims concern his rights under the JVA and FGL's attempt to dilute his joint venture investment through its calculation of shares due joint venture partners in the event of an IPO. That Mr. Smith pleads in the alternative to rescind his standalone FGL shares in the above-referenced proceeding does not conflict with his assertion of rights in the English action.

To be clear, FGL does not appear to argue that these proceedings should be stayed pending resolution of the High Court of England action. Likewise, FGL does not forward any arguments that this Court lacks jurisdiction over it or that it will move to dismiss on *forum non conveniens* grounds. If FGL intends to pursue these procedural defenses and motions, please let us know so that we can discuss further ahead of our next status call with the Court on February 7.

Jake Blake, Esq.
February 3, 2022
Page 3

        III.    Mr. Smith's Complaint Satisfies the Heightened Pleading Standards of Rule 9(b) and the PLSRA

The gravamen of FGL's argument that Mr. Smith's Complaint fails to state a claim upon which relief can be granted stems from an alleged lack of factual support surrounding FGL's misrepresentations. The Complaint alleges two critical misrepresentations made by FGL that are incorporated into each of the causes of action.

The first misrepresentation concerns FGL's statements that Firexo received European EN3 accreditation. Complaint at ¶ 2. These statements were made after March 2019 and prior to Mr. Smith signing the JVA in a series of e-mails, phone conversations, in-person meetings, and formal presentations. *Id*. at ¶¶ 13, 14. In the communications, FGL supported Firexo's distinctiveness by stating that Firexo received EN3 accreditation based on its ability to extinguish all six fire classifications (A through F/K). *Id*. at ¶ 15. FGL specifically claimed in its spring/summer 2019 investor presentation that Firexo received EN3:7:2004 accreditation at some point in late 2018 or early 2019. *Id*. As Mr. Smith now knows, the Firexo products never received EN3 accreditation.

Likewise, FGL touted Firexo as an eco-friendly product made with natural, water-based, non-toxic, biodegradable ingredients and containing no ozone depleting chemicals, characteristics that separated the product from its competition. Complaint at ¶ 17. These claims have since disappeared from Firexo materials and its website, prompting inquiries from FGL's joint venture partners over the composition of Firexo's fire suppressant formula. *Id.* at ¶ 25. When one partner informed FGL that it would conduct independent testing, FGL sent the partner a cease and desist letter, arguing that such testing violated the confidentiality provisions of its joint venture agreement. *Id*.

The Complaint also alleges that Smith relied on these material misstatements to his detriment. Complaint at ¶ 28. To the extent that FGL believes additional detail is required to forego filing a motion to dismiss, Smith can amend his Complaint to contain the following:

- Mr. Smith received Firexo's Spring/Summer 2019 investor presentation by e-mail on June 16, 2019 from Mr. Breith. Slide 13 specifically states that Firexo is "also accredited with IS09001, ISO14001, ISO 45001, EN3:7:2004, and AI:2007." A timeline included on Slide 26 implies that Firexo had secured EN3 accreditation at some point in late 2018 or early 2019. Slide 16 claims that Firexo is biodegradable, more environmentally friendly, made from natural ingredients, safe to the environment, and non-toxic. (*See* Exhibit A, attached hereto to this letter.)

- In a July 17, 2019 e-mail to Mr. Smith and others, Mr. Breith repeated and highlighted the representation that Firexo was made from natural ingredients, more environmentally friendly, biodegradable, and non-toxic. (*See* Exhibit B.)

Jake Blake, Esq.
February 3, 2022
Page 4

- Mr. Breith provided an in-person presentation to Mr. Smith in Port Clinton, Ohio on January 11, 2020. In a section of the accompanying slide deck (Slide 81) titled "Legislation, Products & EN3," Mr. Breith wrote that "We have all available certifications in Europe with CNPP, CNPP are probably the largest fire testing centre in Europe, and, used to perform UL tests for them." The presentation also repeated claims that Firexo was environmentally friendly, non-toxic, and biodegradable. (*See* Slides 75, 76, and 108 at Exhibit C.)

- In an investor update for the fiscal year ending December 31, 2019 sent by Mr. Breith to Mr. Smith on May 29, 2020, Slides 2 and 3 mention delays and inabilities to obtain EN3 accreditation in 2018. However, Slide 3 states that "We are proud to say that all fire testing and accreditations were passed in February [2019]." (*See* Exhibit D.)

In addition to extant allegations in the Complaint, these additional details provide more than sufficient support under Fed. R. Civ. P. 9(b) and 12 for Mr. Smith's claims.

As to FGL's contention that Counts Five, Six, and Seven lack adequate factual support, Mr. Smith is willing to add additional detail in an amended complaint. The presentations and e-mails referenced *supra* are statements and documents respecting the business of FGL that contain material, false representations made with knowledge of their falsity. R.C. § 1701(A)(1). In terms of Counts Six and Seven, it would be helpful to understand why FGL believes the securities at issue were exempt from registration with the Ohio Division of Securities.

IV. Should FGL Persist with a Motion to Dismiss, Mr. Smith and Firexo Inc. Will Not Oppose a Stay of Both Proceedings

Lastly, I have confirmed with Mr. Belazis that should FGL persist and file a dispositive motion in the securities case, neither Mr. Smith nor Firexo Inc. would oppose a stay of discovery in both proceedings under the PLSRA pending resolution of the motion to dismiss.

I look forward to meeting and conferring with you and Mr. Belazis on this matter. Should you have any questions in the interim, please feel free to contact me.

Very truly yours,

*/s/ Aaron M. Bernay*

Aaron M. Bernay

cc: Paul Belazis (belazis@maf-law.com)
Michael Blair (mblair@calfee.com)
David Bules (dbules@calfee.com)
Richard Malone (malone@maf-law.com)

0148075.0746242   4894-4848-3084v2