# Exhibit 07

## (D: 1-26)

**From:**Dave Breith
**Sent:**Wed, 1 Sep 2021 09:31:33 +0000
**To:**Dave Breith
**Subject:**Shareholder Circular
**Attachments:**New Proposed Articles of Association - Firexo Group Limited.pdf, Voting Resolution to Amend Articles of Firexo Group Limited.pdf

Dear Shareholder,

**Re: Proposed Initial Public Offering (IPO) of Firexo shares**

Introduction

As you are aware from previous investor updates, Firexo has been exploring the possibility of being listed as a public company on a recognised stock exchange since the start of the year.  After many months of research and board deliberation, I am delighted to report that Firexo has now chosen its preferred stock exchange; namely the NASDAQ Capital Markets Exchange in New York.

You are also aware from my investor updates that, through the huge potential offered by our unique and patented fire fighting formula, Firexo is aiming to become the market leader, globally, in the provision of life saving fire safety equipment. This is an ambitious quest but one which I believe in vehemently.

To deliver our global business plan, Firexo needs 'ready' access to the funds needed to 'scale up' production from our humble manufacturing origin in Oxfordshire.  As a publicly listed company on the NASDAQ, Firexo will have that 'ready' access to these funds.

Additionally, the proposed public listing will give each shareholder an opportunity to 'exit' through the sale of shares on a recognised stock exchange.  All in all, I believe this opportunity is a truly exciting proposition for Firexo and for all its shareholders.

Process overview

The IPO is planned over the coming months.  Subject to ongoing due diligence requirements, we have secured the services of an investment bank in New York to 'underwrite' the proposed transaction with a view to raising $15,000,000 for the company's global expansion plans.

The first step is to file an 'S1' Registration Statement with the United States Securities Exchange Commission in Washington D.C.  That document should be filed very soon and, subject to review and approval by NASDAQ, I am planning an investment 'Roadshow' (without a 'Road' sadly – just Zoom!) in the fortnight preceding the proposed public listing.  With a fair wind behind us, it is possible that the proposed IPO will be completed in this year.

Nothing in life is guaranteed, least of all returns on investment.  However, I can assure you that I will give nothing less than my absolute best to try and lead the business to success for the benefit of every single shareholder.

Advice from our IPO advisors

Firexo is being advised, principally, by Wilson Bradshaw LLP (WB).  WB is a firm of attorneys, based in Los Angeles and New York, which specialises in IPOs.  On this side of the Atlantic, Firexo is also being advised and assisted by BDP Pitmans LLP on legal aspects of the proposed transaction and Shipleys LLP on the accounting and tax aspects.

In very short summary, the advice received is that it should be a US corporation and not a UK company which should be listed on the NASDAQ.  This is based on the preference of the US investment community, where we aim to raise $15,000,000.  We have set up two corporations in the USA as 'special purpose vehicles' to facilitate the proposed IPO.  One of the corporations will be utilised if, and only if, the IPO transaction is completed.  The other vehicle will provide a temporary 'US' home for shareholders pending completion of the IPO.  If for any reason the IPO transaction becomes abortive, our stake as shareholders in Firexo's business will be 'reversed' out of the temporary vehicle back into the UK.

In addition to the above, we have been advised to re-organise the current Group structure in order to separate our various divisions of business activity and give better protection to the value of our intellectual property (patents/trade marks) and trade secrets.  Again, in very short summary, three new UK companies have been set up – Firexo Holdings Limited, Firexo COTM Limited and Firexo SCM Limited.  Firexo Holdings Limited will be the parent company responsible for all of the various divisions; Firexo COTM Limited will hold Firexo's intellectual property assets; Firexo SCM Limited will be responsible for our supply chain management and will ensure that our trade secrets *remain* secret as the exclusive acquirer of the 'ingredients' to Firexo's patented formula.

The proposed corporate restructuring will not alter, in any way, your current rights as a shareholder.  The plan is for current shares to be exchanged, like for like, in Firexo Holdings Limited initially (ie the new UK based holding company).  This will be followed by another share exchange into Firexo Holdings Corporation in the USA, and then, shortly before IPO, into the ultimate IPO Company, Firexo Corporation.  Through these share exchange transactions (a) you will at all times retain the same percentage shareholding, and (b) the entity in which your shares are held will always be the 'TopCo' within the Firexo group of companies.

<u>Facilitation</u>

To facilitate the proposed transaction, it is necessary to amend Firexo's articles of association.  The change we need is for the incorporation of what are called 'drag along' provisions.  In short, these provisions provide for a situation where all shareholders are moved through the said corporate entities towards the intended IPO goal.  Furthermore, through the series of share exchanges referenced above (where shareholdings are mirrored, like for like, through the chain) is necessary for:

1. the retention for shareholders of the benefits conferred by the Enterprise Investment Scheme (EIS); and
2. the various share exchanges to be exempt from Stamp Duty (which would otherwise be payable by Firexo at the rate of 0.5% of the entire share value).

To amend the articles of association, a special resolution needs to be passed, which requires shareholders holding at least 75% of the issued shares to support the resolution.  I enclose the written resolution (and accompanying draft articles of association) for you to consider and return with your vote either for or against the resolution.

Please note that you have until 5pm on 17th September 2021 to return the completed and signed resolution to intendedipo@firexo.com.  The written resolution will be treated as being passed as soon as the owners of 75% of the company's shares have voted in favour of the resolution, which may occur before the 17th September 2021 deadline.

If you have any questions about the contents of this letter, these can also be communicated through intendedipo@firexo.com.  Depending on the volume of questions raised by shareholders, it may be that a Q&A Zoom conference would be a useful forum for discussion – I will keep you posted on that possibility, and on the progression generally towards our IPO goal (as well as normal investor updates) in the very near future.

Thanks, as always, for your investment and support for Firexo.  I hope we all have very exciting times ahead.

Yours sincerely

Dave Breith, CEO

**Dave Breith**  | Group CEO
| **M:** +44 7970 556642        | **T:** +44 207 989611
| **E:** dave.breith@firexo.com        1
                                        | **W:** firexo.com









The content of this message is confidential, so if you have received it by mistake, please inform us by reply email and then delete the message, without sharing it with others. The integrity and security of this email cannot be guaranteed over the internet.  Accordingly, the sender will not be held liable for any damage caused by the message.  Finally, any opinions expressed in this email are opinions of the writer and NOT the company, so the company does not accept any legal liability for damage caused by its content.

D:3

**THE COMPANIES ACT 2006**


**PRIVATE COMPANY LIMITED BY SHARES**


---

**ARTICLES OF ASSOCIATION**
of
**FIREXO GROUP LIMITED**
**Company Number 11085973**
**(Adopted by special resolution passed**
**on                    2021)**

---

**INDEX TO THE ARTICLES**

**PART 1**
**INTERPRETATION AND LIMITATION OF LIABILITY**

1. Defined terms
2. Liability of members

**PART 2**
**DIRECTORS**
**DIRECTORS' POWERS AND RESPONSIBILITIES**

3. Directors' general authority
4. Shareholders' reserve power
5. Directors may delegate
6. Committees

**DECISION-MAKING BY DIRECTORS**

7. Directors to take decisions collectively
8. Unanimous decisions
9. Calling a directors' meeting
10. Participation in directors' meetings
11. Quorum for directors' meetings
12. Chairing of directors' meetings
13. Casting vote
14. Conflicts of interest
15. Records of decisions to be kept
16. Directors' discretion to make further rules

**APPOINTMENT OF DIRECTORS**
17. Methods of appointing directors
18. Termination of director's appointment
19. Directors' remuneration
20. Directors' expenses

**PART 3**
**SHARES AND DISTRIBUTIONS**
**SHARES**

21. All shares to be fully paid up
22. Powers to issue different classes of share
23. Company not bound by less than absolute interests
24. Share certificates
25. Replacement share certificates
26. Share transfers
27. Drag Along
28. Transmission of shares
29. Exercise of transmittees' rights

30. Transmittees bound by prior notices

**DIVIDENDS AND OTHER DISTRIBUTIONS**

31. Procedure for declaring dividends
32. Payment of dividends and other distributions
33. No interest on distributions
34. Unclaimed distributions
35. Non-cash distributions
36. Waiver of distributions

**CAPITALISATION OF PROFITS**

37. Authority to capitalise and appropriation of capitalised sums

**PART 4**
**DECISION-MAKING BY SHAREHOLDERS**
**ORGANISATION OF GENERAL MEETINGS**

38. Attendance and speaking at general meetings
39. Quorum for general meetings
40. Chairing general meetings
41. Attendance and speaking by directors and non-shareholders
42. Adjournment

**VOTING AT GENERAL MEETINGS**

43. Voting: general
44. Errors and disputes
45. Poll votes
46. Content of proxy notices
47. Delivery of proxy notices
48. Amendments to resolutions

**PART 5**
**ADMINISTRATIVE ARRANGEMENTS**

49. Means of communication to be used
50. Company seals
51. No right to inspect accounts and other records
52. Provision for employees on cessation of business

**DIRECTORS' INDEMNITY AND INSURANCE**

53. Indemnity
54. Insurance

**PART 1**
**INTERPRETATION AND LIMITATION OF LIABILITY**

**Defined terms**

1.   In the articles, unless the context requires otherwise—

"articles" means the company's articles of association;

"bankruptcy" includes individual insolvency proceedings in a jurisdiction other than England and Wales or Northern Ireland which have an effect similar to that of bankruptcy;

"chairman" has the meaning given in article 12;

"chairman of the meeting" has the meaning given in article 40;

"Companies Acts" means the Companies Acts (as defined in section 2 of the Companies Act 2006), in so far as they apply to the company;

"director" means a director of the company, and includes any person occupying the position of director, by whatever name called;

"distribution recipient" has the meaning given in article 32;

"document" includes, unless otherwise specified, any document sent or supplied in electronic form;

"electronic form" has the meaning given in section 1168 of the Companies Act 2006;

"fully paid" in relation to a share, means that the nominal value and any premium to be paid to the company in respect of that share have been paid to the company;

"hard copy form" has the meaning given in section 1168 of the Companies Act 2006;

"holder" in relation to shares means the person whose name is entered in the register of members as the holder of the shares;

"instrument" means a document in hard copy form;

"ordinary resolution" has the meaning given in section 282 of the Companies Act 2006;

"paid" means paid or credited as paid;

"participate", in relation to a directors' meeting, has the meaning given in article 10;

"proxy notice" has the meaning given in article 46;

"shareholder" means a person who is the holder of a share;

"shares" means shares in the company;

"special resolution" has the meaning given in section 283 of the Companies Act 2006;

"subsidiary" has the meaning given in section 1159 of the Companies Act 2006;

"transmittee" means a person entitled to a share by reason of the death or bankruptcy of a shareholder or otherwise by operation of law; and

"writing" means the representation or reproduction of words, symbols or other information in a visible form by any method or combination of methods, whether sent or supplied in electronic form or otherwise.

Unless the context otherwise requires, other words or expressions contained in these articles bear the same meaning as in the Companies Act 2006 as in force on the date when these articles become binding on the company.

**Liability of members**

2.  The liability of the members is limited to the amount, if any, unpaid on the shares held by them.

**PART 2
DIRECTORS
DIRECTORS' POWERS AND RESPONSIBILITIES**

**Directors' general authority**

3.  Subject to the articles, the directors are responsible for the management of the company's business, for which purpose they may exercise all the powers of the company.

**Shareholders' reserve power**

4.  (1) The shareholders may, by special resolution, direct the directors to take, or refrain from taking, specified action.
    (2) No such special resolution invalidates anything which the directors have done before the passing of the resolution.

**Directors may delegate**

5.  (1) Subject to the articles, the directors may delegate any of the powers which are conferred on them under the articles—
        (a) to such person or committee;
        (b) by such means (including by power of attorney);
        (c) to such an extent;
        (d) in relation to such matters or territories; and
        (e) on such terms and conditions;
            as they think fit.
    (2) If the directors so specify, any such delegation may authorise further delegation of the directors' powers by any person to whom they are delegated.
    (3) The directors may revoke any delegation in whole or part, or alter its terms and conditions.

**Committees**

6.  (1) Committees to which the directors delegate any of their powers must follow procedures which are based as far as they are applicable on those provisions of the articles which govern the taking of decisions by directors.
    (2) The directors may make rules of procedure for all or any committees, which prevail over rules derived from the articles if they are not consistent with them.

**DECISION-MAKING BY DIRECTORS**

**Directors to take decisions collectively**

7. (1) The general rule about decision-making by directors is that any decision of the directors must be either a majority decision at a meeting or a decision taken in accordance with article 8.

(2) If—

(a) the company only has one director, and

(b) no provision of the articles requires it to have more than one director,

the general rule does not apply, and the director may take decisions without regard to any of the provisions of the articles relating to directors' decision-making.

**Unanimous decisions**

8. (1) A decision of the directors is taken in accordance with this article when all eligible directors indicate to each other by any means that they share a common view on a matter.

(2) Such a decision may take the form of a resolution in writing, copies of which have been signed by each eligible director or to which each eligible director has otherwise indicated agreement in writing.

(3) References in this article to eligible directors are to directors who would have been entitled to vote on the matter had it been proposed as a resolution at a directors' meeting.

(4) A decision may not be taken in accordance with this article if the eligible directors would not have formed a quorum at such a meeting.

**Calling a directors' meeting**

9. (1) Any director may call a directors' meeting by giving notice of the meeting to the directors or by authorising the company secretary (if any) to give such notice.

(2) Notice of any directors' meeting must indicate—

   (a) its proposed date and time;

   (b) where it is to take place; and

   (c) if it is anticipated that directors participating in the meeting will not be in the same place, how it is proposed that they should communicate with each other during the meeting.

(3) Notice of a directors' meeting must be given to each director, but need not be in writing.

(4) Notice of a directors' meeting need not be given to directors who waive their entitlement to notice of that meeting, by giving notice to that effect to the company not more than 7 days after the date on which the meeting is held. Where such notice is given after the meeting has been held, that does not affect the validity of the meeting, or of any business conducted at it.

**Participation in directors' meetings**

10. (1) Subject to the articles, directors participate in a directors' meeting, or part of a directors' meeting, when—

   (a) the meeting has been called and takes place in accordance with the articles, and

(b) they can each communicate to the others any information or opinions they have on any particular item of the business of the meeting.

(2) In determining whether directors are participating in a directors' meeting, it is irrelevant where any director is or how they communicate with each other.

(3) If all the directors participating in a meeting are not in the same place, they may decide that the meeting is to be treated as taking place wherever any of them is.

**Quorum for directors' meetings**

11. (1) At a directors' meeting, unless a quorum is participating, no proposal is to be voted on, except a proposal to call another meeting.

(2) The quorum for directors' meetings may be fixed from time to time by a decision of the directors, but it must never be less than two, and unless otherwise fixed it is two.

(3) If the total number of directors for the time being is less than the quorum required, the

directors must not take any decision other than a decision—

(a) to appoint further directors, or

(b) to call a general meeting so as to enable the shareholders to appoint further directors.

**Chairing of directors' meetings**

12. (1) The directors may appoint a director to chair their meetings.

(2) The person so appointed for the time being is known as the chairman.

(3) The directors may terminate the chairman's appointment at any time.

(4) If the chairman is not participating in a directors' meeting within ten minutes of the time at which it was to start, the participating directors must appoint one of themselves to chair it.

**Casting vote**

13. (1) If the numbers of votes for and against a proposal are equal, the chairman or other director chairing the meeting has a casting vote.

(2) But this does not apply if, in accordance with the articles, the chairman or other director is not to be counted as participating in the decision-making process for quorum or voting purposes.

**Conflicts of interest**

14. (1) If a proposed decision of the directors is concerned with an actual or proposed transaction or arrangement with the company in which a director is interested, that director is not to be counted as participating in the decision-making process for quorum or voting purposes.

(2) But if paragraph (3) applies, a director who is interested in an actual or proposed transaction or arrangement with the company is to be counted as participating in the decision-making process for quorum and voting purposes.

(3) This paragraph applies when—

(a) the company by ordinary resolution disapplies the provision of the articles which would otherwise prevent a director from being counted as participating in the decision-making process;

(b) the director's interest cannot reasonably be regarded as likely to give rise to a conflict of interest; or

(c) the director's conflict of interest arises from a permitted cause.

(4) For the purposes of this article, the following are permitted causes—

(a) a guarantee given, or to be given, by or to a director in respect of an obligation incurred by or on behalf of the company or any of its subsidiaries;

(b) subscription, or an agreement to subscribe, for shares or other securities of the company or any of its subsidiaries, or to underwrite, sub-underwrite, or guarantee subscription for any such shares or securities; and

(c) arrangements pursuant to which benefits are made available to employees and directors or former employees and directors of the company or any of its subsidiaries which do not provide special benefits for directors or former directors.

(5) For the purposes of this article, references to proposed decisions and decision-making

processes include any directors' meeting or part of a directors' meeting.

(6) Subject to paragraph (7), if a question arises at a meeting of directors or of a committee of directors as to the right of a director to participate in the meeting (or part of the meeting) for voting or quorum purposes, the question may, before the conclusion of the meeting, be referred to the chairman whose ruling in relation to any director other than the chairman is to be final and conclusive.

(7) If any question as to the right to participate in the meeting (or part of the meeting) should arise in respect of the chairman, the question is to be decided by a decision of the directors at that meeting, for which purpose the chairman is not to be counted as participating in the meeting (or that part of the meeting) for voting or quorum purposes.

**Records of decisions to be kept**

15. The directors must ensure that the company keeps a record, in writing, for at least 10 years from the date of the decision recorded, of every unanimous or majority decision taken by the directors.

**Directors' discretion to make further rules**

16. Subject to the articles, the directors may make any rule which they think fit about how they take decisions, and about how such rules are to be recorded or communicated to directors.

**APPOINTMENT OF DIRECTORS**

**Methods of appointing directors**

17. (1) Any person who is willing to act as a director, and is permitted by law to do so, may be appointed to be a director—

(a) by ordinary resolution, or

(b) by a decision of the directors.

(2) In any case where, as a result of death, the company has no shareholders and no directors, the personal representatives of the last shareholder to have died have the right, by notice in writing, to appoint a person to be a director.

(3) For the purposes of paragraph (2), where 2 or more shareholders die in circumstances rendering it uncertain who was the last to die, a younger shareholder is deemed to have survived an older shareholder.

**Termination of director's appointment**

18. A person ceases to be a director as soon as—

(a) that person ceases to be a director by virtue of any provision of the Companies Act 2006 or is prohibited from being a director by law;

(b) a bankruptcy order is made against that person;

(c) a composition is made with that person's creditors generally in satisfaction of that person's debts;

(d) a registered medical practitioner who is treating that person gives a written opinion to the company stating that that person has become physically or mentally incapable of acting as a director and may remain so for more than three months;

(e) *[paragraph omitted pursuant to The Mental Health (Discrimination) Act 2013]*

(f) notification is received by the company from the director that the director is resigning from office, and such resignation has taken effect in accordance with its terms.

**Directors' remuneration**

19. (1) Directors may undertake any services for the company that the directors decide.

(2) Directors are entitled to such remuneration as the directors determine—

(a) for their services to the company as directors, and

(b) for any other service which they undertake for the company.

(3) Subject to the articles, a director's remuneration may—

(a) take any form, and

(b) include any arrangements in connection with the payment of a pension, allowance or gratuity, or any death, sickness or disability benefits, to or in respect of that director.

(4) Unless the directors decide otherwise, directors' remuneration accrues from day to day.

(5) Unless the directors decide otherwise, directors are not accountable to the company for any remuneration which they receive as directors or other officers or employees of the company's subsidiaries or of any other body corporate in which the company is interested.

**Directors' expenses**

20. The company may pay any reasonable expenses which the directors properly incur in connection with their attendance at—

(a) meetings of directors or committees of directors,
(b) general meetings, or
(c) separate meetings of the holders of any class of shares or of debentures of the company, or otherwise in connection with the exercise of their powers and the discharge of their responsibilities in relation to the company.


**PART 3**
**SHARES AND DISTRIBUTIONS**
**SHARES**

**All shares to be fully paid up**

21. (1) No share is to be issued for less than the aggregate of its nominal value and any premium to be paid to the company in consideration for its issue.
(2) This does not apply to shares taken on the formation of the company by the subscribers to the company's memorandum.

**Powers to issue different classes of share**

22. (1) Subject to the articles, but without prejudice to the rights attached to any existing share, the company may issue shares with such rights or restrictions as may be determined by ordinary resolution.
(2) The company may issue shares which are to be redeemed, or are liable to be redeemed at the option of the company or the holder, and the directors may determine the terms, conditions and manner of redemption of any such shares.

**Company not bound by less than absolute interests**

23. Except as required by law, no person is to be recognised by the company as holding any share upon any trust, and except as otherwise required by law or the articles, the company is not in any way to be bound by or recognise any interest in a share other than the holder's absolute ownership of it and all the rights attaching to it.

**Share certificates**

24. (1) The company must issue each shareholder, free of charge, with one or more certificates in respect of the shares which that shareholder holds.
(2) Every certificate must specify—
    (a) in respect of how many shares, of what class, it is issued;
    (b) the nominal value of those shares;
    (c) that the shares are fully paid; and
    (d) any distinguishing numbers assigned to them.
(3) No certificate may be issued in respect of shares of more than one class.
(4) If more than one person holds a share, only one certificate may be issued in respect of it.
(5) Certificates must—
    (a) have affixed to them the company's common seal, or

(b) be otherwise executed in accordance with the Companies Acts.

**Replacement share certificates**

25. (1) If a certificate issued in respect of a shareholder's shares is—

(a) damaged or defaced, or

(b) said to be lost, stolen or destroyed, that shareholder is entitled to be issued with a replacement certificate in respect of the same shares.

(2) A shareholder exercising the right to be issued with such a replacement certificate—

(a) may at the same time exercise the right to be issued with a single certificate or separate certificates;

(b) must return the certificate which is to be replaced to the company if it is damaged or defaced; and

(c) must comply with such conditions as to evidence, indemnity and the payment of a reasonable fee as the directors decide.

**Share transfers**

26. (1) Shares may be transferred by means of an instrument of transfer in any usual form or any other form approved by the directors, which is executed by or on behalf of the transferor.

(2) No fee may be charged for registering any instrument of transfer or other document relating to or affecting the title to any share.

(3) The company may retain any instrument of transfer which is registered.

(4) The transferor remains the holder of a share until the transferee's name is entered in the register of members as holder of it.

(5) The directors may refuse to register the transfer of a share, and if they do so, the instrument of transfer must be returned to the transferee with the notice of refusal unless they suspect that the proposed transfer may be fraudulent.

**Drag Along**

27. (1) If the holders of 75% or more of the Shares in issue for the time being (**Selling Shareholders**) wish to transfer all (but not some only) of their Shares (**Sellers' Shares**) either:

(a)  to a bona fide purchaser on arm's length terms; or

(b)  to a new holding company of the Company

(in each case a **Proposed Buyer**),

the Selling Shareholders may require all other Shareholders (**Called Shareholders**) to sell and transfer all their shares (**Called Shares**) to the Proposed Buyer (or as the Proposed Buyer directs) in accordance with the provisions of this Article 27 (**Drag Along Option**).

(2) The Selling Shareholders may exercise the Drag Along Option by giving written notice to that effect to the Called Shareholders (**Drag Along Notice**) at any time before the transfer of the Sellers' Shares to the Proposed Buyer. The Drag Along Notice shall specify:

(a) that the Called Shareholders are required to transfer all their Called Shares pursuant to this article 27;

**D:14**

(b) the person to whom the Called Shares are to be transferred;

(c) the consideration payable for the Called Shares which shall, for each Called Share, be an amount equal to the price per share offered by the Proposed Buyer for each Sellers' Share and be satisfied in the same form (in cash, shares or otherwise) and on at least as favourable terms as shall be received in respect of the Sellers' Shares; and

(d) the proposed date of the transfer.

(3) Once issued, a Drag Along Notice shall be irrevocable. However, a Drag Along Notice shall lapse if, for any reason, the Selling Shareholders have not sold the Sellers' Shares to the Proposed Buyer within 30 Business Days of serving the Drag Along Notice. The Selling Shareholders may serve further Drag Along Notices following the lapse of any particular Drag Along Notice.

(4) No Drag Along Notice shall require a Called Shareholder to give any warranty or indemnity other than a warranty as to capacity and the full title guarantee of the Called Shares held by such Called Shareholder.

(5) Completion of the sale of the Called Shares shall take place on the Completion Date. Completion Date means the date proposed for completion of the sale of the Sellers' Shares.

(6) On or before the Completion Date, the Called Shareholders shall execute and deliver stock transfer forms for the Called Shares, together with the relevant share certificates (or a suitable indemnity for any lost share certificates) to the Company. On the Completion Date, the Company shall:

(a) where the consideration is payable in cash, pay the Called Shareholders, on behalf of the Proposed Buyer, the amounts due pursuant to article 27(2)(c) to the extent that the Proposed Buyer has put the Company in funds. The Company's receipt for the price shall be a good discharge to the Proposed Buyer. The Company shall hold the amounts due to the Called Shareholders in trust for the Called Shareholders without any obligation to pay interest;

(b) where the consideration is in shares of the Proposed Buyer or to be satisfied by loan notes issued by the Proposed Buyer, procure that the Proposed Buyer allots and issues such shares or loan notes to the Called Shareholders;

(c) in respect of any other form of consideration procure that it is paid to the Called Shareholders at the same time as the consideration is paid to the Selling Shareholders.

(7) To the extent that the Proposed Buyer has not, on the Completion Date, paid the consideration  due in respect of the Called Shares to the Company, the Called Shareholders shall be entitled to the return of the stock transfer forms and share certificates (or suitable indemnity) for the relevant Called Shares..

(8) If any Called Shareholder does not, on or before the Completion Date, execute (where required) and deliver with the documents required by article 27(6) in respect of all of the Called Shares held by it, each defaulting Called Shareholder shall be deemed to have irrevocably appointed any person nominated for the purpose by the Selling Shareholders to be its agent to execute all necessary transfer(s) and other documents required by Article 27.6 on its behalf, against receipt by the Company (on trust for such holder) of the consideration payable for the Called Shares, and to deliver such transfer(s) to the Proposed Buyer (or as it may direct) as the holder thereof. After the Proposed Buyer (or its nominee) has been registered as the holder

of the Called Shares, the validity of such proceedings shall not be questioned by any person. Failure to produce a share certificate shall not impede the registration of shares under this article 27.

(9) Upon any person, following the issue of a Drag Along Notice, becoming a Shareholder (or increasing an existing shareholding) including, without limitation, pursuant to the exercise of any option, warrant or other right to acquire or subscribe for, or to convert any security into, Shares (a **New Shareholder**), a Drag Along Notice shall be deemed to have been served on the New Shareholder on the same terms as the previous Drag Along Notice. The New Shareholder shall then be bound to sell and transfer all Shares acquired by it to the Proposed Buyer (or as the Proposed Buyer may direct) and the provisions of this article 27 shall apply with the necessary changes to the New Shareholder, except that completion of the sale of the Shares shall take place on the Completion Date or immediately upon the New Shareholder becoming a Shareholder of the Company, if later.

**Transmission of shares**

28. (1) If title to a share passes to a transmittee, the company may only recognise the transmittee as having any title to that share.

(2) A transmittee who produces such evidence of entitlement to shares as the directors may properly require—

(a) may, subject to the articles, choose either to become the holder of those shares or to have them transferred to another person, and

(b) subject to the articles, and pending any transfer of the shares to another person, has the same rights as the holder had.

(3) But transmittees do not have the right to attend or vote at a general meeting, or agree to a proposed written resolution, in respect of shares to which they are entitled, by reason of the holder's death or bankruptcy or otherwise, unless they become the holders of those shares.

**Exercise of transmittees' rights**

29. (1) Transmittees who wish to become the holders of shares to which they have become entitled must notify the company in writing of that wish.

(2) If the transmittee wishes to have a share transferred to another person, the transmittee must execute an instrument of transfer in respect of it.

(3) Any transfer made or executed under this article is to be treated as if it were made or

executed by the person from whom the transmittee has derived rights in respect of the share, and as if the event which gave rise to the transmission had not occurred.

**Transmittees bound by prior notices**

30. If a notice is given to a shareholder in respect of shares and a transmittee is entitled to those shares, the transmittee is bound by the notice if it was given to the shareholder before the transmittee's name has been entered in the register of members.

**DIVIDENDS AND OTHER DISTRIBUTIONS**

**Procedure for declaring dividends**

31. (1) The company may by ordinary resolution declare dividends, and the directors may decide to pay interim dividends.

(2) A dividend must not be declared unless the directors have made a recommendation as to its amount. Such a dividend must not exceed the amount recommended by the directors.

(3) No dividend may be declared or paid unless it is in accordance with shareholders' respective rights.

(4) Unless the shareholders' resolution to declare or directors' decision to pay a dividend, or the terms on which shares are issued, specify otherwise, it must be paid by reference to each shareholder's holding of shares on the date of the resolution or decision to declare or pay it.

(5) If the company's share capital is divided into different classes, no interim dividend may be paid on shares carrying deferred or non-preferred rights if, at the time of payment, any preferential dividend is in arrear.

(6) The directors may pay at intervals any dividend payable at a fixed rate if it appears to them that the profits available for distribution justify the payment.

(7) If the directors act in good faith, they do not incur any liability to the holders of shares conferring preferred rights for any loss they may suffer by the lawful payment of an interim dividend on shares with deferred or non-preferred rights.

**Payment of dividends and other distributions**

32. (1) Where a dividend or other sum which is a distribution is payable in respect of a share, it must be paid by one or more of the following means—

(a) transfer to a bank or building society account specified by the distribution recipient either in writing or as the directors may otherwise decide;

(b) sending a cheque made payable to the distribution recipient by post to the distribution recipient at the distribution recipient's registered address (if the distribution recipient is a holder of the share), or (in any other case) to an address specified by the distribution recipient either in writing or as the directors may otherwise decide;

(c) sending a cheque made payable to such person by post to such person at such address as the distribution recipient has specified either in writing or as the directors may otherwise decide; or

(d) any other means of payment as the directors agree with the distribution recipient either in writing or by such other means as the directors decide.

(2) In the articles, "the distribution recipient" means, in respect of a share in respect of which a dividend or other sum is payable—

(a) the holder of the share; or

(b) if the share has two or more joint holders, whichever of them is named first in the register of members; or

(c) if the holder is no longer entitled to the share by reason of death or bankruptcy, or otherwise by operation of law, the transmittee.

**No interest on distributions**

33. The company may not pay interest on any dividend or other sum payable in respect of a share unless otherwise provided by—

    (a) the terms on which the share was issued, or

    (b) the provisions of another agreement between the holder of that share and the company.

**Unclaimed distributions**

34. (1) All dividends or other sums which are—

    (a) payable in respect of shares, and

    (b) unclaimed after having been declared or become payable,

may be invested or otherwise made use of by the directors for the benefit of the company until claimed.

(2) The payment of any such dividend or other sum into a separate account does not make the company a trustee in respect of it.

(3) If—

    (a) twelve years have passed from the date on which a dividend or other sum became due for payment, and

    (b) the distribution recipient has not claimed it,

the distribution recipient is no longer entitled to that dividend or other sum and it ceases to remain owing by the company.

**Non-cash distributions**

35. (1) Subject to the terms of issue of the share in question, the company may, by ordinary resolution on the recommendation of the directors, decide to pay all or part of a dividend or other distribution payable in respect of a share by transferring non-cash assets of equivalent value (including, without limitation, shares or other securities in any company).

(2) For the purposes of paying a non-cash distribution, the directors may make whatever arrangements they think fit, including, where any difficulty arises regarding the distribution—

    (a) fixing the value of any assets;

    (b) paying cash to any distribution recipient on the basis of that value in order to adjust the rights of recipients; and

    (c) vesting any assets in trustees.

**Waiver of distributions**

36. Distribution recipients may waive their entitlement to a dividend or other distribution payable in respect of a share by giving the company notice in writing to that effect, but if—

    (a) the share has more than one holder, or

    (b) more than one person is entitled to the share, whether by reason of the death or bankruptcy of one or more joint holders, or otherwise,

the notice is not effective unless it is expressed to be given, and signed, by all the holders or persons otherwise entitled to the share.

**CAPITALISATION OF PROFITS**

**Authority to capitalise and appropriation of capitalised sums**

37. (1) Subject to the articles, the directors may, if they are so authorised by an ordinary resolution—

   (a) decide to capitalise any profits of the company (whether or not they are available for distribution) which are not required for paying a preferential dividend, or any sum standing to the credit of the company's share premium account or capital redemption reserve; and

   (b) appropriate any sum which they so decide to capitalise (a "capitalised sum") to the persons who would have been entitled to it if it were distributed by way of dividend (the "persons entitled") and in the same proportions.

   (2) Capitalised sums must be applied—

   (a) on behalf of the persons entitled, and

   (b) in the same proportions as a dividend would have been distributed to them.

   (3) Any capitalised sum may be applied in paying up new shares of a nominal amount equal to the capitalised sum which are then allotted credited as fully paid to the persons entitled or as they may direct.

   (4) A capitalised sum which was appropriated from profits available for distribution may be applied in paying up new debentures of the company which are then allotted credited as fully paid to the persons entitled or as they may direct.

   (5) Subject to the articles the directors may—

   (a) apply capitalised sums in accordance with paragraphs (3) and (4) partly in one way and partly in another;

   (b) make such arrangements as they think fit to deal with shares or debentures becoming distributable in fractions under this article (including the issuing of fractional certificates or the making of cash payments); and

   (c) authorise any person to enter into an agreement with the company on behalf of all the persons entitled which is binding on them in respect of the allotment of shares and debentures to them under this article.

**PART 4**
**DECISION-MAKING BY SHAREHOLDERS**
**ORGANISATION OF GENERAL MEETINGS**

**Attendance and speaking at general meetings**

38. (1) A person is able to exercise the right to speak at a general meeting when that person is in a position to communicate to all those attending the meeting, during the meeting, any information or opinions which that person has on the business of the meeting.

   (2) A person is able to exercise the right to vote at a general meeting when—

   (a) that person is able to vote, during the meeting, on resolutions put to the vote at the meeting, and

   (b) that person's vote can be taken into account in determining whether or not such resolutions are passed at the same time as the votes of all the other persons attending the meeting.

(3) The directors may make whatever arrangements they consider appropriate to enable those attending a general meeting to exercise their rights to speak or vote at it.

(4) In determining attendance at a general meeting, it is immaterial whether any two or more members attending it are in the same place as each other.

(5) Two or more persons who are not in the same place as each other attend a general meeting if their circumstances are such that if they have (or were to have) rights to speak and vote at that meeting, they are (or would be) able to exercise them.

**Quorum for general meetings**

39. No business other than the appointment of the chairman of the meeting is to be transacted at a general meeting if the persons attending it do not constitute a quorum.

**Chairing general meetings**

40. (1) If the directors have appointed a chairman, the chairman shall chair general meetings if present and willing to do so.

(2) If the directors have not appointed a chairman, or if the chairman is unwilling to chair the meeting or is not present within ten minutes of the time at which a meeting was due to start—

      (a) the directors present, or

      (b) (if no directors are present), the meeting,

must appoint a director or shareholder to chair the meeting, and the appointment of the chairman of the meeting must be the first business of the meeting.

(3) The person chairing a meeting in accordance with this article is referred to as "the chairman of the meeting".

**Attendance and speaking by directors and non-shareholders**

41. (1) Directors may attend and speak at general meetings, whether or not they are shareholders.

(2) The chairman of the meeting may permit other persons who are not—

      (a) shareholders of the company, or

      (b) otherwise entitled to exercise the rights of shareholders in relation to general meetings, to attend and speak at a general meeting.

**Adjournment**

42. (1) If the persons attending a general meeting within half an hour of the time at which the meeting was due to start do not constitute a quorum, or if during a meeting a quorum ceases to be present, the chairman of the meeting must adjourn it.

(2) The chairman of the meeting may adjourn a general meeting at which a quorum is present if—

      (a) the meeting consents to an adjournment, or

      (b) it appears to the chairman of the meeting that an adjournment is necessary to protect the safety of any person attending the meeting or ensure that the business of the meeting is conducted in an orderly manner.

(3) The chairman of the meeting must adjourn a general meeting if directed to do so by the meeting.

(4) When adjourning a general meeting, the chairman of the meeting must—

> (a) either specify the time and place to which it is adjourned or state that it is to continue at a time and place to be fixed by the directors, and
>
> (b) have regard to any directions as to the time and place of any adjournment which have been given by the meeting.

(5) If the continuation of an adjourned meeting is to take place more than 14 days after it was adjourned, the company must give at least 7 clear days' notice of it (that is, excluding the day of the adjourned meeting and the day on which the notice is given)—

> (a) to the same persons to whom notice of the company's general meetings is required to be given, and
>
> (b) containing the same information which such notice is required to contain.

(6) No business may be transacted at an adjourned general meeting which could not properly have been transacted at the meeting if the adjournment had not taken place.

## VOTING AT GENERAL MEETINGS

### Voting: general

43. A resolution put to the vote of a general meeting must be decided on a show of hands unless a poll is duly demanded in accordance with the articles.

### Errors and disputes

44. (1) No objection may be raised to the qualification of any person voting at a general meeting except at the meeting or adjourned meeting at which the vote objected to is tendered, and every vote not disallowed at the meeting is valid.

(2) Any such objection must be referred to the chairman of the meeting, whose decision is final.

### Poll votes

45. (1) A poll on a resolution may be demanded—

> (a) in advance of the general meeting where it is to be put to the vote, or
>
> (b) at a general meeting, either before a show of hands on that resolution or immediately after the result of a show of hands on that resolution is declared.

(2) A poll may be demanded by—

> (a) the chairman of the meeting;
>
> (b) the directors;
>
> (c) two or more persons having the right to vote on the resolution; or
>
> (d) a person or persons representing not less than one tenth of the total voting rights of all the shareholders having the right to vote on the resolution.

(3) A demand for a poll may be withdrawn if—

> (a) the poll has not yet been taken, and
>
> (b) the chairman of the meeting consents to the withdrawal.

(4) Polls must be taken immediately and in such manner as the chairman of the meeting directs.

**Content of proxy notices**

46. (1) Proxies may only validly be appointed by a notice in writing (a "proxy notice") which—

    (a) states the name and address of the shareholder appointing the proxy;

    (b) identifies the person appointed to be that shareholder's proxy and the general meeting in relation to which that person is appointed;

    (c) is signed by or on behalf of the shareholder appointing the proxy, or is authenticated in such manner as the directors may determine; and

    (d) is delivered to the company in accordance with the articles and any instructions contained in the notice of the general meeting to which they relate.

(2) The company may require proxy notices to be delivered in a particular form, and may specify different forms for different purposes.

(3) Proxy notices may specify how the proxy appointed under them is to vote (or that the proxy is to abstain from voting) on one or more resolutions.

(4) Unless a proxy notice indicates otherwise, it must be treated as—

    (a) allowing the person appointed under it as a proxy discretion as to how to vote on any ancillary or procedural resolutions put to the meeting, and

    (b) appointing that person as a proxy in relation to any adjournment of the general meeting to which it relates as well as the meeting itself.

**Delivery of proxy notices**

47. (1) A person who is entitled to attend, speak or vote (either on a show of hands or on a poll) at a general meeting remains so entitled in respect of that meeting or any adjournment of it, even though a valid proxy notice has been delivered to the company by or on behalf of that person.

(2) An appointment under a proxy notice may be revoked by delivering to the company a notice in writing given by or on behalf of the person by whom or on whose behalf the proxy notice was given.

(3) A notice revoking a proxy appointment only takes effect if it is delivered before the start of the meeting or adjourned meeting to which it relates.

(4) If a proxy notice is not executed by the person appointing the proxy, it must be accompanied by written evidence of the authority of the person who executed it to execute it on the appointor's behalf.

**Amendments to resolutions**

48. (1) An ordinary resolution to be proposed at a general meeting may be amended by ordinary resolution if—

    (a) notice of the proposed amendment is given to the company in writing by a person entitled to vote at the general meeting at which it is to be proposed not less than 48 hours before the meeting is to take place (or such later time as the chairman of the meeting may determine), and

    (b) the proposed amendment does not, in the reasonable opinion of the chairman of the meeting, materially alter the scope of the resolution.

(2) A special resolution to be proposed at a general meeting may be amended by ordinary resolution, if—

      (a) the chairman of the meeting proposes the amendment at the general meeting at which the resolution is to be proposed, and

      (b) the amendment does not go beyond what is necessary to correct a grammatical or other non-substantive error in the resolution.

(3) If the chairman of the meeting, acting in good faith, wrongly decides that an amendment to a resolution is out of order, the chairman's error does not invalidate the vote on that resolution.

## PART 5
## ADMINISTRATIVE ARRANGEMENTS

### Means of communication to be used

49. (1) Subject to the articles, anything sent or supplied by or to the company under the articles may be sent or supplied in any way in which the Companies Act 2006 provides for documents or information which are authorised or required by any provision of that Act to be sent or supplied by or to the company.

(2) Subject to the articles, any notice or document to be sent or supplied to a director in connection with the taking of decisions by directors may also be sent or supplied by the means by which that director has asked to be sent or supplied with such notices or documents for the time being.

(3) A director may agree with the company that notices or documents sent to that director in a particular way are to be deemed to have been received within a specified time of their being sent, and for the specified time to be less than 48 hours.

### Company seals

50. (1) Any common seal may only be used by the authority of the directors.

(2) The directors may decide by what means and in what form any common seal is to be used.

(3) Unless otherwise decided by the directors, if the company has a common seal and it is affixed to a document, the document must also be signed by at least one authorised person in the presence of a witness who attests the signature.

(4) For the purposes of this article, an authorised person is—

      (a) any director of the company;

      (b) the company secretary (if any); or

      (c) any person authorised by the directors for the purpose of signing documents to which the common seal is applied.

### No right to inspect accounts and other records

51. Except as provided by law or authorised by the directors or an ordinary resolution of the company, no person is entitled to inspect any of the company's accounting or other records or documents merely by virtue of being a shareholder.

### Provision for employees on cessation of business

52. The directors may decide to make provision for the benefit of persons employed or formerly employed by the company or any of its subsidiaries (other than a director or former director or shadow director) in connection with the cessation or transfer to any person of the whole or part of the undertaking of the company or that subsidiary.

## DIRECTORS' INDEMNITY AND INSURANCE

### Indemnity

53. (1) Subject to paragraph (2), a relevant director of the company or an associated company may be indemnified out of the company's assets against—

(a) any liability incurred by that director in connection with any negligence, default, breach of duty or breach of trust in relation to the company or an associated company,

(b) any liability incurred by that director in connection with the activities of the company or an associated company in its capacity as a trustee of an occupational pension scheme (as defined in section 235(6) of the Companies Act 2006),

(c) any other liability incurred by that director as an officer of the company or an associated company.

(2) This article does not authorise any indemnity which would be prohibited or rendered void by any provision of the Companies Acts or by any other provision of law.

(3) In this article—

(a) companies are associated if one is a subsidiary of the other or both are subsidiaries of the same body corporate, and

(b) a "relevant director" means any director or former director of the company or an associated company.

### Insurance

54. (1) The directors may decide to purchase and maintain insurance, at the expense of the company, for the benefit of any relevant director in respect of any relevant loss.

(2) In this article—

(a) a "relevant director" means any director or former director of the company or an associated company,

(b) a "relevant loss" means any loss or liability which has been or may be incurred by a relevant director in connection with that director's duties or powers in relation to the company, any associated company or any pension fund or employees' share scheme of the company or associated company, and

(c) companies are associated if one is a subsidiary of the other or both are subsidiaries of the same body corporate.

## FIREXO GROUP LIMITED

**COMPANY NUMBER 11085973**

**WRITTEN RESOLUTION**

**PRIVATE COMPANY LIMITED BY SHARES**

**Of FIREXO GROUP LIMITED** (**Company**)

Circulation date: 1 September 2021

Pursuant to Chapter 2 of Part 13 of the Companies Act 2006, the directors of the Company propose that the following resolution is passed as a Special Resolution (**Resolution**).

## SPECIAL RESOLUTION

THAT the draft articles of association attached to this resolution be adopted as the articles of association of the Company in substitution for, and to the exclusion of, the Company's existing articles of association.

## AGREEMENT

Please read the notes at the end of this document before signifying your agreement to the Resolution.

The undersigned, a person entitled to vote on the above Resolution dated 1 September 2021 hereby irrevocably agrees to the Resolution:

Signature:            ......................................................

Name:              ......................................................

Date:              ......................................................

**D:25**

## NOTES

1. If you agree to the Resolution, please indicate your agreement by signing and dating this document where indicated above and returning it to the Company using one of the following delivery methods:

   ï  By Hand: Delivering the signed copy to Coyle White Devine, Boughton Business Park, Bell Lane, Amersham, Bucks, HP6 6FA

   ï  Post: Returning the signed copy by post to Coyle White Devine, Boughton Business Park, Bell Lane, Amersham, Bucks, HP6 6FA

   ï  Email: By attaching a scanned copy of the signed document to an email and sending it to intendedipo@firexo.com. Please enter "Written resolution dated 1 September 2021" in the email subject box.

   If you do not agree to the Resolution, you do not need to do anything. You will not be deemed to agree if you fail to reply.

2. Once you have indicated your agreement to the Resolution, you may not revoke your agreement.

3. Unless sufficient agreement has been received for the Resolution to pass by 29 September 2021, it will lapse.

4. In the case of joint holders of shares, only the vote of the senior holder who votes will be counted by the Company. Seniority is determined by the order in which the names of the joint holders appear in the register of members.

5. If you are signing this document on behalf of a person under a power of attorney or other authority, please send a copy of the relevant power of attorney or authority when returning this document.

D:26