# **Exhibit 11**

(E: 5-18)

AGREEMENT AND PLAN OF EXCHANGE

BY AND BETWEEN

1. Firexo Corp.

AND

2. Firexo Group Limited.

AND

3. Scot Smith.

DATED

5 November 2021

<u>AGREEMENT & PLAN OF EXCHANGE
BY AND BETWEEN</u>

1. Firexo Corp.

AND

2. Firexo Group Limited.

AND

3. Scot Smith.

THIS AGREEMENT & PLAN OF EXCHANGE ("Agreement") is entered into and effective on 5 November 2021, among:

1. **Firexo Corp**., a Delaware corporation ("Firexo Corp."), located at 16192 Coastal Highway, Lewes Delaware 19958, USA;

2. **Firexo Group Limited**., a United Kingdom corporation ("Firexo Group Ltd."), located at Boughton Business Park, Bell Lane, Amersham, Buckinghamshire, United Kingdom, HP6 6FA; and

3. **Scot Smith**., of 1296 Monaghan Rd, PO Box 947, Kelleys Island, Ohio, 43438, USA. ("Shareholder"),

(Firexo Corp., Firexo Group Ltd and the Shareholder are collectively referred to as the "Parties").

WHEREAS, Firexo Corp. is a company duly incorporated in the State of Delaware, is in good standing; and

WHEREAS, Firexo Group Ltd. is a company duly incorporated in England and Wales and is in good standing; and

WHEREAS, Firexo Corp. has agreed to acquire the entire issued share capital of Firexo Group Ltd in consideration of the issue of seventy seven thousand and thirty three (77,033) shares of Common Stock of Firexo Corp., which will operate as parent of Firexo Group Ltd. immediately following the share exchange; and

WHEREAS, the Shareholder has agreed to sell and Firexo Corp has agreed to buy all of the Sale Shares in consideration of the allotment and issue of the equivalent number of Firexo Corp Common Stock to the Shareholder subject to and on the terms and conditions of this Agreement.

WHEREAS, it is acknowledged that the Acquisition, as defined in clause 2.1, will be effected

2

E:6

by agreements entered into in the same or substantially the same form as this Agreement with each of the shareholders in Firexo Group Ltd and, if necessary, by the exercise of the drag along rights under article 27 of Firexo Group Ltd's articles of association.

WHEREAS, the Parties expect that the share exchange will further certain of their business objectives; and

NOW, THEREFORE, in consideration of these premises and the mutual promises made herein, and in consideration of the representations, warranties and covenants herein, the Parties agree as follows:

1. **Definitions.**

"Accredited Investor" has the meaning set forth in Rule 501 of Regulation D promulgated under the Securities Act of 1933, as amended (the "Securities Act").

"Affiliate" has the meaning set forth in Rule 144(a) of the regulations promulgated under the Securities Act and Rule 12b-2 of the regulations promulgated under the Exchange Act.

"Effective Date" means the date that the Articles of Exchange are filed and accepted by the Secretary of State of Delaware.

"Ordinary Shares" means the ordinary shares of £0.00125 each in Firexo Group Ltd.

"Person" means an individual, a partnership, a corporation, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, or a governmental entity (or any department, agency or political subdivision thereof).

"Sale Shares" means the 2964 Ordinary Shares held by the Shareholder.

"SEC" means the U.S. Securities and Exchange Commission.

"Security Interest" means any mortgage, pledge, lien, encumbrance, charge, or other security interest, other than (a) mechanic's, materialmen's, and similar liens, (b) liens for taxes not yet due and payable or for taxes that the taxpayer is contesting in good faith through appropriate proceedings, (c) purchase money liens and liens securing rental payments under capital leas arrangements, and (d) other liens arising in the Ordinary Course of Business and not incurred in connection with the borrowing of money.

"Subsidiary" means any corporation with respect to which a specified Person (or a Subsidiary thereof) owns a majority of the common stock or has the power to vote or direct the voting of sufficient securities to elect a majority of the directors.

"Firexo Corp. Common Stock" means the common stock of Firexo Corp., par value $0.0017125 per share.

2. **Basic Transaction.**

    2.1    The Voluntary Share Exchange. The Parties have deemed it advisable and in the best interests of the Parties, respectively, and their respective shareholders, that the entire issued share capital of Firexo Group Ltd. be acquired by Firexo Corp. (the "Acquisition"). The Parties desire to accomplish the Acquisition by conducting a voluntary share exchange between the shareholders of Firexo Group Ltd. and Firexo Corp., whereby Firexo Corp. will authorize the offer and issuance of seventy seven thousand and thirty three shares (77,033) shares of its Common Stock to the shareholders of Firexo Group Ltd. in exchange for all of the outstanding Ordinary Shares of Firexo Group Ltd.

    2.2    Exchange Rate. One (1) share of Common Stock of Firexo Corp. will be issued and exchanged for each of the Ordinary Shares outstanding on the effective date of this Agreement.

    2.3    Actions Prior to Closing. Prior to Closing, (i) Firexo Corp. shall have available eighty thousand shares (80,000) authorized shares of its Common Stock.

    2.4    The Closing. The closing of the transactions contemplated by this Agreement (the "Closing") shall take place at the offices of Firexo Group Ltd. located at Boughton Business Park, Bell Lane, Amersham, Buckinghamshire, United Kingdom, HP6 6FA, commencing at 14:00 local time on the first business day following the satisfaction or waiver of all conditions to the obligations of the Parties to consummate the transactions contemplated hereby (other than conditions with respect to actions the Parties will take at the Closing itself) or such other date as the Parties may mutually determine (the "Closing Date").

    2.5    Actions at the Closing. At the Closing, (i) the Shareholder will deliver to Firexo Corp. the share certificate (or an indemnity in a form reasonably satisfactory to Firexo Corp) together with an executed share transfer in favour of Firexo Corp in respect of the Sale Shares, and (ii) Firexo Corp. will deliver to the Shareholder a certificate representing that number of Firexo Corp. Common Stock to be issued to the Shareholder under this Agreement.

3. **Representations and Warranties of Firexo Group Ltd.** Firexo Group Ltd. represents and warrant to Firexo Corp. that the statements contained in this §3 are correct and complete as of the date of this Agreement and will be correct and complete as of the Closing Date (as though made then and as though the Closing Date were substituted for the date of this Agreement throughout this §3).

    3.1    Organization, Qualification and Corporate Power. Firexo Group Ltd. is a corporation duly organized, validly existing and in good standing under the laws of the United Kingdom. Firexo Group Ltd. is duly authorized to conduct business and is in good standing under the laws of each jurisdiction where such qualification is required. Firexo Group Ltd. has full power and authority to enter into and perform the transactions contemplated by this Agreement.

    3.2    Capitalization. As of October 29, 2021, the entire issued capital stock of Firexo Group Ltd. consists of 77,033 Ordinary Shares. There are no outstanding or authorized options, warrants,

purchase rights, subscription rights, conversion rights, exchange rights, or other contracts or commitments that could require Firexo Group Ltd. to issue, sell or otherwise cause to become outstanding any of its capital stock. There are no outstanding or authorized stock appreciation, phantom stock, profit participation, or similar rights with respect to Firexo Group Ltd.

3.3 <u>Authorization of Transaction</u>. Firexo Group Ltd. has full power and authority (including full corporate power and authority) to execute and deliver this Agreement and to perform its obligations hereunder. This Agreement constitutes the valid and legally binding obligation of Firexo Group Ltd., enforceable in accordance with its terms and conditions.

3.4 <u>Noncontravention</u>. To the best of Firexo Group Ltd.'s knowledge, neither the execution and the delivery of this Agreement, nor the consummation of the transactions contemplated hereby, will (i) violate any constitution, statute, regulation, rule, injunction, judgment, order, decree, ruling, charge, or other restriction of any government, governmental agency, or court to which Firexo Group Ltd. is subject or any provision of the charter or bylaws of Firexo Group Ltd. or (ii) conflict with, result in a breach of, constitute a default under, result in the acceleration of, create in any party the right to accelerate, terminate, modify, or cancel, or require any notice under any agreement, contract, lease, license, instrument or other arrangement to which Firexo Group Ltd. is a party or by which it is bound or to which any of its assets is subject (or result in the imposition of any Security Interest upon any of its assets). Other than in connection with the provisions of the United Kingdom, Firexo Group Ltd. is not required to give any notice to, make any filing with, or obtain any authorization, consent, or approval of any government or governmental agency in order for the Parties to consummate the transactions contemplated by this Agreement.

3.5 <u>Financial Statements</u>. Firexo Group Ltd. will deliver to Firexo Corp. copies of its Audited financial statements for the year and month ended December 31, 2020.

3.6 <u>Undisclosed Liabilities</u>. Firexo Group Ltd. has no liability (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, and whether due or to become due), including any liability for taxes, except for (i) disclosed liabilities set forth (inter alia) on the face of the balance sheet dated as of the most recent fiscal quarter ended and (ii) disclosed liabilities which have arisen after the most recent fiscal quarter ended in the ordinary course of business (none of which results from, arises out of, relates to, is in the nature of, or was caused by any breach of contract, breach of warranty, tort, infringement, or violation of law).

3.7 <u>Brokers' Fees</u>. Firexo Group Ltd. has no liability or obligation to pay any fees or commissions to any broker, finder, or agent with respect to the transactions contemplated by this Agreement.

3.8 <u>Liens and Litigation</u>. Other than the charges in favour of i) Seneca Trade Partners Ltd; and ii) HSBC UK Bank PLC, Firexo Group Ltd. has no other liens or encumbrances against it or its shares nor does Firexo Group Ltd. know of any current or intended legal claims against it.

3.9 <u>No Registration Rights</u>. The Shareholder will not have the right to demand that the Firexo Corp. Shares of Common Stock he acquires through the voluntary share exchange be registered

under the U.S. Securities Act of 1933, as amended.

3.10    Firexo Group Ltd. understands the meaning and legal consequences of the representations and warranties contained in this Section 3 and agrees to indemnify, defend and hold harmless Firexo Corp. and each director, officer and shareholder thereof from and against any and all loss, damage or liability (including without limitation attorneys' fees) due to or arising out of a breach of any representation or warranty of the undersigned, except that Firexo Group Ltd. does not waive any rights granted to it under federal or state securities laws.

4.    **Representations and Warranties of Firexo Corp.**  Firexo Corp. represents and warrants to Firexo Group Ltd. and the Shareholder that the statements contained in this §4 are correct and complete as of the date of this Agreement and will be correct and complete as of the Closing Date (as though made then and as though the Closing Date were substituted for the date of this Agreement throughout this §4).

4.1    Organization. Firexo Corp. is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware.

4.2    Capitalization. The entire authorized capital stock of Firexo Corp. consists of 80,000 shares of Common Stock, having a par value of $0.0017125 per share, of which 1 share is duly issued and outstanding as of October 30, 2021. The outstanding shares of Firexo Corp. have been validly issued by Firexo Corp. and are fully paid and non-assessable.

4.3    Authorization of Transaction. Firexo Corp. has full power and authority (including full corporate power and authority) to execute and deliver this Agreement and to perform its obligations hereunder. This Agreement constitutes the valid and legally binding obligation of Firexo Corp., enforceable in accordance with its terms and conditions.

4.4    Noncontravention. To the knowledge of any director or officer of Firexo Corp., neither the execution and the delivery of this Agreement, nor the consummation of the transactions contemplated hereby, will (i) violate any constitution, statute, regulation, rule, injunction, judgment, order, decree, ruling, charge, or other restriction of any government, governmental agency, or court to which Firexo Corp. is subject or any provision of the charter or bylaws of Firexo Corp. or (ii) conflict with, result in a breach of, constitute a default under, result in the acceleration of, create in any party the right to accelerate, terminate, modify, or cancel, or require any notice under any agreement, contract, lease, license, instrument or other arrangement to which Firexo Corp. is a party or by which it is bound or to which any of its assets is subject except where the violation, conflict, breach, default, acceleration, termination, modification, cancellation, or failure to give notice would not have a material adverse effect on the ability of the Parties to consummate the transactions contemplated by this Agreement. To the knowledge of any director or officer of Firexo Corp., and other than in connection with the provisions of Delaware law, Firexo Corp. does not need to give any notice to, make any filing with, or obtain any authorization, consent, or approval of any government or governmental agency in order for the Parties to consummate the transactions contemplated by this Agreement, except where the failure to give notice, to file, or to obtain any authorization, consent, or approval would not have a material adverse effect on the ability of the Parties to consummate the transactions contemplated by this Agreement.

    4.5    <u>Brokers' Fees</u>. Firexo Corp. has no liability or obligation to pay any fees or commissions to any broker, finder, or agent with respect to the transactions contemplated by this Agreement.

    4.6    <u>Liens and Litigation</u>. Firexo Corp. has no liens or encumbrances against it or its shares nor does Firexo Corp. know of any current or intended legal claims against it.

    4.7    <u>Restricted Stock</u>. The shares of Firexo Corp. Common Stock, to be issued to the Firexo Group Ltd. shareholders, have not been registered under the Act, nor under any state securities laws. An investment in such shares has not been approved by the securities and exchange commission or by any state securities commission or similar body. Any representation to the contrary is unlawful.

    4.8    Firexo Corp. understands the meaning and legal consequences of the representations and warranties contained in this §4 and agrees to indemnify, defend and hold harmless Firexo Group Ltd. and each director, officer and shareholder thereof from and against any and all loss, damage or liability (including without limitation attorneys' fees) due to or arising out of a breach of any representation or warranty of the undersigned, except that Firexo Corp. does not waive any rights granted to it under federal or state securities laws.

5.    **Representations and Warranties of the Shareholder.** The Shareholder represents and warrants to Firexo Corp. that the statements contained in this §5 are correct and complete as of the date of this Agreement and will be correct and complete as of the Closing Date (as though made then and as though the Closing Date were substituted for the date of this Agreement throughout this §5).

    5.1    The Shareholder is the legal and beneficial owner of the Sale Shares free from any Security Interest.

    5.2    <u>Authorization of Transaction</u>. The Shareholder has full power and authority to execute and deliver this Agreement and to perform his obligations hereunder. This Agreement constitutes the valid and legally binding obligation of the Shareholder, enforceable in accordance with its terms and conditions.

6.    <u>**Covenants**</u>. The Parties agree as follows with respect to the period from and after the execution of this Agreement.

    6.1    <u>General</u>. Each of the Parties will use its best efforts to take all action and to do all things necessary, proper, or advisable in order to consummate and make effective the transactions contemplated by this Agreement (including satisfaction, but not waiver, of the closing conditions set forth in §7 below).

    6.2    <u>Notices and Consents</u>. Firexo Group Ltd. will give any notices to third parties, and will use its best efforts to obtain any third party consents, that Firexo Corp. reasonably may request in connection with the matters referred to in §3.4 above.

    6.3    <u>Regulatory Matters and Approvals</u>. Each of the Parties will give any notices to, make any filings with, and use its reasonable best efforts to obtain any authorizations, consents, and approvals of governments and governmental agencies in connection with the matters referred to in

§3.4 and §4.4 above.

7.  **Conditions to Obligation to Close.**

    7.1    <u>Conditions to Obligation of Firexo Corp.</u>. The obligation of Firexo Corp. to consummate the transactions to be performed by it in connection with the Closing is subject to satisfaction of the following conditions by Firexo Group Ltd.:

    7.1.1    Firexo Group Ltd. shall have procured all of the third party consents specified in §6 above, if any;

    7.1.2    the representations and warranties set forth in §3 above shall be true and correct in all material respects at and as of the Closing Date;

    7.1.3    Firexo Group Ltd. shall have performed and complied with all of its covenants hereunder in all material respects through the Closing;

    7.1.4    No action, suit, or proceeding shall be pending or threatened before any court or quasi-judicial or administrative agency of any federal, state, local, or foreign jurisdiction or before any arbitrator wherein an unfavorable injunction, judgment, order, decree, ruling, or charge would (A) prevent consummation of any of the transactions contemplated by this Agreement, (B) cause any of the transactions contemplated by this Agreement to be rescinded following consummation, (C) or (D) affect adversely the right of Firexo Group Ltd. to own its assets and to operate its businesses (and no such injunction, judgment, order, decree, ruling, or charge shall be in effect);

    7.1.5    Firexo Group Ltd. shall have delivered to Firexo Corp. a certificate to the effect that each of the conditions specified above in §7 are satisfied in all respects; and

    7.1.6    all actions to be taken by Firexo Group Ltd. in connection with consummation of the transactions contemplated hereby and all certificates, opinions, instruments, and other documents required to effect the transactions contemplated hereby will be reasonably satisfactory in form and substance to Firexo Corp.

Firexo Corp. may waive any condition specified in this §7.1 if it executes a writing so stating at or prior to the Closing.

    7.2    <u>Conditions to Obligation of Firexo Group Ltd</u>. The obligation of Firexo Group Ltd. to consummate the transactions to be performed by it in connection with the Closing is subject to satisfaction of the following conditions by Firexo Corp.:

    7.2.1    this Agreement and the Exchange shall have been approved by unanimous consent of the directors of Firexo Corp.;

    7.2.2    the representations and warranties set forth in §4 above shall be true and correct in all material respects through the Closing;

  7.2.3 all actions to be taken by Firexo Corp. in connection with consummation of the transactions contemplated hereby and all certificates, opinions, instruments and other documents required to effect the transactions contemplated hereby will be satisfactory in form and substance to Firexo Group Ltd.

  7.2.4 Firexo Corp. shall have delivered to Firexo Group Ltd. a certificate to the effect that each of the conditions specified above in §7.2 are satisfied in all respects;

Firexo Group Ltd. may waive any condition specified in this §7.2 if it executes a writing so stating at or prior to the Closing.

8. **Termination.**

  8.1 <u>Termination of Agreement</u>. Either of the Parties may terminate this Agreement with the prior authorization of its board of directors (whether before or after stockholder approval) as provided below:

  8.1.1 the Parties may terminate this Agreement by mutual written consent at any time prior to the Effective Date;

  8.1.2 Firexo Corp. may terminate this Agreement by giving written notice to Firexo Group Ltd. and the Shareholder at any time prior to the Effective Date (A) in the event Firexo Group Ltd. has breached any material representation, warranty, or covenant contained in this Agreement in any material respect, Firexo Corp. has notified Firexo Group Ltd. of the breach, and the breach has continued without cure for a period of 30 days after the notice of breach or (B) if the Closing shall not have occurred on or before November [15], 2021, by reason of the failure of any condition precedent under §7.1 hereof (unless the failure results primarily from Firexo Corp. breaching any representation, warranty, or covenant contained in this Agreement); or

  8.1.3 Firexo Group Ltd. may terminate this Agreement by giving written notice to Firexo Corp. and the Shareholder at any time prior to the Effective Date (A) in the event Firexo Corp. has breached any material representation, warranty, or covenant contained in this Agreement in any material respect, Firexo Group Ltd. has notified Firexo Corp. of the breach, and the breach has continued without cure for a period of 30 days after the notice of breach or (B) if the Closing shall not have occurred on or before November [15], 2021, by reason of the failure of any condition precedent under §7.2 hereof (unless the failure results primarily from Firexo Group Ltd. breaching any representation, warranty, or covenant contained in this Agreement).

  8.1.4 The Shareholder may terminate this Agreement by giving written notice to Firexo Corp. and Firexo Group Ltd at any time prior to the Effective Date (A) in the event Firexo Corp. has breached any material representation, warranty, or covenant contained in this Agreement in any material respect, the Shareholder has notified Firexo Corp. of the breach, and the breach has continued without cure for a period of 30 days after the notice of breach or (B) if the Closing shall not have occurred on or before November [15], 2021, by reason of the failure of any condition precedent under §7.1 or §7.2 hereof (unless the failure results primarily from the Shareholder breaching any representation, warranty, or covenant contained in this Agreement).

8.2     Effect of Termination. If any Party terminates this Agreement pursuant to this §8, all rights and obligations of the Parties hereunder shall terminate without any liability of any Party to any other Party (except for any liability of any Party then in breach).

9.     **Miscellaneous.**

9.1     Survival. None of the representations, warranties and covenants of the Parties (other than the provisions in this Agreement concerning the issuance of Firexo Corp. Common Stock) will survive the Effective Date.

9.2     Entire Agreement. This Agreement (including the documents referred to herein) constitutes the entire agreement between the Parties and supersedes any prior understandings, agreements, or representations by or between the Parties, written or oral, to the extent they related in any way to the subject matter hereof.

9.3     Succession and Assignment. This Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective successors and permitted assigns. No Party may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other Party.

9.4     Implementation. Each of the Parties shall take, or cause to be taken, all actions or do, or cause to be done, all things necessary, proper or advisable under the laws of the State of Delaware and the State of Delaware, including executing the necessary corporate consents for each Constituent Corporation, to consummate the Acquisition.

9.5     Amendments and Waivers. The Parties may mutually amend any provision of this Agreement at any time prior to the Effective Date with the prior authorization of their respective boards of directors; provided, however, that any amendment effected subsequent to stockholder approval will be subject to the restrictions contained in the laws of the State of Delaware. No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by both of the Parties. No waiver by any Party of any default, misrepresentation, or breach of warranty or covenant hereunder, whether intentional or not, shall be deemed to extend to any prior or subsequent default, misrepresentation, or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent such occurrence.

9.6     Governing Law. This Agreement shall be governed by and construed in accordance with the domestic laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

9.7     Attorneys' Fees. In any action at law or in equity to enforce any of the provisions or rights under this Agreement, the prevailing party shall be entitled to recover from the other party or parties all of its costs, expense and reasonable attorneys' fees incurred therein by the prevailing party, including costs, expenses and attorneys' fees incurred on appeal.

9.8     Counterparts and Facsimile Signatures. This Agreement may be signed (or electronically

signed) in counterparts, each of which shall be an original, but all of which shall constitute one and the same document. Signatures transmitted by electronic mail or facsimile shall be deemed valid execution of this Agreement binding on the parties.

  9.9 <u>Severability</u>. Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

  9.10 <u>Expenses</u>. Each of the Parties will bear its own costs and expenses (including legal fees and expenses) incurred in connection with this Agreement and the transactions contemplated hereby.

  9.11 <u>Construction</u>. The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement. Any reference to any federal, state, local, or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context otherwise requires.

  9.12 <u>Headings</u>. The section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

  9.13 <u>Recitals</u>. All recitals shall be construed as part of this Agreement.

  9.14 <u>Notices</u>. All notices shall be in writing and shall be deemed to have been sufficiently given or served (i) immediately, when emailed or personally delivered, (ii) within three (3) days after being deposited in the United States mail, by registered or certified mail, or (iii) within one (1) day after being deposited with a reputable overnight mail carrier which provides delivery of such mail to be traced, addressed as indicated on the signature pages below.

**If to Firexo Corp., at:**

FIREXO CORPORATION
16192 Coastal Highway
Lewes, DE 19958
Attn: David Breith
Email: <u>dave.breith@firexo.com</u>


**with a copy to:**

11

Wilson Bradshaw LLP
18818 Teller Avenue, Suite 115
Irvine, CA 92612
Attn: Gilbert J. Bradshaw Esq.
Email: gbradshaw@wbc-law.com
Telephone: (917) 830-6517
Fax: (917) 791-8877

**If to Firexo Group Limited, at:**

Firexo Group Ltd.
Boughton Business Park, Bell Lane
Amersham, Buckinghamshire
United Kingdom HP6 6FA
Attn: David Breith
Email: dave.breith@firexo.com
Telephone: +44 207 989 6111

**If to the Shareholder, at:**

Scot Smith
1296 Monaghan Rd, PO Box 947, Kelleys Island, Ohio, 43438, USA
Email: ss81222000@yahoo.com


The addresses to which notices or demands are to be given may be changed from time to time by notice served as provided above. Delivery of notice to the copied parties above is not notice to Firexo Corp, Firexo Group Limited or the Shareholder, as the case may be.

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement as of the date first set forth above.

|  |  |
|---|---|
|  | **FIREXO CORPORATION,** a Delaware corporation |
|  |  |
|  | By: _____ Name: David Breith Its: Chief Executive Officer |
|  |  |
|  | **FIREXO GROUP LIMITED.** |
|  | By: _____ Name: David Breith Its: Chief Executive Officer |
|  | By: _____ Name: Peter Coyle Its: Secretary |

13

|  |  |
|---|---|
|  | **SHAREHOLDER** |
|  | By: _____<br>Name: Scot Smith |