UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Firexo, Inc. | ) | Case No.: 3:21-CV-02336 |
| | ) | |
| Plaintiff, | ) | Judge Jack Zouhary |
| | ) | |
| vs. | ) | |
| | ) | |
| Firexo Group Limited, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT FIREXO GROUP LIMITED'S MOTION TO DISMISS PLAINTIFF FIREXO, INC.'S AMENDED COMPLAINT FOR LACK OF JURISDICTION**

**I.  INTRODUCTION**

The exclusive jurisdiction for this matter resides with the courts of England and Wales. This Court is not in England or Wales. Therefore, this Court does not have jurisdiction and this matter must be dismissed. *See General Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1100 (6th Cir. 1994) (affirming dismissal pursuant to parties' agreement to exclusive jurisdiction in Germany).

In August 2019 Defendant Firexo Group Limited ("Group") and Scot Smith ("Smith") executed a Shareholder's Agreement ("JVA"). Among other things, the JVA set forth the terms and conditions under which a new entity, Plaintiff Firexo, Inc. ("Inc."), would sell and distribute Group's products in the United States. Joint Statement, D.E. 15 at 2; JVA ¶ 2.1, D.E. 15-1 at 7. There is no dispute about what law the JVA applies. Nor is there any dispute about where exclusive jurisdiction for any dispute or claim arising from the JVA resides. In both cases, it is the same—England and Wales.

Nevertheless, Inc. filed a lawsuit against Group alleging Group breached its contract with Inc. The contract at issue? Supposedly something Inc. obliquely refers to as "a sole distributorship

1

agreement," which gave Inc. "the sole right to sell and/or distribute for sale" Group's products. D.E. 9 at 1. Inc. alleges this agreement was oral and supersedes the written JVA, which covers the exact same subject matter and even identifies Inc. by name. There is not a scintilla of evidence supporting the existence of this so-called oral agreement. Indeed, the only agreement Group ever entered regarding the distribution of its products in the United States is the JVA. Declaration of Peter Coyle ("Coyle Decl.") at ¶ 5, attached hereto as Exhibit 1. And pursuant to the JVA, exclusive jurisdiction resides with courts in England and Wales. D.E. 15 at 2; JVA ¶ 33.2, D.E. 15-1 at 23. Accordingly, this Court must dismiss the matter.

## II. ANALYSIS

### A. The Forum Selection Clause is Enforceable.

As an initial matter, the forum selection clause of the JVA is enforceable. The Sixth Circuit has held "forum selection clause[s] should be upheld absent a strong showing that it should be set aside." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). Enforceability of a forum selection clause is based on three factors:

> (1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust.

*Id.* Inc. bears the burden of proving each of these factors. *Id.*

Inc. cannot credibly argue that the factors outlined in *Wong* weigh against enforceability of the forum selection clause. Instead, Inc. asserts that the clause is inapplicable. As detailed below, that assertion is incorrect. Nevertheless, Group will quickly address each factor.

First, there is no evidence the forum selection clause was obtained by fraud, duress, or other unconscionable means. The JVA was signed by Group and Smith, both of whom are sophisticated parties. Exh. 1, Coyle Decl. at ¶ 4. Furthermore, Smith has asserted counterclaims

based on his rights under the JVA in litigation pending in the United Kingdom. *Id.* at ¶ 6. Smith has not argued in the United Kingdom litigation that the JVA's forum selection clause was obtained by fraud, duress, or other unconscionable means. *Id.* at ¶ 7.

Second, the United Kingdom would not be an ineffective or unfair forum to handle this lawsuit. To satisfy this factor, Inc. must demonstrate United Kingdom law is "such that a risk exists that the litigants will be denied any remedy or will be treated unfairly." *Wong*, 589 F.3d at 829. The Sixth Circuit has previously enforced forum selection clauses that specified an English forum. *See id.* at 829 (affirming enforcement of a forum selection clause specifying Gibraltar, a British territory governed by English law, as the proper forum); *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1232 (6th Cir. 1995) (affirming district court dismissal based on forum selection clause that provided exclusive jurisdiction to "the English Courts"). Moreover, Smith is directing this litigation on behalf of Inc., Joint Statement, D.E. 15 at 3, and he is already embroiled in litigation against Group in the United Kingdom involving the JVA. *Id.*

Third, Inc. cannot show that "enforcement of the clause would be so inconvenient such that its enforcement would be unjust or unreasonable." *See Wong*, 589 F.3d at 829. Support for this factor "must be based on more than mere inconvenience of the party seeking to avoid the clause," and a forum is not unreasonable if the party opposing it cannot "produce any evidence that it was exploited or unfairly treated." *Id.* at 829–30 (finding that, even though plaintiffs were "not sophisticated business entities with the ability to negotiate the forum" and "continuing the suit in Gibraltar would no doubt be an inconvenience," the forum selection clause was not unjust or unreasonable). There is no evidence the forum selection clause was unjust or unreasonable or the signatories of the JVA were exploited or unfairly treated.

In short, none of the factors weigh against enforcing the JVA's forum selection clause.

4856-7129-5274, v.4

**B. The JVA's Forum Selection Clause Applies to Inc. because Inc. is "closely related" to the dispute.**

Inc.'s argument is relatively straightforward, but nonetheless wrong. Inc. claims it is not bound by the JVA's forum selection clause because Inc. did not sign the JVA. So, what? Courts throughout the country routinely apply forum selection clauses to non-signatories when the non-signatory is "closely related" to the contractual relationship or dispute. *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209–10 (7th Cir. 1993) ("In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes foreseeable that it will be bound."); *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir. 1988) (agreeing with the district court "that the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants . . . ."); *Marano Enters. of Kansas v. Z–Teca Rests., L.P.*, 254 F.3d 753, 757–58 (8th Cir. 2001) (finding a shareholder, officer, and director of a company involved in a dispute "is, without question, 'closely related' to the disputes . . . and properly bound by the forum-selection provisions . . . ."); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998) (finding that, because the interests of the non-signatories "are completely derivative of those of the [signatories]—and thus 'directly related to, if not predicated upon' the interests of the [signatories]," the non-signatories were bound by the forum selection clause); *Sharper Impressions Painting Co. v. Thiede*, No. 2:21-CV-2245, 2021 WL 2430941 (S.D. Ohio June 15, 2021) (applying a forum selection clause to non-signatories who were the spouse of a signatory and a business partly owned or managed by the signatory); *Villanueva v. Barcroft*, 822 F.Supp.2d 726, 737 (N.D. Ohio 2011) (Pearson, J.) ("[A] non-signatory to a contract may be bound by 'a forum selection clause in that contract if the non-signatory is so sufficiently 'closely related' to the dispute that it is foreseeable

4

that the party will be bound.'" (citing *Hitachi Med. Sys. Am. V. St. Louis Gynecology & Oncology, LLC*, No. 5:09–CV–2613, 2011 WL 711568, at *8 (N.D. Ohio Feb. 22, 2011) (Dowd, J.))).

The Northern District of Ohio has applied "a common sense, totality of the circumstances approach" to determine whether a non-signatory is closely related to a contractual relationship or dispute. *Reagan v. Maquet Cardiovascular U.S. Sales LLC*, No. 1:14CV548, 2015 WL 521049, *3 (N.D. Ohio Feb. 9, 2015) (Boyko, J.) (quoting *Hitachi*, 2011 WL 711568, at *9). "Under this approach, a court must inquire 'whether, in light of [the] circumstances, it is fair and reasonable to bind a non-party to the forum selection clause.'" *Id.* Examples of non-signatories who may be bound by a forum selection clause include:

> "[S]hareholders, officers, and directors of a corporation" with regard to a corporate contract; "[c]orporations wholly owned and controlled by a signatory to a contract" containing a forum-selection clause; a non-signatory who "is in an agency relationship with one of the parties to the contract" containing a forum-selection clause; a non-signatory who is "a third-party beneficiary of the contract" that contains a forum-selection clause; and an assignee to contract that contains a forum-selection clause.

*Petti v. Fraker*, No. 1:18CV615, 2020 WL 13460640, *12 (N.D. Ohio Aug. 19, 2020).

Applying the "common sense" approach to this case there is no question Inc. and this lawsuit are "closely related" to Smith and the JVA. For example:

- This lawsuit centers around Inc.'s right to distribute Group's products in the United States. *See* D.E. 9 at 2.

- The JVA created Inc. and specified the purpose of Inc. would be the "sale and distribution of [Group's] fire extinguishing products" in the United States. Joint Statement, D.E. 15 at 2; JVA ¶ 2.1, D.E. 15-1.

- Inc. is a Joint Venture between Group and Smith. Joint Statement, D.E. 15 at 2.

- Smith and Group are the two signatories of the JVA. *Id.*; JVA at 25, D.E. 15-1.[1]

- Smith and Group are the original and only investors in Inc., and Smith is the Executive officer of Inc. Joint Statement, D.E. 15 at 1, 3.

- Smith is directing this lawsuit. *Id.* at 3.

- Smith is the majority shareholder of Inc. Exh. 1, Coyle Decl. at ¶ 8.

- Smith and David Breith, the CEO of Group, both serve on the Board of Directors for Inc. Joint Statement, D.E. 15 at 1.

- Smith agreed in the JVA to carry out Inc.'s business in accordance with the terms of the JVA. Joint Statement, D.E. 15 at 2; JVA at WHEREAS para, D.E. 15-1 at 5.

- Smith agreed to exercise his rights relating to Inc. consistent with the terms of the JVA. Joint Statement, D.E. 15 at 2.

Thus, there are manifold ways in which Inc. is "closely related" to the JVA and the JVA's forum selection clause should apply to Inc. in this matter.

This case closely tracks a Seventh Circuit case in which the court applied a forum selection clause to a "closely related" non-signatory. *Hugel*, *supra*. There, the plaintiff, Hugel, was the president and chairman of Gulf Coast Marine ("GCM") and Ocean Marine Indemnity Company ("OMI"). 999 F.2d at 207. Hugel entered a General Undertaking for Membership with Defendant Lloyd's. *Id.* The General Undertaking included a forum selection clause and choice of law provision subjecting "any dispute or controversy of whatsoever nature arising out of or relating to the Member membership" to the courts of England. *Id.*

---

[1] The JVA is attached to the Joint Statement as Exhibit A. D.E. 15-1. The copy of the JVA in the possession of the Parties does not include Smith's signature. Nevertheless, Smith acknowledges that he is bound by the terms of the JVA. D.E. 15 at 2.

6

GCM and OMI sought to avoid the consequences of the forum selection clause by arguing they never signed the General Undertaking. *Id.* at 209. The Seventh Circuit, however, found the forum selection clause applied because "the corporations owned and controlled by Hugel are so closely related to the dispute that they are equally bound by the forum selection clause and must sue in the same court in which Hugel agreed to sue." *Id.* at 210. As support for this conclusion, the court noted Hugel was the president and chairman of both GCM and OMI as well as the owner of 99% of the stock of GCM (which, in turn, owned 100% of OMI's stock). *Id.* at 209–10.

The situation analyzed in *Hugel* is nearly identical to the facts in this case. Indeed, Inc. is even more "closely related" than the co-plaintiffs in *Hugel* for numerous reasons. For instance, Inc. is wholly owned by signatories of the JVA and is controlled by signatories of the JVA. Two of Inc.'s directors are signatories of the JVA. Smith entered the JVA and is the Executive Officer of Inc. D.E. 15 at 2–3. Smith explicitly agreed to conduct Inc.'s business consistent with the JVA. *Id.* at 2; JVA, 15-1 at 5. And the subject-matter of this lawsuit, Inc.'s distribution of Group's products in the United States, is directly addressed by the JVA. JVA, 15-1 at ¶ 2.1. Therefore, it is "fair and reasonable" for Inc. to be bound by the forum selection clause and well-within "common sense" to hold Inc. to the forum voluntarily selected by Smith.

The Court, like the court in *Hugel*, should apply the forum selection clause and dismiss this case.

**C. Inc.'s purported oral agreement does not alter the JVA's forum selection clause, nor can any oral agreement modify the JVA's forum selection clause.**

As previously stated, the JVA governed Inc.'s distribution of Group's products in the United States. The JVA contained an integration clause stating it was "the entire agreement between the parties and supersedes and extinguishes all previous arrangements, understandings or agreements between them relating to its subject matter." JVA ¶ 22.1, D.E. 15-1. The parties also

7

agreed that no variation of the JVA would be effective "unless it is in writing and signed by the parties (or their authorised representatives)." *Id.* at ¶ 23.1. Therefore, Group and Inc. were not authorized under the JVA to create any oral contract governing Inc.'s distribution of Group's products in the United States.

Furthermore, there is no evidence the Parties modified any provision in the JVA, orally or otherwise. Why would they? It would make no sense to bind Smith to one set of obligations regarding the joint venture while at the same time creating an entirely different set of rules for the entity described by the JVA. But that is precisely the counter-intuitive argument Inc. attempts to make.

Even assuming there were a valid, separate oral agreement between Group and Inc. regarding distribution of Group's products in the United States—which there is not—there is no evidence the terms of the purported oral agreement differ from the written JVA. There is no evidence the Parties agreed to jettison the integration provision. There is no evidence the Parties agreed to alter the choice of law. And there is no evidence the Parties agreed to change the exclusive venue and jurisdiction provision. Thus, the JVA's forum selection clause must be applied.

Indeed, the court in *Hugel* considered and rejected the very argument being made by Inc. The plaintiffs in *Hugel*, who were non-signatories to the written forum selection clause, argued that a separate oral contract governed their dispute with the defendant. 999 F.2d at 209. The Seventh Circuit was unpersuaded and found the subject matter of the oral contract was "intertwined with the membership requirements referred to by the General Undertaking such that the oral promises . . . cannot be considered a separate unrelated contract." *Id.* The same is true here. Even if there were an oral agreement between Group and Inc., the subject of the purported

8

oral agreement is Inc.'s distribution of Group's products in the United States and is so "intertwined" with the JVA that it "cannot be considered a separate unrelated contract."

Inc.'s efforts to avoid the forum selection provisions of the JVA by referencing an undefined oral agreement fail. Just like in *Hugel*, the written forum selection clause must be enforced. Inc.'s claims must be brought, if at all, in the courts of England and Wales.

### D. No Other Factors Caution Against Dismissal

Finally, there are no other factors weighing against the enforcement of the forum selection clause and dismissal. "[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. Texas*, 134 S.Ct. 568, 581 (2013). The Supreme Court's decision in *Atlantic Marine* altered the analysis of when a court should grant a motion to dismiss for *forum non conveniens* pursuant to an enforceable forum-selection clause. *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 568 (6th Cir. 2019). Previously, a *forum non conveniens* analysis first considered "the degree of deference owed the plaintiff's forum choice"; then a defendant needed to "establish an 'adequate alternative forum' and show 'the plaintiff's chosen forum [was] unnecessarily burdensome based on public and private interest.'" *Id.* Post *Atlantic Marine*, when there is a valid forum selection clause, "the plaintiff's choice of forum no longer receives any weight. Instead, the plaintiff must show why the court should not transfer the case to the selected forum." *Id.* "Second, the court should only consider arguments about public-interest factors, and not the parties' private interests." *Id.* Such public-interest factors "will rarely defeat a transfer motion, and thus the practical result is that *forum-selection clauses will almost always control*." *Id.* (internal quotation marks omitted and emphasis added). Third, if a case is transferred, the original venue's choice-of-law rules will not carry to the new forum. *Id.*

9

There is nothing exceptional about the forum selection clause here. No public interest factors weigh against enforcing the JVA or submitting this dispute to the jurisdiction of the Courts of England and Wales. Afterall, Smith, the progenitor of this lawsuit, is already happily litigating in the United Kingdom regarding the very same contract at issue here. Therefore, the forum selection clause in the JVA should be enforced and this case should be dismissed.

### III. CONCLUSION

Inc. and this lawsuit are closely related, if not indistinguishable, from the JVA. Inc.'s purported oral agreement, of which there is no evidence, has no impact on the Court's analysis, and there are no other factors weighing against dismissal. For all those reasons, this Court should enforce the forum selection clause in the JVA and dismiss this matter.

/s/ Jason J. Blake
Jason J. Blake (0087692)
John F. Fisher (0085455)
CALFEE, HALTER & GRISWOLD LLP
1200 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: (614) 621-1500
Facsimile: (614) 621-0010
jblake@calfee.com
jfisher@calfee.com

*Counsel for Defendant Firexo Group Limited*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing document has been filed via the Court's authorized e-filing system on this 15th day of August, 2022 which will provide electronic notification to all parties of record.

/s/ *Jason J. Blake*
*One of the Attorneys for Defendant Firexo Group Limited*