IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Firexo, Inc. | * | Case No.:   3:21-cv-02336 |
|       Plaintiff, | * | Judge Jack Zouhary |
| vs. | * | |
| Firexo Group Limited | * | Richard R. Malone (0008885) |
| .    Defendant. | | Paul T. Belazis (0030356) |
| | * | **Malone, Ault & Farell** |
| | | 7654 W. Bancroft Street |
| | * | Toledo, Ohio  43617 |
| | | Telephone - (419) 843-1333 |
| | * | Telecopier - (419) 843-3888 |
| | | belazis@maf-law.com |
| | * | malone@maf-law.com |
| | | Counsel for Plaintiff |
| | * | |

---

**PLAINTIFF FIREXO, INC'S MEMORANDUM IN OPPOSITION TO DEFENDANT
FIREXO GOUP LIMITED'S MOTION CHALLENGING THE
COURT'S JURISDICTION**

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT FGL'S MOTION TO DISMISS ON JURISDICTIONAL GROUNDS

## I. INTRODUCTION

This memorandum addresses Defendant Firexo Group Limited's (hereinafter FGL) challenge to the Court's jurisdiction to hear Plaintiff Firexo, Inc.'s claims. FGL contends that a Shareholder's Agreement ("Shareholder's Agreement" or "JVA") executed by Scot Smith, containing a forum selection clause giving the courts of England and Wales exclusive jurisdiction to resolve disputes arising out of or related to the JVA, deprives this Court of jurisdiction. Mr. Smith is not a party to this litigation and Firexo, Inc is not a party to the JVA. Further, Firexo, Inc's claims arise out of a separate contract.  As such, and for the reasons more fully addressed below, FGL's jurisdictional challenge seeking dismissal must be denied.[1]

## II. FACTUAL SUMMARY

On or about August 8, 2019, Scot Smith, acting in his individual capacity, entered into a Shareholder's Agreement with FGL that established Smith as an investor in a joint venture company established to promote the sale of FGL fire extinguishing products in the United States. Under the terms of the JVA, Smith received 70 of 100 shares of a preexisting Florida corporation in exchange for his investment of funds in the company.  David Breith, the majority stockholder, founder, and CEO of FGL, was at the time the sole shareholder of the Florida company, known

---

[1]A challenge to place of filing based on a forum selection clause is an issue of proper venue rather than jurisdiction.  See, *Baker v. Leboef, Lamb, Lieby & Macrae,* 105 F.3d 1102, 1106 (6th Cir. 1997); *Spradlin v. Lear Siegler Management Services*, 926 F.2d 865 (9th Cir. 1991); *Riley v. Kingsley Underwriting Agencies, Ltd*, 969 F.2d 953, 956 (10th Cir. 1992); Allen v. *Lloyds of London*, 94 F.3d 923 (4th Cir. 1996).  When deciding a challenge to venue, the Court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *Lockhart v. Garzella,* 2020 WL 6146598 * 2 (Case No. 3:19-cv-00405, 10/20/2020, S.D. Ohio).

as Firexo, Inc. (hereinafter "Inc").  Under the terms of the JVA, Smith and Breith became directors of Inc. with each having casting votes over specified issues.

FGL at the time offered two options to interested parties; 1) an investor option for potential investors who, like Smith, would invest funds in exchange for stock in a joint venture company and 2) a distributor option for potential distributors who would assume responsibility for ordering, warehousing, distributing, and selling FGL products. These same two options were separately offered to potential investors and potential distributors around the world. The JVA that Smith executed was intended to accomplish only the first of the above two objectives. See, Smith Declaration, attached as Exhibit A (hereinafter "Smith Decl") ¶ 3.

In mid-August 2019, after execution of the JVA, Mr. Breith came to Inc's offices in Port Clinton, Ohio where Inc and FGL separately agreed that Inc would become a distributor of FGL products.  The essential terms of the separate distribution agreement, including the FGL fire extinguishing products that would be purchased, warehoused, distributed, and sold by Inc, the price of these products, and Inc's plans for their distribution and sale, were discussed and agreed upon over the course of Mr. Breith's weeklong trip to Port Clinton and in subsequent communications. Smith Decl ¶ 4.   In connection with the parties' agreement, and before agreeing to allow Inc to serve as a distributor, Mr. Breith wanted to be satisfied that Inc had access to adequate warehouse space for storage and distribution of FGL's products.  He ultimately inspected and agreed that identified warehouse space available to Inc was suitable.  *Id.* Smith's involvement in these discussions was solely in his capacity as a director of Inc. *Id.*

The distribution agreement to which the parties ultimately agreed gave Inc the exclusive right to distribute and sell FGL's products in the United States. Amended Complaint, ¶ 8.   Inc. secured the available warehouse space, hired employees, and began working to establish relationships around the United States for the distribution and sale of these products.  It then

2

ordered and began to distribute and sell a variety of FGL fire extinguishing products starting in late 2019.  Smith Decl, ¶ 5.  These actions were undertaken by Firexo, Inc, using its own available financial resources, for the purpose of carrying out its distributorship agreement with FGL. *Id. See, also*, Amended Complaint, ¶¶ 15-34.

Throughout the course of this relationship, Mr. Breith made ongoing representations regarding features and certifications of its fire extinguishing products, including those products ultimately purchased by Inc. *Id.*  Many critical representations, however, proved to be false or misleading and critical defects in product design and/or manufacturing began emerging that showed FGL products to pose serious safety risks to consumers. Firexo, Inc was forced to recall product that had been sold, and subsequently was forced to discontinue the sale of most FGL products because of FGL's failure to rectify these issues. *Id, ¶ 6.* This litigation followed.

## III.  ARGUMENT

### A.  Firexo, Inc Is Not Subject To The JVA's Forum Selection Clause

A forum selection clause in a contract may be enforced by or against a non-signatory third party only when the third party is so "closely related" to a dispute under the relevant contract such that it becomes "foreseeable that it will be bound." *Baker v. LeBoeuf, Lamb, Leiby & Mccrae,* 105 F.3d 1102, 1105-1106 (6th Cir. 1987).   In *Baker,* the law firm of LeBoeuf, Lamb, Leiby & Mccrae, serving as lawyers for underwriting members of Lloyd's of London, was sued for legal malpractice.  The members sought damages arising from LeBoeuf's alleged negligent legal representation, which caused the members to suffer losses under a related "General Undertaking" contract between Lloyd's and its underwriting members. Although not a party to the contract, LeBoeuf argued that it had been granted a power of attorney by the members for the purpose of undertaking the legal representation at issue and that the grant of a power of attorney to LeBoeuf was explicitly required by the General Undertaking contract between Lloyds and its

3

members. On this basis, LeBoeuf asserted a right to enforce the General Undertaking's forum selection clause, which designated the courts of England as having exclusive jurisdiction over "any dispute and/or controversy of whatsoever nature arising out of or related to the Member's membership of, and/or underwriting of insurance business at, Lloyd's."

The district court concluded that the forum selection clause could not be enforced by LeBoeuf and declined to dismiss plaintiff's claims. The court noted that LeBoeuf was not a third-party beneficiary of the General Undertaking Agreement.  In addition, the plaintiff's malpractice claims were "not integrally related to" or predicated upon the Agreement. Instead, they were "separate and apart." 1993 WL 662352 (Case No. C-1-92-710, S.D. Ohio, Oct 7, 1993).

 On appeal, the Sixth Circuit adopted the rationale of the lower court but noted that it was necessary to first determine whether the forum selection clause applied to a non-signatory before determining whether it should be enforced.  The Court determined that the clause was not applicable because LeBoeuf did not possess the status of an officer or agent of any signatory, had no rights as a third-party beneficiary, and thus lacked the close relationship necessary to apply or enforce the General Undertaking's forum selection clause.  *Id.*

In *Thorworks Industries v. E.I. Dupont De Nemours and Co,* 606 F. Supp2d 691, 697-698 (N.D. Ohio 2008) (Carr, J.), this Court considered whether a contractual forum selection clause could be enforced against a non-signatory.  In deciding that the clause was not enforceable against the non-signatory party, the court indicated that the Sixth Circuit had not yet determined whether anything other than third part beneficiary status is sufficient to permit enforcement of a forum selection clause against a non-signatory.  Although the non-signatory was a licensing agent for a signatory, it had not directly benefited from the agreement and was a separate corporate and legal entity.  As such, the Court found the forum selection clause to be inapplicable.  *Id*

Other Ohio district courts have determined that a non-signatory may be bound by a forum selection clause when they assist the signatory or have direct involvement in the events giving rise to litigation predicated on violation of duties established by a contract containing the forum selection clause. *See, e.g., Sharper Impressions Painting Co v. Thiede,* 2021 W.L. 2430941 (S.D. Ohio, E.D., Case No. 2:21-cv-2245, June 15, 2021)  In *Theide,* the court found the necessary close relationship satisfied where a former employee, along with a non-signatory corporation that he owned and managed, had *both* violated terms of a non-compete employment agreement containing a forum selection clause by engaging in competition with the former employer and soliciting the former employer's customers. *Id.*

Courts have also found the necessary close relationship where non-signatory corporate officers and directors initiate litigation, along with the corporate signatory, alleging breach of a duty arising under a single contract with a forum selection clause.  See, e.g., *Wilson v. 5 Choices, LLC*, 776 Fed. Appx. 320, 329 (6th Cir. 2019) (Finding forum selection clause of contract enforceable against both signatory and non-signatory plaintiffs where all plaintiffs alleged a conspiracy with "potential liability [that] arises entirely out of the contract [containing the forum selection clause].") (citing *Manetti-Farrow, Inc. v. Gucci America*, 858 F.2d 509, 514 (9th Cir. 1988 ("Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract [containing the forum selection clause.").  See, also, *Marano Enters. Of Kansas v. Z-Teca-Rests, L.P.,* 254 F.3d 753, 757-758 (8th Cir. 2001) (Noting that "Leon Marano joined with Marano Enterprises and Bruce Marano, in bringing suit against Z–Teca under the agreements [containing the forum selection clause], acquiesced in the forum-selection clauses within those agreements."); *Donan Engineering Co v. Heinen,* 2022 W.L. 1274401 at *4 (Case No. 3:21-CV-00683, W.D. Ky, April 28, 2022) ("the policy reason behind the closely-related doctrine [is to] prevent[] parties from escaping their contractual

obligations through legal mechanisms such as a contractual assignment or creating an entity [for that improper purpose]"); *G.C. Franchising System v. Kelly*, 2021 WL 1209263 (S.D. Ohio 2021) (Forum selection clause of franchise agreement enforced against individual signatory defendant and the solely owned non-signatory defendant corporation under which signatory operated franchise business after both were sued for jointly breaching the franchising agreement containing the forum selection clause); *Regions Bank v. Wyndam,* 2010 WL 908753 (M.D. Tenn. 2010) (contract containing forum selection clause enforced against assignee of contract that asserted claims under the contract).  In all these cases, the claims at issue were predicated on a breach by a non-signatory, or an assertion of claims by a non-signatory, predicated directly on the substantive terms and/or duties established by contracts containing the forum selection clause at issue.

In the present case, the JVA is a contract between FGL and Scot Smith.  Firexo, Inc is not a party to the Agreement or an agent or assignee of any signatory. Nor is Firexo, Inc a third-party beneficiary if the JVA. A party has third party beneficiary rights only if a contract is made primarily for the benefit of that party. *Thorworks, supra.,* at 695; *Caruso v. National City Mortgage,* 187 Ohio App.3d 329, 335 (1st App. Dist. 2010); *State v. Makedonija*, 189 Ohio App.3d 73, 84 (10th App. Dist. 2010); *Westwinds Dev. Corp v. Outcalt*, 2009 WL 1741978 (11th App. Dist. 2009); *Am Rock, Inc v. Thermex Energy*, 80 Ohio App.3d 53, 58 (8th App. Dist. 1992); *The Chef's Garden v. Reep*, 2011 WL 2652330 (6th App. Dist. 2011). Here, not only is the JVA established primarily to advance the financial interests of FGL and its investor but the JVA contains an explicit provision, entitled "Third Party Rights," specifying that no one other than the signatories have any rights or obligations under this agreement ("This agreement is made for the benefit of the parties and their successors and permitted assigns and is not intended to benefit, or

6

be enforceable by anyone else.") (Clause 30.1).  FGL obviously had the ability to add Inc as a signatory to the JVA but chose not to do so.

### B.  Plaintiff Has Not Asserted Any Claim Under the JVA

The JVA is a shareholder's agreement.  It identifies the shareholders of an existing corporate entity, specifies the shares of stock to be held by each shareholder, and broadly addresses corporate governance by shareholders, including limitations on share transfers by stockholders, identity of corporate directors, voting rights of directors, confidentiality of trade secrets, restrictions on competition, procedures for maintaining books and records of account, payment of dividends to shareholders, exercise of a right of first refusal by existing shareholders in the event of a transfer of stock shares, and distribution of stock shares amongst the JVA's shareholders in the event of an IPO. In short, the JVA does nothing more than define the rights and obligations of the signatories as shareholders.

The business of the JVC is referenced, but only in the most general terms, stating simply that the business of the JVC "is the sale and distribution of [FGL] fire extinguishing products within the [United States]." The specific FGL fire extinguishing products that would be purchased by Inc, the time frame within which this business activity might occur, the delivery dates of any fire extinguishing products, the price of any individual fire extinguishing product, and the identify of any individual or entity responsible for the purchase, warehousing, distribution, and sale of FGL products or the means by which this would occur, were not addressed by the JVA.  In addition, the JVA specified that the directors were free to change the nature of the corporation's business. (Schedule 1, Item 5).  The Agreement also specified that its narrowly expressed terms constitute "the entire agreement between the parties" (Clause 22.1), that "[n]o variation to the agreement shall be effective unless in writing and signed by the parties (Clause 23.1), that rights and obligations arising under the agreement may not be assigned

without written consent of the signatories (Clause 21.1), and that the agreement is not intended to benefit or be enforceable by anyone other than the signatories and their assigns. (Clause 30).

None of Firexo, Inc's claims in this litigation are based on the JVA; nor could they have been.  Inc. was a separate preexisting corporation with more than one unrelated shareholder, and multiple directors. The actions of FGL, and the related claims at issue in this litigation, arose exclusively under a separate and independent distributor agreement.  The JVA is not implicated by plaintiff's claims.

It was not foreseeable that Firexo, Inc., as a separate corporate entity, incorporated in the United States, acting under a separate contract for the distribution and sale of FGL products only in the United States, marketing and selling to retailers, consumers and others solely in the United States, subject solely to consumer and product safety laws of the United States, and maintaining offices, employees, and warehousing facilities solely in the United States, would be bound by a provision requiring it to litigate claims in the United Kingdom based on the terms of a contract to which it was not a party, from which it received no beneficial right or interest, and under which no claims have been or can be asserted in support of the relief that is sought in this litigation.

**C.  Under Engliish Law, Firexo, Inc Is Not Bound By The JVA's Forum Selection Clause**

A court must determine whether a forum selection clause is applicable to a non-signatory before it can determine whether the clause should be enforced.[2] *Baker* at 1105. The applicability of the JVA's forum selection clause to Inc as a non-signatory third party requires interpretation

---

[2] If found to be applicable, federal courts consider the following factors in determining whether a forum selection clause should be enforced: (1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust. *The Bremen v. Zapata Off-Shore Co,* 407 U.S. 1, 10, 92 S.Ct. at 1913 (1972).

of the contract and the intent of the contracting parties. This is a matter of substantive law requiring application of the law of the forum state. See, *Walker v. AMVAC Chemical Corp,* 2018 WL 5023417 (Case No. 4:17-cv-17, 3/21/18, E.D. Tenn) at \*6.

The JVA in this case is distinct because it contains a choice of law provision as well as a forum selection clause. The choice of law provision states as follows:

> This agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation shall be governed by and construed in accordance with the laws of England and Wales.

(Clause 33.1). The state courts of Ohio have held that a choice of law provision in a written agreement is generally enforceable. *Schulke Radio v. Midwestern*, 6 Ohio St.3d 436, 438-439 (1983); *Century Business Service v Barton*, 197 Ohio App.3d 352, 366 (8th App. Dist. 2011); *Wise v. Zwicker,* 780 F. 3d 710, 715 (6th Cir. 2015).   Similarly, a federal court sitting in diversity will generally enforce the parties' contractual choice of governing law. *Express Packaging of Ohio, Inc v. American States Insurance Co,* 800 F Supp2d 886, 980 (N.D. Ohio 2011); *Savedoff v. Access Group, Inc,* 524 F.3d 754, 762 (6th Cir. 2008).  Based on the choice of law provision governing the JVA, English law is controlling in determining the applicability of the JVA's forum selection provision to a non-signatory third party.

English law is clear that the forum selection clause of the JVA does not apply to Inc because Inc is not a party to the agreement. Under English law, a third party may enforce a contractual provision that bestows a benefit on them, but it does not allow signatories to impose a duty on any non-party or bind a third-party to give up any right. Contracts (Rights of Third Parties) Act of 1999 ("Act of 1999") (https://www.legislation.gov.uk/ukpga/1999/31/contents).   Under the Act of 1999, third parties have no rights or obligations under a contract to which they are not a party unless the contract expressly provides otherwise.  Act of 1999, §§1(a) and (b), and §§ 2 and 3. This is particularly true if the contract, as in this case, evidences an intent to exclude third party

rights.  *Id.* (specifying that the right to enforce a contract, if it purports to a confer a benefit on a third party, does not apply "if on a proper construction of the contract it appears that the parties did not intend the term to be enforceable by the third party").  See, also, JVA, Clause 30.1. In addition, the Report of the U.K. Law Commission that made recommendations prior to the enactment of the Act of 1999 stated as follows with respect to enforcement of a forum selection clause limiting the jurisdiction of a court:

> [I]n our view, a third party should in general only be bound by [a] jurisdiction agreement if it had agreed to be so bound in which case it becomes a true contracting party to the agreement and is no longer a third party to it.

See, Law Commission, Report on Privity of Contract: Contracts for the Benefit of Third Parties, Law Commission No. 242, July 1996, Section 14.5, p. 161, attached hereto as Exhibit B.

For all the foregoing reasons, FGL's challenge to the Court's jurisdiction must be rejected.

Respectfully submitted,

/s/ Paul T. Belazis

Paul T. Belazis

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Memorandum of Law was served on all counsel of record by operation of the Court's electronic filing system this 15th day of August 2022.

/s/ Paul T. Belazis

_____

Paul T. Belazis