UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| FIREXO INC., <br><br> Plaintiff, <br><br> v. <br><br> FIREXO GROUP LIMITED, <br><br> Defendant. | Case No. 3:21-CV-02336 <br><br> Judge Jack Zouhary |

**FIREXO INC.'S MEMORANDUM
ADDRESSING THE COURT'S HEARING INQUIRIES**

**Introduction**

1. During the damages hearing on March 12, 2025, the Court asked questions regarding the existence of sales projections used by Firexo Inc. during 2020. In addition, the Court asked whether Firexo could supply additional market studies reflecting the fire extinguisher market in the United States in 2020 and 2021. Firexo respectfully presents its responses below, verified by the attached declaration of John Moscon, Firexo's Marketing Director, who also testified at the hearing.

**2020 Sales Projections**

2. As explained during the hearing, Firexo no longer has access to FGL's email server after FGL's wrongful termination of the agreement at the end of 2021. Consequently, John Moscon, Firexo's Marketing Director, searched his email communications with Scot Smith, Firexo's President, and with Josh Franek, Firexo's Operations Director, for any

      Firexo projections created in or related to 2020. Search efforts were coordinated with Mr. Smith, as explained in Mr. Mascon's Declaration, attached as Exhibit A.

3. As Mr. Mascon explains in his Declaration, all Firexo emails and related documents were maintained on Firexo Group Limited's server during the course of the parties' business relationship. This included thousands of emails from all of Firexo, Inc.'s internal staff to each other, to Group, and to any individual or entity with which they had any communication. This would have included any projections related to sales.

4. As Mr. Mascon also explains, in late 2021, FGL notified Firexo, Inc that its access to their server would be terminated within a week. Thereafter, all Firexo, Inc staff made an effort to download and save as much Firexo data, including emails and documents, as was possible from Group's server. Although this was partially successful, a great deal of information was lost. This was due to the exceedingly large quantity of information that needed to be downloaded and the related limitations on the amount of information that the electronic platform could accommodate as part of an effort to transfer and download such large volumes of data. Even some of the emails that were retrieved, when subsequently reviewed, were compromised for this same reason, with some emails stopping in mid-sentence and the balance of the email being entirely blank. Referenced attachments likewise were sometimes not captured. In addition, although Firexo, Inc. made an expansive documentary discovery request in this litigation, Group's attorneys withdrew before any documents were produced.

5. Firexo had previously sought, without success, this same information for review by its forensic accountant, David Long. However, the only projections found were those of FGL in 2019 and John Moscon's projection prepared in 2021. See Hearing Exhibits 1-4, and 66.

6. Despite good faith search efforts, no Firexo sales projections for 2020 could be located. A more detailed explanation of our search efforts and the related limitations are described in Mr. Mascon's attached Declaration.

**Fire Extinguisher Market Studies**

7. As Mr. Moscon testified at trial, the market studies he reviewed in 2020 were available at the websites listed in Hearing Exhibit 67; however, he could not reconstruct the information from that period. Nonetheless, he testified that he used in 2021 what he believed to be a conservative evaluation of the US market as being $1.3 billion in sales for each year in 2020-2023 in his sales projections presented in Hearing Exhibit 66. Likewise, FGL's own projections exceeded those values. See Hearing Exhibits 1-4.

    **NATURE OF THE PRODUCT.** One thing that FGL did not misrepresent was the ability of the product to put out all fires. A review of Exhibit 3 reflects this unique aspect of the product to put out **all** classes at fire AND that **there were no other competitors** who could match this performance. See Hearing Exhibit 3 at p. 000028. This product's ability was also confirmed at the UL testing, which unfortunately failed the durability tests related to the performance of the FGL's vessels. Accordingly, as testified by Mr. Moscon, he had a product that could successfully enter the commercial market once UL listing was obtained. Unfortunately for Firexo, that never happened.

    **A-I ASSISTED MARKET STUDY**. In further efforts to provide the Court with the requested information, Mr. Moscon undertook an internet search for "what was the north american fire extinguisher market in 2020" to locate the attached market information: *https://www.grandviewresearch.com/horizon/outlook/portable-fire-extinguisher-market/united-states*. The corresponding information, a copy of which is attached as

Exhibit B, reflects the sales for the fire extinguisher market specifically identifying sales for 2021 at just over $1.4 billion for the U.S. market. This information corroborates the conservative accuracy of Moscon's sales projections in Exhibit 66 which used a flat market of $1.3 billion for 2020-2023. The market information reflected on this site indicates that the market grew during this period.

                                                  Respectfully submitted,

                                                  */S/ Paul Belazis*
                                                  Paul Belazis (0030356)
                                                  Malone, Ault & Farrell
                                                  7654 W. Bancroft Street
                                                  Toledo, Ohio 43617
                                                  (419) 843–1333 Tel
                                                  (419) 843–3888 Fax
                                                  *belazis@maf-law.com*

                                                  Joseph P. Dawson (0003354)
                                                  7779 South Branch
                                                  Monclova, Ohio 43542
                                                  (419) 266–1808 Tel
                                                  *jpwdawson655@gmail.com*

                                                  *Counsel for Firexo, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2025, a copy of this motion was served on counsel of record for all parties through the Court's CM/ECF system and by email to Firexo Group Limited Liquidator, Harry Sanders at harry.sanders@mha.co.uk.

                                                        */S/ Paul Belazis*
                                                        Paul Belazis (0030356)
                                                        *Counsel for Firexo, Inc.*

Exhibit A

## DECLARATION OF JOHN T. MOSCON

I am an adult competent to make this Declaration which is made based on personal knowledge.

1. This Declaration is made in response to the Court's request for copies of any projections of anticipated profit that were made by Firexo, Inc in early 2020 after our distribution operations began. Unfortunately, our search has been unsuccessful. As I believe was briefly explained at the damages hearing, all of our Firexo emails and related documents were maintained on Firexo Group Limited's server. This included thousands of emails from all of our internal staff to each other, to Group, and to any individual or entity with which we had any communication. This would have included any projections related to sales.

2. In late 2021, Group notified us that our access to their server would be terminated within a week. Thereafter, all staff made an effort to download and save as much Firexo, Inc information as was possible from Group's server. Although this was partially successful, a great deal of information was lost. This was due to the exceedingly large quantity of information to be transferred and downloaded and the limitations in the amount of such information that our email platform could accommodate. Even some of the emails that were retrieved, when subsequently reviewed, were compromised for this same reason, with some emails stopping in mid-sentence and the balance of the email being entirely blank and some referenced attachments not captured.

3. In response to the Court's request, I made a thorough search of all of my emails and any related documents that had been downloaded from the Group server in an effort to locate any projections that had been prepared during my employment with Firexo, Inc.  I coordinated this effort with Scot Smith, Firexo's President, who conducted a separate search. My own emails as well as those of Scot Smith and Josh Franek, our Operations Director at the time, were searched.  We have unfortunately been unable to locate any additional projections beyond what was offered during the damages hearing on March 12.   I should also mention that I had previously been asked for this same information so that it could be reviewed by Firexo's forensic accountant, David Long, in this matter. However, the only projections found for Mr. Long's review from the early stages of our efforts to establish a distribution business were those prepared by Group in 2019, along with the later projection discussed during my testimony, as reflected in Exhibits 1-4, and 66.

4. Despite our good faith efforts, no Firexo sales projections for 2020 could be located.

5. As I had testified at trial, the market studies I reviewed in 2020 were available at the websites listed in Exhibit 67; however, those sites no longer provide information going back that far and I could not reconstruct the information from that period. As I also testified, I used what I believed to be a conservative evaluation of the US market as being $1.3 billion in sales for each year in 2020-2023 in my sales projections. As discussed at the damages hearing and presented in Exhibit 66, I used a conservative assumption of annual sales of $1.3

billion for the U.S. market for each of those four years. Likewise, FGL's own projections exceeded those values. See Exhibits 1-4.

6. As discussed in my testimony, the most important characteristics of FGL's fire extinguishing product, based on its representations and the investor materials provided by Group, were its ability to put out all classes of fires (categories A, B, C, D, and K, representing flammable products such as paper and wood, flammable liquids, electrical fires, combustible metals such as lithium, and combustible cooking oils and fats, along with it's the Firexo extinguishing liquid's environmental characteristics. These unquestionably set it apart from all competitors and generated tremendous interest as soon as we began getting out into the field, subject to U.L. approval, which was promised within six months, coupled with a representation that a similar European EN3 approval had already secured. FGL did accurately represent the ability of the product to put out all fires, which we personally observed during fire testing. Based on all our market investigations, no other competitors could even begin to match this performance during the period in question and the most commonly used extinguishing substances on the market were toxic in nature. I knew Firexo had a product that could successfully enter the commercial market once UL listing was obtained. However, UL listing for FGL's product could not be obtained as a result of the defects in its extinguishing vessels as described at the hearing in this case.

7. The Court has also requested additional market information related to the relevant time periods. In an effort to provide the Court with the requested market information, I utilized A-I and entered "what was the north american fire extinguisher market in 2020" in my web browser. One of the responses provided market information at:
https://www.grandviewresearch.com/horizon/outlook/portable-fire-extinguisher-market/united-states
The attached chart is a true and accurate copy of the chart located at this website.

8. The attached chart reflects the sales for the fire extinguisher market specifically identifying sales for 2021 at just over $1.4 billion. One can see by the chart that 2020 is slightly lower than 2021 so my $1.3B estimate in October 2021, Exhibit 66, was reasonable. Further, in an effort to be conservative in my approach, I used a flat market of $1.3 billion in sales for 2020-2023 but the market actually grew during this period.

I declare under penalty of perjury that the foregoing is true and correct.

_____
John T. Moscon

Exhibit B

