UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| FIREXO INC., <br><br> Plaintiff, <br><br> v. <br><br> FIREXO GROUP LIMITED, <br><br> Defendant. | Case № 3:21-CV-02336 <br><br> Judge Jack Zouhary <br><br> Paul T. Belazis (0030356) <br> Malone, Ault & Farell <br> 7654 W. Bancroft St <br> Toledo, Ohio 43617 <br> Telephone- (419) 843-1333 <br> Telecopier – (419) 843-3888 <br> belazis@maf-law.com <br><br> Joseph P. Dawson (0003354) <br> 7779 South Branch <br> Monclova, Ohio 43542 <br> Telephone: (419) 266-1808 <br> jpwdawson655@gmail.com <br><br> Counsel for Plaintiff |

**PLAINTIFF'S MEMORANDUM ADDRESSING ADDITIONAL QUESTIONS POSED BY THE COURT REGARDING EVIDENCE PRESENTED AT THE DAMAGES HEARING**

This memorandum addresses questions posed by the Court during its May 5, 2025 telephone conference with counsel regarding evidence presented at the March 12, 2025 damages hearing in this litigation.

1

1. Do plaintiff's damage claims separate and assure no duplication between its claim for fraud and those for breach of contract?

2. What exhibits and/or testimony support the claim for business losses?

3. What exhibits and/or testimony support the claim for loss of profits? The Court also asked, in relation to this question, about plaintiff's present value calculation and whether the present value calculation can be separated out by year.

The Court's questions are addressed below.

### Separate Damages for Breach of Contract and Fraud Claims

The damages sought for breach of contract are separate and distinct from those damages sought for fraudulent inducement of the parties' business relationship. There is no duplication or overlap. The two claims seek entirely different damages based on entirely different theories of loss. These are described in plaintiff's Proposed Findings of Fact and Conclusions of law. The damages sought for fraudulent inducement are limited to the out-of-pocket losses incurred in order to establish a distribution business, including hiring staff, promoting the business, securing warehouse space, purchasing inventory, and other related business and operational expenses. In contrast, the remedy sought for breach of contract is limited to loss of profit damages associated with FGL's breach.

### Lost Profit Damages for Breach of Contract

The amount of Firexo, Inc.'s lost profit damages for breach of contract are supported by several exhibits, along with witness testimony. **Exhibit 1**, bates page 000013, reflects FGL's own future profit projections for the U.S. market. The exhibit was authenticated by the testimony of Scot Smith. **Exhibit 62** shows the same FGL future profit projections for the US market but the exhibit shows the projections reduced to present value. The present value calculations were

performed by Firexo, Inc.'s economics expert David Long who testified at the hearing and verified his calculations. **Exhibit 66** reflects the separate lost profit analyses performed by Plaintiff's marketing and sales director, John Moscon, in 2021. Mr. Moscon authenticated his lost profit analysis at the hearing. He also described a long and very successful career in marketing and sales, a longstanding practice of making conservative profit projections while working for companies around the world, and a consistent history of delivering profits well above his projections. **Exhibit 63** also separately shows Mr. Moscon's projections reduced to present value. The present value projections were performed by David Long, Firexo, Inc.'s economics expert, who explained his calculations and authenticated the exhibit. As plaintiff has pointed out in its prior written submissions to the Court, FGL's profit projections far exceed Mr. Moscon's, even when FGL's projections are reduced to present value.

    The unique characteristics of FGL's fire extinguishers that distinguished its products from those of all competitors, including its unique ability to extinguish all types of fires and the extinguishing fluid's claimed non-toxic and biodegradable characteristics, along with the sales opportunities generated by these characteristics, was confirmed by Mr. Moscon and by Stefan Rahmqvist, who became a distributor of FGL extinguishers in the Nordic countries. During his testimony, Mr. Rahmqvist described the same kinds of strong sales opportunities, all of which evaporated when FGL's design defects and lies became evident. As both witnesses testified, their ability to successfully pursue these sales opportunities were sabotaged by FGL's ongoing deceptions, by disastrous and unsafe defects that emerged in FGL's fire extinguishing vessels and, in the U.S market, by the related inability to secure UL certification as a result of the fire extinguishing vessels' defects. See, also, Mr. Moscon's Declaration filed March 26, 2025. Plaintiff's claim for lost profits in the amount of **$3,507,000** – a total reflecting a

reduction to present value – is based on the above-described exhibits and related testimony at the hearing.

The Court also asked whether our present value calculations for lost profit can be separated out by year of loss. **Exhibit 63** provides this level of detail. It shows the present value of Firexo, Inc's lost profit, by year. Each year's loss is separately reduced to present value and reflected in the exhibit.

### **Fraudulent Inducement Damages**

Firexo, Inc.'s damages for fraudulent inducement are the losses incurred in order to establish a nationwide distribution capacity, including hiring employees, establishment of warehousing capacity, and purchase of FGL's products for distribution and sale in the U.S. market, starting in 2020 and continuing through 2023. Scot Smith, who served as Firexo, Inc.'s President, described these efforts during his testimony and confirmed that the company sustained ongoing annual losses as a result of FGL's misrepresentations. The annual financial losses incurred by Firexo, Inc. in order to undertake the distribution and sale of FGL products in the U.S. market are reflected in its related income tax returns for that same time period, including 2020, 2021, 2022, and 2023. These returns were marked at the hearing as **Exhibits 25 through 28** and authenticated by Mr. Smith during his testimony. The testimony of Firexo Inc.'s economics expert, David Long, confirmed the financial losses associated with the operation of the company reflected in its tax returns correspond with losses claimed as damages. Mr. Long testified that he had reviewed all Firexo, Inc. tax returns for the four-year period at issue and, in each year, the company experienced a financial loss. As Mr. Long explained, the loss is reflected in Schedule M-2 of the tax return, along with any cumulative losses from prior years. The total cumulative loss of **$1,104, 215** is reflected in **Exhibit 28**, which is the 2023 tax return. *See,*

**Exh. 28, bates page 000238**. Mr. Long confirmed that the carry-over losses reflected in Schedule M-2 of Exhibit 28 are an accurate reflection of the company's cumulative annual losses, all of which, as we have shown, resulted from FGL's misrepresentations. *See, also*, Amended Complaint, ¶¶ 8, 15, 16, 61, 62, and 63.

One additional item of business loss not reflected in the company's tax returns as a loss is the start-up inventory cost of $297,374 for the purchase of FGL products as its initial inventory. Mr. Smith authenticated **Exhibit 29** as the initial start-up inventory cost of **$297,374**. Mr. Smith also confirmed that this amount was paid but never reimbursed by FGL after design defects emerged, or even after all fire extinguishing vessels were returned to FGL. This testimony also conforms with the allegations of the Amended Complaint (Doc 9), ¶ 17, 27, 42, 43, 44. Both Mr. Smith and Mr. Long testified that this element of loss was not reflected in the carry-over losses described above because it would ultimately be dealt with and shown as a loss in the subsequent dissolution of the company at the conclusion of the litigation. These two elements of financial loss -- **$1,104,215** reflected in the returns as carry-over loss and **$297,374** incurred to purchase start up inventory -- total **$1,401,589**. The Amended Complaint alleges, and both Smith and Moscon testified, that the company's financial losses resulted from Plaintiff's reliance on FGL's misrepresentations.

Finally, plaintiff believes that the above request for an award of damages -- $1,401,589 -- should be reduced in the amount of **$74,697**. In the course of reviewing exhibits for the purpose of responding to the Court's additional questions, counsel discovered that Firexo Inc.'s 2020 tax return shows the inclusion of a carryover loss in the amount of $74,697 that relates to a time period prior to 2020. This carryover loss is reflected at the bottom of Exhibit 25, bates 000188, and was inadvertently included in plaintiff's request for damages.

Firexo, Inc.'s right to serve as a distributor in the U.S. market was not established until August 2019. While some preliminary steps were undertaken in late 2019 to begin the establishment of a distribution capacity, including placing an order for the purchase of start-up inventory (Exhibit 29), evidence at the hearing established that Mr. Smith and Mr. Mascon fully began their efforts to distribute and sell FGL products in early 2020 and continued through 2023. Prior to execution of the distributorship agreement in August 2019, Mr. Breith was the CEO and sole shareholder of the Firexo, Inc. See, Amended Complaint, 8, 17, and 18. *See, also,* Declaration of Scot Smith, ¶ 1 (Doc. 17-1, Page ID 271). Consequently, plaintiff's request for damages associated with fraud related financial losses should be reduced to **$1,326,892,** solely reflecting operational losses from 2020 to 2023.

For the same reason, plaintiff's punitive damages claim, which is based on twice the amount of financial loss attributable to FGL's fraud, must be reduced to $2,652,784, pursuant to R.C. sec. 2305.22. Attorneys' fees, if awarded, will be separately submitted for determination.

Accordingly, Plaintiff claims total damages with the above revision as follows:

Plaintiff's breach of contract claim:................................................................... $3,507,000.00

Plaintiff's fraud claim:

    a. Compensatory damages........................................................... $1,326,892.00

    b. Punitive damages under R.C.§ 2305.22…………………………..$2,652,784.00

**Total Damages................................................................................................ $7,486,676.00**

        Respectfully submitted,

        /s/ Paul T. Belazis

        Paul T. Belazis

**CERTIFICATE OF SERVICE**

This is to certify that on May 10, 2025 a copy of Plaintiff's Memorandum Addressing Questions Posed by the Court was served on counsel of record for all parties through the Court's CM/ECF system, and on Harry Sanders, the appointed Liquidator for Firexo Group Limited, by email at Harry.Sanders@mha.co.uk.

/s/ Paul T. Belazis
Paul T. Belazis (0030365)
Malone, Ault & Farell
7654 W. Bancroft Street
Toledo, Ohio 43617
(419) 843–1333 tel.
(419) 843–3888 fax
belazis@maf-law.com
Counsel for Firexo, Inc.