IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| FIREXO INC., | Case No. 3:21-cv-02336 |
| Plaintiff, | Hon. Jack Zouhary |
| v. | |
| FIREXO GROUP LIMITED, | |
| Defendant. | |

**FIREXO CORPORATION'S MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION TO JOIN**

**I.   FACTS**

David Brieth is the CEO of Corp. (Declaration of David Brieth, ¶ 1, attached as **Exhibit 1**). Corp. is a holding company that has never traded or carried out business operations. *Id*. Brieth was also a director of FGL until it was placed into creditors voluntary liquidation on November 7, 2024. *Id*. On November 7, 2024, all management functions were taken over by the joint liquidators appointed by FGL's creditors. *Id*. Brieth is also a director of Plaintiff. *Id*. The 30% interest that FGL has in Plaintiff has been treated by the joint liquidators as having no value. *Id*. FGL is a United Kingdom company that was incorporated on November 28, 2017. *Id*. at ¶ 2.

FGL was forced to file for the Creditor Voluntary Liquidation in large part because of litigation initiated by Plaintiff and Plaintiff's majority shareholder in this Court and in England.  *Id* at ¶ 3.  Plaintiff is well aware that FGL's assets were drained as a result of the litigation instituted by Plaintiff. As a result, the directors placed FGL into liquidation. *Id*.

Plaintiff has asserted its claim as a creditor in FGL's Voluntary Liquidation in the U.K. *Id.* at ¶ 4. The Voluntary Liquidation is ongoing and the rights of all creditors, including Plaintiff, are protected and regimented under the Voluntary Liquidation process of FGL.

By initiating this action against Corp., Plaintiff is seeking to circumvent the Voluntary Liquidation process in the U.K. *Id.* at ¶ 5. Plaintiff's claims that FGL assets were transferred without any or proper consideration for the true value of assets is being reviewed by the joint liquidators in the U.K. as part of their statutory duties. *Id.* The market value of these assets will be distributed to all creditors, including Plaintiff. As part of the evaluation, the U.K. liquidators will assess whether Plaintiff has any assets that should be realized for the benefit of FGL's creditors. The current assessment is that FGL's 30% stake in Plaintiff has zero value. *Id.* at ¶ 6. FGL has transferred no assets to Corp. *Id.* at ¶ 7.

Plaintiff had sought leave to add Corp. as a Defendant. This Court allowed Plaintiff to amend its complaint to add Corp. Plaintiff chose not to amend and instead filed for default against FGL, who was in Voluntary Liquidation. *Id.* at ¶ 8. As such, Corp. did not have the opportunity during the litigation to object to being named as a defendant nor defend the merits of the case. *Id.* at ¶ 9. After obtaining an unopposed default judgment, Plaintiff now seeks to have the judgment applied to Corp. *Id.*

Since November 2024, FGL has been under the control of joint liquidators, not under the control of Corp. *Id.* at ¶ 10. The liquidators are assessing whether there was any wrongful transfer of FGL assets to any entity. *Id.* The corporate minutes attached to this declaration as Exhibit A show the considerations that Corp. took to ensure it complied with U.K. law and protected FGL's creditors. *Id.* at ¶ 11. As part of the liquidation process, an independent asset valuation of FGL was performed. This valuation is attached to this

Declaration as Exhibit B. *Id*. These documents show that FGL was properly placed in liquidation and that there is an independent determination of what assets are part of the FGL liquidation process. All assets, including shares of other entities and IP property, was valued. *Id*.

At the October 24, 2024 meeting, it was stated that a solvency review was conducted for the whole Firexo group of companies. *Id*. at ¶ 12. Two licensed insolvency practitioners assisted the Board in its decision-making process. It was determined that the best interest of creditors of any insolvent subsidiaries should be the priority of the Board. *Id*. The Board commissioned the independent valuation of key group assets. *Id*. It was determined that FGL could not meet the costs of defending litigation going forward which would harm FGL creditors. *Id*. The Board considered the best interest of FGL creditors. *Id*.

Also at the October meeting, the Board evaluated the assets of FGL based upon the independent valuation. *Id*. at ¶ 13. The Board determined that an Intellectual Property Deed of Assignment dated September 8, 2021 had not yet generated consideration for FGL. *Id*. Based upon the independent valuation, Firexo Holding Limited agreed to pay £225,000 to the joint liquidators of FGL in consideration for the IP. *Id*. Further, Firexo Holding Limited agreed to pay €3,00 to the joint liquidators of FGL for the shares in Firexo S.R.L. *Id*. Again, this was based on an independent valuation of the shares. It was also determined by the independent valuer that shares owned by FGL in Firexo Limited and Firexo Motorsports Limited could be transferred for no consideration. These share transfers were then duly executed in favor of Firexo Holdings Limited. All these transfers were run by the proposed liquidators prior to their formal appointment on November 7, 2024. *Id*. Finally, at the October meeting it was determined that the Board of FGL should

3

pass the necessary resolutions to place FGL into Creditors Voluntary Liquidation. *Id.* at ¶ 14. The Corp. board took all necessary and appropriate steps to ensure that FGL's creditors were protected to the full extent of insolvency law. *Id.* at ¶ 15.

The corporate identities of Corp. and FGL are distinct. *Id.* at ¶ 16. Corp. has raised investment from a significant new stakeholder pursuant to a subscription agreement attached to the Declaration as Exhibit C. *Id.* Plaintiff is fully aware of this investment as its solicitors in London have contacted the investor in regard to the litigation in London against David Brieth. The litigation in London against FGL has been stayed pursuant to an agreement between Plaintiff's majority shareholder, other creditors, and FGL's joint liquidators. *Id.*

Plaintiff has alleged that Corp. took over Plaintiff's exclusive distribution agreement. This is not true. The contract remained in the names of Plaintiff and FGL until was terminated by FGL in December 2021. *Id.* at ¶ 17. Plaintiff also has alleged that FGL transferred assets without value. This is false. As shown in the Board minutes and the valuation report, FGL assets were transferred for fair value. *Id.* at ¶ 18. Further, none of the assets were transferred to Corp. The value of the assets, now managed by the joint liquidators, will be distributed to the appropriate creditors. Significantly, Plaintiff has not filed the proof of the judgment in this case in the liquidation proceedings. *Id.* Instead, Plaintiff is attempting to bypass other creditors through this motion. *Id.* Plaintiff also alleges that FGL and Corp. had the same officers. Although this is not uncommon between parent and subsidiary companies, it is not true. *Id.* at ¶18. For example, Paula Ward was a director of Corp., but not FGL. *Id.* Since November 7, 2024, FGL has not been operated by the Board of Directors as it being wound down completely by the independent insolvency practitioners. *Id.* at ¶ 20.

4

Corp. is not a mere continuation of FGL. As noted above, FGL was a subsidiary of Corp. FGL was placed in voluntary liquidation. No assets were transferred from FGL to Corp. Additionally, Corp. was directed in large part by a new investor. *Id.* at ¶ 21. All corporate formalities between a parent company and a subsidiary were followed.

Further, Plaintiff's allegation in paragraph 17 of its motion to join Corp. that Corp. assumed FGL's manufacturing role is false. *Id.* at ¶ 22. FGL was the group company that originally raised purchase order for Firexo extinguishers manufactured in China. That relationship with the independent manufacturer moved to Firexo Limited and Firexo Sp. Zoo approximately three years ago. *Id.*

The Corp.'s Board of Directors was not aware that Corp. became a void corporation under Delaware law in March 2025 when it received the motion to join Corp. Corp. did not receive notices that it was delinquent in paying franchise taxes. *Id.* at ¶ 23.

## II. PROCEDURAL HISTORY

On March 2, 2022, Firexo Inc. ("Plaintiff") filed an amended complaint against Firexo Group Limited ("FGL"). On September 20, 2024, counsel for FGL's motion to withdraw was granted. On October 3, 2024, Plaintiff filed a motion for leave to amend its complaint to join Firexo Corporation ("Corp.") as a defendant. On December 3, 2024, this Court ordered that Plaintiff could refile a motion to add Corp. as a defendant. The Court further noted that when granted, service would need to be obtained on the new Defendant and counsel for Corp. could argue the propriety of Corp. remaining in the case. Instead of filing an amended complaint joining Corp., Plaintiff filed a motion for default judgment on December 4, 2024. Default was entered against FGL on December 16, 2024. After a hearing, this Court granted a default judgment against FGL in the amount of $3,998,802. On August 6, 2024, Plaintiff was awarded its attorney fees. On the following day, Plaintiff

5

filed a motion to join Corp. to this action pursuant to Fed.R.Civ.P. 25(c) and a Motion for Appointment of Receiver.

On September 19, 2025, Corp. filed a Motion to Strike Plaintiff's Motion to Join on the basis that Corp. is a void corporation under Delaware law. Those arguments, although dispositive, will not be reasserted in this memorandum, but are preserved.

Plaintiff's Motion to Join should be denied for four reasons: 1) the Court lacks personal jurisdiction over Corp.; 2) international comity requires the Court to defer to U.K. bankruptcy proceedings; 3) substitution under Rule 25(c) is not warranted; and 4) appointment of a receiver is not warranted.

### III. LAW AND ARGUMENT

#### A. Corp. is Not Subject to Personal Jurisdiction in Ohio.

Corp. is formed under the laws of Delaware. (Brieth Dec., ¶ 24) It does not conduct any business in the United States. *Id.* It has not entered into any contractual relationship with any Ohio company, entity, partnership, or corporation. *Id.* Corp. has no offices in Ohio, does not own property in Ohio, does not have employees in Ohio, or maintain bank accounts in Ohio. *Id.* at ¶ 25. Corp. had no business relationship with Plaintiff. *Id.* at ¶ 26. None of the disputed allegations in Plaintiff's motion to join arose in Ohio. Corp. is a void Delaware corporation and FGL is a U.K. company that is in liquidation. *Id.* at ¶ 27. Given these facts, Corp. is not subject to jurisdiction in this Court.

Federal Courts consult the law of the forum state to determine the Court's reach in a diversity action. *Lak, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1298 (6th Cir. 1989). To establish that the Court has personal jurisdiction over Corp., Plaintiff must use specific facts to establish jurisdiction by a preponderance of the evidence. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). A Court can only assert proper personal

6

jurisdiction if the circumstances satisfy both the Ohio long-arm statue and constitutional due process. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). In the instant case, there is not proper personal jurisdiction because Plaintiff cannot satisfy either the Ohio long-arm statute or the minimum requirements of constitutional due process.

In Ohio, there is a two factor test to determine whether an out-of-state defendant in a contractual dispute has "transacted business" with the meaning of Ohio's long-arm statute. *Paglioni & Assocs. V. WinnerComm, Inc.*, S.D. Ohio No. 2:06-cv-00276, 2007 U.S.Dist. LEXIS 18612 at *25 (Mar. 16, 2007). The first factor is whether the out-of-state defendant initiated the business dealing in the forum state. The second factor is whether parties conducted negotiations or discussions in the forum state or with terms affecting the forum state. *Id.* In the present case, Corp. has conducted no business, negotiations, or any other actions connected with Ohio. As such, the Ohio long-arm statute will not permit the exercise of jurisdiction over Corp.

Further, any assertion of personal jurisdiction over Corp. would violate due process. *See Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 382 (6th Cir. 1968). The Sixth Circuit examines three criteria: 1) defendant must purposefully avail itself of privilege of acting in the forum state or causing consequence in the forum state; 2) the cause of action must arise from the defendant's activities there; and 3) the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *Id.* at 382. Plaintiff cannot establish any of these factors as to Corp. Corp. has no relationship with Ohio. Further, the facts of the case do not arise from Corp.'s contacts with Ohio. The allegations involve the actions between FGL, a U.K. company, and Corp. a Delaware company. No actions between the companies

7

occurred in Ohio. Any exercise of jurisdiction over Corp. in Ohio would be unreasonable as Corp. has no contacts with Ohio.

In a case cited by Plaintiff, *Panther Pumps & Equipment. Co. v. Hydrocraft, Inc.*, 566 F.2d 8 (7th Cir. 1977), the Court found that the motion to substitute one of the entities, Universal, "faces an insurmountable obstacle: lack of personal jurisdiction." *Id.* at 23. The Court further noted that although it held that "Universal is merely Beck's alter ego, that fact cannot alone confer personal jurisdiction over Universal." *Id.* The same is true here.

Plaintiff's motion to join Corp. must be denied as Corp. is not subject to jurisdiction in this Court.

### B. This Court Should Defer to the Insolvency Proceedings in the U.K. and Abstain from Ruling on the Motion.

As noted above, FGL was placed in voluntary liquidation in the U.K. As part of the liquidation process, the rights of creditors are protected by joint liquidators appointed by FGL's creditors. Plaintiff is one of those creditors who have submitted a claim and participated in the process. As part of their role, the joint liquidators investigate whether any assets have been improperly transferred from FGL. They have done so. Plaintiff has sought to circumvent this process by filing the current motion to join Corp. Although no assets were transferred to Corp., Plaintiff has claimed that some FGL assets have been transferred to Corp. subsidiaries. The joint liquidators review these transactions to determine whether FGL has received fair value. As noted above, an independent valuation was performed which valued FGL's assets and determined their fair value. These are the very same assets Plaintiff is claiming were fraudulently transferred.

It is undisputed that FGL is involved in an insolvency action in the U.K. which includes Plaintiff as a creditor. International comity reflects "the principle of respect to sovereign nations." *Belize Telecom, Ltd. V. Gov't of Belize*, 538 F.3d 1298, 1305 (11th Cir.

8

2008). Foreign bankruptcy actions have been recognized as a category of parallel proceedings that are particularly deserving of comity, and support abstention here. *See Finanz AG Zurich v. Banco Econimoco S.A.*, 192 F.3d 240, 246 (2d Cir. 1999)("We have repeatedly noted the importance of extending comity to foreign bankruptcy proceedings. Since "[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding," American courts regularly defer to such actions.") Federal courts have observed the fundamentally similar character of U.S. and U.K. bankruptcy proceedings. *See Linder Fund, Inc. v. Polly Peck Int'l, PLC*, 143 B.R. 807, 810 (S.D.N.Y.1992). When determining whether abstention is appropriate, the Court must consider three factors: "(1) international comity; (2) fairness to litigants; and (3) efficient use of scarce judicial resources." *Belize Telecom*, 528 F.3d at 1305.

In the present case, this Court should allow the proceeding in the U.K. to proceed and should abstain from ruling on the motion to join Corp. The liquidation of FGL is proceeding without issues in the U.K. Those proceedings protect all creditors of FGL, including the plaintiff. The liquidation proceedings evaluate FGL's asset and any transfers of FGL assets. To undermine that process by proceeding against Corp. would undermine international comity, would be unfair to other creditors of FGL who should receive distributions pursuant to the fair and orderly proceedings of FGL's insolvency. Lastly, given that Plaintiff's interest is protected in the insolvency proceedings, it would be a waste of judicial resources to determine whether Plaintiff's allegations of improper transfers are substantiated.

### C. Substitution of Corp. Pursuant to Civ.R. 25(c) is Not Appropriate.

In the context of substitution of corporate entities under Rule 25(c), a transfer of interest occurs "when one corporation becomes the successor by merger or other

9

acquisition of the interest the original party had in the lawsuit." *Melton v. Bank of Lexington*, No. 02-1152 B/P, 2008 U.S. Dist. LEXIS 26303, at *1 (W.D. Tenn. Mar. 28 2008) (citing *Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71 (3d Cir. 1993). Courts have recognized the importance of due process when deciding Rule 25(c) motions. *Luxliner*, 13 F.3d at 72. "Before a party may be deprived of a property interest, due process requires, at a minimum, notice and an opportunity to be heard." *Id*. The determination of whether a transfer of interest has occurred to trigger a court's discretion in substituting a party is a question of fact. *Id*.

Should the Court find jurisdiction and decide not to abstain from ruling on the basis of comity, and choose to resolve the motion on the merits, the motion should be denied. Plaintiff claims that Corp. should be substituted as successor-in-interest to FGL pursuant to Civil Rule 25(c). As discussed above, FGL is a subsidiary of Corp. There is no evidence that Corp. is a successor-in-interest to FGL. At all times, Corp. as the parent company followed corporate formalities in regard to FGL. Plaintiff and its majority shareholder initiated costly litigation against FGL in Ohio and the U.K. As a result of this litigation, the majority of FGL's assets were drained. Corp. made the decision that the continuing litigation would eventually drain all FGL's assets which would result in the creditors receiving nothing. Based on that determination and its obligations under U.K. law, the board determined that FGL must be placed in Voluntary Liquidation. In a further effort to protect FGL creditors, including Plaintiff, the Board engaged a firm to independently value the assets of FGL. That valuation was completed. As a result, funds were paid to FGL. Those funds will eventually be distributed to FGL creditors, including, Plaintiff. As set forth in the Brieth Declaration, Plaintiff cannot establish any of the

elements required to find Corp. a successor-in-interest to its subsidiary. There was no transfer of any assets to Corp. from FGL.

"A parent corporation generally is not liable for the acts of its subsidiary, even if the subsidiary is wholly owned." *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007). If the corporate form is used for improper purposes, the corporate form will be disregarded, and the parent corporation and its subsidiary will be treated as a single entity. *United States v. Bestfoods*, 524 U.S. 51, 62 (1998). In such cases, the subsidiary corporation is treated as the alter ego of the parent corporation, thereby rendering the parent corporation liable for the obligations of the subsidiary. *LeRoux's Billyle Supper Club v. Ma*, 77 Ohio App.3d 417, 421. Under Ohio law, the corporate form may be disregarded and the parent corporation held liable for the obligations of the subsidiary if the plaintiff shows: "(1) the parent's control over the subsidiary was so complete that the subsidiary had no separate mind, will, or existence of its own: (2) the parent's exercise of control over the subsidiary amounted to fraud or an illegal act against the plaintiff; and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Corrigan*, 478 F.3d at 724.

As noted in the Brieth Declaration, no assets were transferred from FGL to Corp. Contrary to Plaintiff's allegations, FGL's primary assets were not transferred, but were drained by the ongoing litigation brought by Plaintiff and its majority shareholder. Without the costly litigation, FGL would not have been placed in Voluntary Liquidation. FGL clearly had an existence of its own. It defended itself in litigation and the remaining FGL assets will be distributed as part of the Voluntary Liquidation process. Also, contrary to Plaintiff's allegations, the transfer of shares by FGL in other entities were independently valued and FGL was paid the fair market value. The same analysis applies

to the IP that FGL transferred. It received fair market value from the entity to which it transferred the IP. These actions are each subject to the oversight of the joint liquidators.

Plaintiff claims that there was a de facto merger between FGL and Corp. The evidence does not support this allegation. A *de facto* merger is a transaction that results in the dissolution of the predecessor corporation and is in the nature of a total absorption of the previous business into the successor. *Welco Indus. v. Applied Cos.*, 67 Ohio St.3d 344, 349 (Ohio 1993). There was no complete transfer of assets from FGL to Corp. In fact, no assets were transferred. Further, FGL continued as a corporation until it could no longer defend its lawsuits and went into Voluntary Liquidation. No merger resulted in FGL's dissolution.

Plaintiff also claims that Corp. was a mere continuation of FGL. Again, the concept of "mere continuation" does not apply to these circumstances. Corp. was not a continuation of FGL. FGL was a subsidiary of Corp. that had its own assets. These assets included shares of other companies, IP, and the funds to defend itself against the litigation initiated by Plaintiff. Mere continuation exists when "one corporation sells its assets to another corporation with the same people owning both corporations." *Welco*, 67 Ohio St.3d at 350. In the present case, Corp. did not acquire the assets of FGL. Rather, FGL went into Voluntary Liquidation. Its assets will be distributed to creditors. Plaintiff also claims that Corp. took over Plaintiff's exclusive distribution agreement. This is false. The contract remained in the names of Plaintiff and FGL until it was terminated by FGL.

Lastly, Plaintiff claims that the corporate veil should be pierced on the basis that Corp. committed fraud against Plaintiff by wrongfully distributing FGL's assets. When a plaintiff seeks to pierce the corporate veil based on fraud, that fraud must be plead with the specificity required by Fed. Civ. Proc. 9(b). Rule 9(b) generally requires a plaintiff to

12

plead the specific "time, place, and content of the alleged misrepresentation on which she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Fortress Value Recovery Fund 1, LLC v. Columbus Components Grp.*, No. 1:11-cv-0200, 2011 U.S. Dist. LEXIS 32663 (N.D. Ohio Mar. 28, 2011).

As set forth in the Brieth Declaration, FGL's assets are being overseen by the joint liquidators. Further, prior to the placement of FGL into Voluntary Liquidations, a firm was engaged to evaluate the value of FGL assets. As a result of the valuation, additional funds were paid to the FGL estate. There is no evidence that any assets were fraudulently transferred from FGL to Corp. or any other entity.

In paragraph 50 of its motion to join, Plaintiff claims that Corp. is the real party in interest because of various allegations. Each of which are false. Corp. does not own and control FGL completely. Corp. has no control over FGL as it is in Voluntary Liquidation. Corp. has not acquired any of FGL's business operations or intellectual property. All assets of FGL are in its estate as overseen by the joint liquidators. Under U.K. law, to protect the FGL creditors, FGL was placed in Voluntary Liquidation.

Under Ohio law, Plaintiff cannot establish that Corp. is liable as a successor-in-interest to FGL.

### D. Appointment of a Receiver is Not Warranted.

"In a receivership proceeding, the district court has 'broad powers and wide discretion' in crafting relief." *Quilling v. Trade Partners, Inc.*, 572 F.3d 293, 298 (6th Cir. 2009). "Under Federal Rule of Civil Procedure 66, a 'district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court.'" *Fannie Mae v. Hatz One LLC*, 2025 U.S. Dist. LEXIS 36079, at * 6 (N.D. Ohio Feb. 28, 2025).

13

"The party seeking the appointment of a receiver bears the burden of proof." *Id.* at * 7. The burden is "heavy" because the nature of the relief is "extraordinary." *Id.* at 8.

"The appointment of a receiver for a solvent going business corporation is a drastic measure which will be taken by a court of equity in the exercise of its discretion only where there is imminent danger of loss…and there is no adequate remedy at law. While the appointment of a receiver is in the Court's discretion, it is 'an extraordinary remedy that is only justified in extreme situations.'" *BMW of N. Am., LLC v. CJM Auto. II, LLC*, 2018 U.S. Dist. LEXIS 112982, at * 4 (N.D. Ohio Apr. 26, 2018). (internal citations omitted).

"There is no precise formula for determining when appointment is warranted[.]" *Integrity Energy. Ltd. v. Hunter*, 2021 U.S. Dist. LEXIS 13629, at * 2 (N.D. Ohio July 22, 2021). The *Fannie* court provided, "[c]ourts consider the following factors:

> "(1) the adequacy of the security; (2) the financial position of the borrower; (3) any fraudulent conduct on the defendant's part; (4) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (5) inadequacy of legal remedies; (6) the probability that harm to the plaintiff by denial of appointment would outweigh injury to parties opposing appointment; (7) the plaintiff's probable success in the action and the possibility of irreparable injury to the plaintiff's interest in the property; and (8) whether the plaintiff's interests sought to be protected will in fact be well-served by a receivership."

*Fannie Mae v. Hatz One LLC*, 2025 U.S. Dist. LEXIS 36079, at * 7 (N.D. Ohio Feb. 28, 2025).

In his Declaration, David Brieth articulated the steps that Corp. took to preserve the assets of FGL for the benefit of FGL's creditors. Corp. relied upon professional advice in determining that it was appropriate for FGL to enter Voluntary Liquidation. Further, Corp. retained a firm to independently evaluate FGL assets. Since November, when FGL was placed in voluntary liquidation, Corp. has had no control over FGL or its assets. If Corp. is substituted as a Defendant, Plaintiff, as with any other creditor, can attempt to

14

collect its judgment. There are no extenuating circumstances in this case which would warrant such a drastic measure. As noted above, each of Plaintiff's litigation moves have been an attempt to be treated above other FGL creditors. Plaintiff had the opportunity to amend its complaint to add Corp. to the litigation prior to judgment. Instead, Plaintiff moved for default judgment, obtained an unopposed judgment, and immediately moved to have Corp. be responsible for the judgment without the opportunity to defend the merits. Plaintiff was fully aware that when it moves for and obtained the default judgment against FGL, there were insolvency proceedings in the U.K. Plaintiff should not be rewarded for its gamesmanship. This is particularly true given the fact that Corp. has acted appropriately and legally.

Plaintiff's unsubstantiated allegations do not warrant the harsh remedy of the appointment of a receiver.

## IV. CONCLUSION

Plaintiffs Motion to Substitute Firexo Corporation as a Defendant should be denied. First, Corp. has insufficient contacts with Ohio to be subjected to jurisdiction in this Court. Next, the FGL insolvency proceedings are ongoing in the U.K. As such, this Court should abstain from ruling on Plaintiff's motion to join to allow the U.K. proceedings to orderly and fairly distribute FGL assets. Further, Plaintiff has not provided sufficient evidence to demonstrate that Corp. should be liable as a parent company for the debts of FGL. All corporate formalities were observed, and Corp. received no assets from FGL. Given the above, there is no ground to appoint a receiver for Corp. Lastly, Plaintiff's motion is not supported by any admissible evidence. Corp.'s memorandum in opposition is fully supported by the Declaration of David Brieth.

For the foregoing reasons, Firexo Corporation respectfully requests that Plaintiff's motion be denied.

Respectfully submitted,

*/s/ James P. Silk, Jr.*
James P. Silk, Jr. (0062463)
Teresa L. Grigsby (0030401)
SPENGLER NATHANSON P.L.L.
900 Adams Street
Toledo, OH  43604
Telephone:  (419) 241-2201
Facsimile:  (419) 241-8599
jsilk@snlaw.com
tgrigsby@snlaw.com
*Counsel for Firexo Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically filed this 6th day of October, 2025. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ James P. Silk, Jr.*
James P. Silk, Jr.
*Counsel for Firexo Corporation*

779051