IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| FIREXO INC., <br><br> Plaintiff, <br><br> v. <br><br> FIREXO GROUP LIMITED, <br><br> Defendant. | Case № 3:21-CV-02336 <br><br> Judge Jack Zouhary |

**FIREXO, INC.'S REPLY IN SUPPORT OF MOTION TO SUBSTITUTE SUCCESSOR IN INTEREST**

1.  Firexo, Inc. ("Plaintiff") submits this Reply in support of its motion to substitute Firexo Corporation ("Corp.") in place of Firexo Group Ltd. ("FGL") pursuant to Fed. R. Civ. P. 25(c). Corp.'s Opposition raises two primary new arguments: (1) that principles of international comity, owing to FGL's ongoing U.K. insolvency proceeding, counsel against substitution, and (2) that the corporate liquidation and valuation process negate any successor liability.

2.  These arguments are misplaced. International comity does not bar this Court from recognizing the reality that Corp. has succeeded to FGL's interests, especially given that the operative transfer of FGL's business occurred on November 5, 2021— more than *three years* before FGL was placed into U.K. liquidation. Likewise, Corp.'s emphasis on formalities and the later insolvency process does not erase the substantive continuity between FGL and Corp. under Ohio's successor-liability law.

## I. ARGUMENT

### A. International Comity Does Not Bar Substitution of Corp.

3. Corp.'s request that this Court "abstain" from acting, out of deference to the U.K. insolvency proceedings, finds no support in Sixth Circuit or Ohio law. Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Abstention based on international comity is an *"extraordinary and narrow exception"* to that duty, and the Sixth Circuit has not adopted a broad doctrine of "international comity abstention." *See Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467–69 (6th Cir. 2009).

4. In *Answers in Genesis*, the court held that even the pendency of a parallel foreign proceeding did not relieve a federal court of its obligation to adjudicate a controversy properly before it, absent exceptional circumstances. *Id*. Here, Corp. has not shown any extraordinary circumstance that would justify this Court declining to decide a routine Rule 25(c) motion. There is no true "parallel" proceeding addressing the parties' rights in this lawsuit. The U.K. liquidation is aimed at winding up FGL's assets for the benefit of its creditors; this motion, on the other hand, is aimed at aligning the judgment obtained with the party that "has come to own the property in issue." *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 49 (1st Cir. 2003). Accordingly, respecting comity does *not* require this Court to stay its hand; on the contrary, the Court should fulfill its unflagging obligation to proceed with adjudicating the case.

5.  Recognizing Corp. as FGL's successor for purposes of this litigation does not "interfere" with the U.K. liquidation or offend any principles of international respect—at least none that concern the U.K. liquidators. While the liquidators have received notice of every filing in this case (starting with Plaintiff's first post-liquidation filing; *see* Doc. 37, PageID # 713), they have not sought U.S. recognition under the Bankruptcy Code, even though Chapter 15 gives a foreign representative a clear pathway to seek recognition and, if warranted, a stay or injunction of U.S. litigation.[1] *See* 11 U.S.C. §§ 1515, 1519–1521. The liquidators' decision not to invoke Chapter 15 here speaks volumes: there is no foreign request for deference from the officials administering FGL's liquidation, and thus no extraordinary basis justifying abstention. Plaintiff merely asks the Court to acknowledge that, as between FGL and Corp., Corp. is now the entity with a real interest in (and responsibility for) the business that gave rise to Plaintiff's claims. Comity does not compel this Court to close its eyes to the transfer of an interest in controversy that occurred under its jurisdiction.

6.  The *timing* of events is also critical. The key transfer—the share exchange of November 5, 2021 in which Corp. obtained control of FGL—occurred **three years before** FGL's formal winding-up in November 2024. Comity toward the later insolvency proceeding does not negate the fact that Corp. already *took over FGL's*

---

[1] Plaintiff cites several cases involving foreign bankruptcy proceedings (Doc. 68, PageID # 1686), but each of these cases predates the 2005 enactment of Chapter 15 of the Bankruptcy Code.

*business* long before liquidation.

### B. The November 5, 2021 Share Transfer Made Corp. the Successor-in-Interest to FGL

7. Corp.'s Opposition attempts to downplay the significance of the November 5, 2021 share transfer and instead emphasizes the institution of the formal liquidation process (which occurred much later) as exonerating Corp. from successor liability. This is a tactical distraction. Under the applicable law, the operative event for successor liability is the transaction involving transfer of the business interest, not the procedural winding-up of the predecessor. *See, e.g., Welco Indus., Inc. v. Applies Cos.*, 76 Ohio St. 3d 344, 617 N.E.2d 1129, 1132 (1993) ("In nonproducts cases, the liability of the successor has usually depended on whether ***the transaction*** was a merger (liability imposed by statute), de facto merger (liability imposed by common law), or cash-for-assets transaction (no liability) (emphasis added)).

8. On November 5, 2021, Corp. became the mirror image of FGL in terms of shareholders, directors, and officers via a share exchange, and immediately thereafter FGL ceased active operations, with Corp. assuming all manufacturing, distribution, and other business functions of the Firexo enterprise. In substance, therefore, Corp. "stepped into the shoes" of FGL in 2021, leaving FGL as a defunct shell whose only remaining role was to face lawsuits. This was only made explicit in a written communication from Mr. Breith to Corp shareholders dated October 24, 2024, revealing that "FGL has effectively been dormant since the share exchange…" and "[FGL's] only function has been to defend legal proceedings…". (Doc 55-1,

PageID # 1524). Ohio law does not allow a corporation to evade liability simply by moving its business into a new entity and abandoning the old entity to insolvency. To the contrary, Ohio's doctrine of successor liability is designed to prevent exactly that scenario.

9. Perhaps the most telling factor is that after November 5, 2021, FGL no longer operated as a going concern. By Corp.'s own belated admission, FGL's "only function" post-transfer was to defend legal proceedings (i.e., to exist as a liability repository) while Corp. carried on all revenue-generating activities. *Id*. Mr. Breith's Declaration confirms as much by looking at the financial statement for Corp. In FY23, Corp. had £3,215,007 in revenue; incurred cost of sales of £2,470,994 and operating costs of £2,971,370:

## Financial Performance and Position – Firexo Corporation

**Profit & Loss Statement**

| Year Ending | FY23 Act | FY24 3 mth Act + 9mth Fcst | FY25 Fcst |
|---|---|---|---|
| £ | | | |
| Revenue | 3,215,007 | 6,802,684 | 7,908,524 |
| Cost of Sales | (2,470,994) | (4,788,905) | (5,201,753) |
| **Gross Margin** | 744,013 | 2,013,779 | 2,706,771 |
| Operating Costs | (2,971,370) | (2,411,769) | (2,171,460) |
| **EBITDA** | (2,227,357) | (397,990) | 535,310 |
| Interest | (153,236) | (210,646) | (211,250) |
| Depreciation | (9,553) | (79,072) | (79,042) |
| Ammortisation | (71,015) | (6,567) | (1,763) |
| Exceptional | (895,817) | - | - |
| Tax | 59,433 | - | - |
| Forex | (83,010) | (2,151) | - |
| **Profit After Tax** | (3,380,554) | (696,426) | 243,256 |
| Revenue Growth | n/a | 112% | 16% |
| Gross Margin | 23% | 30% | 34% |
| EBITDA Margin | -69% | -6% | 7% |

**Balance Sheet**

| Year Ending | FY23 Act | FY24 Fcst | FY25 Fcst |
|---|---|---|---|
| £ | | | |
| **Non-Current Assets** | | | |
| Tangible Assets | 31,494 | (30,375) | (109,417) |
| Intangible Assets | 568,989 | 559,842 | 558,079 |
| Investments | 100 | 100 | 100 |
| Total Non-Current Assets | 600,583 | 529,567 | 448,762 |
| **Current Assets** | | | |
| Cash | (25,305) | 232,532 | 657,158 |
| Trade Debtors | 388,515 | 1,025,062 | 1,191,695 |
| Inventory | 1,121,805 | 957,296 | 1,005,161 |
| Prepayments | 138,816 | 145,757 | 153,044 |
| Other Current Assets | 717,428 | 511,137 | 534,938 |
| Total Current Assets | 2,341,259 | 2,871,784 | 3,541,997 |
| **Current Liabilities** | | | |
| Trade Creditors | (1,244,541) | (1,191,347) | (1,218,799) |
| Invoice Finance | - | (400,000) | (600,000) |
| Trade Finance | - | (600,000) | (600,000) |
| Accruals | (127,837) | (162,840) | (162,840) |
| Other Current Liabilities | (115,372) | (200,337) | (200,340) |
| Total Current Liabilities | (1,498,871) | (2,554,524) | (2,781,979) |
| **Non-Current Liabilities** | | | |
| Directors Loan DB | (1,198,685) | (1,198,685) | (1,198,685) |
| Bounce Back Loan | (28,910) | (18,256) | (7,600) |
| Convertible Loan ( A Hiller) | (50,000) | (50,000) | - |
| Loan | (62,458) | (2,748) | - |
| Accrued Interest | (118,562) | (289,518) | (471,619) |
| Total Non-Current Liabilities | (2,233,515) | (2,334,106) | (2,452,804) |
| **Net Assets** | (790,544) | (1,487,280) | (1,244,024) |

Source: Management information

*Figure 1 Decl. of David Brieth* (Doc. 68-1, PageID # 1739)

Corp.'s revenue was generated through sales of Firexo fire extinguishers containing the FX51 All Fires liquid, both on Amazon (78% of Corp.'s revenue) and through distributors and retail sales (22% of Corp.'s revenue). (*See* Doc. 68-1, at PageID # 1736). In other words, Corp. continued the *exact same* business FGL ceased when FGL became "dormant [after] the [November 2021] share exchange" and mutated into an insolvent dumping ground for lawsuits it sought to avoid. (Doc 55-1, PageID # 1524). All this despite Corp.'s self-serving, inadmissible[2] declaration alleging it is

---

[2] The Declaration of David Brieth must be disregarded because it is neither dated nor subscribed as true under penalty of perjury. "Unsworn declarations are permitted to be used as evidence only if 'subscribed ... as true under penalty of perjury, and dated....'" *Henricks v. Pickaway Corr. Inst.*, 2013 WL 4804983, *2 (S.D. Ohio Sept. 9, 2013) (quoting 28 U.S.C. § 1746). Mr. Brieth's declaration does

a mere "holding company that has never traded or carried out business operation." (Decl. of David Brieth, Doc 68-1, at PageID # 1694).

### C. This Court has personal jurisdiction over Corp.

10. It is well settled that "it is compatible with due process for a court to exercise personal jurisdiction over an individual or corporation that would not ordinarily be subject to jurisdiction when that individual or corporation is an alter ego or successor of" an entity that is subject to jurisdiction. *Estate of Thompson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008). Indeed, the key personnel and owners behind FGL (e.g. Mr. Brieth) are the same behind Corp., so Corp. had every reason to anticipate being called to account in Ohio for FGL's liabilities.[3] In short, Corp. stepping into FGL's shoes carries jurisdictional consequences: having enjoyed the benefits of FGL's business, Corp. must also answer for FGL's legal obligations in the same forum.

11. Finally, Plaintiff believes, and respectfully suggests, that Corp's status and

---

neither and thus cannot be used as evidence.

[3] The sole Directors of Corp are David Brieth and Winand Staring. Likewise, the Directors of FGL were Mr. Brieth and Mr. Staring before it entered liquidation. Mr. Brieth is the controlling shareholder of both entities. Mr. Brieth and Mr. Winand are also the sole directors of Firexo Holdings, through which all Firexo subsidiaries flow into Corp. Mr. Breith is the sole director of all remaining subsidiaries. A diagram of Corp's subsidiaries and related corporate structure appears at Doc. 55, Page ID 1508. *See, also*, Exhibit 1 of this Reply Memorandum for links to UK Companies House corporate records, reflecting the officers and directors of those corporate entities.

related responsibility as a successor in interest is straightforward and clear. Consequently, Plaintiff urges the Court to decide the pending motion on that basis. In the meantime, Mr. Breith has made clear in his most recent written communications that he continues to make efforts to sell Corp. and all of its assets with the assistance of a retained mergers and acquisitions company—potentially dissipating and/or placing corporate assets beyond the reach of the money judgment rendered by this Court. (Doc. 55-1, Page ID 1545; Doc. 67-1, Page ID 1666).

    For all the foregoing reasons, Plaintiff Firexo, Inc.'s motion seeking substitution of Firexo Corporation as a successor in interest and for appointment of a receiver should be granted.

Respectfully submitted,

*/s/ Paul T. Belazis*

Paul T. Belazis (0030356)

Malone, Ault & Farrell
7654 W. Bancroft Street
Toledo, Ohio 43617
(419) 843–1333 tel
(419) 843–3888 fax
belazis@maf-law.com

Adam S. Nightingale (0079095)

Eastman & Smith Ltd.
One SeaGate, 27th Floor
P.O. Box 10032
Toledo, Ohio 43699–0032
Monclova, Ohio 43542
(419) 241–6000 tel
(419) 247–1777 fax
asnightingale@eastmansmith.com

*Counsel for Firexo, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2025 a copy of this Reply was served on counsel of record for all parties through the Court's CM/ECF system; and on unrepresented defendant Firexo Group Limited via email to Harry Sanders, its Liquidator, at harry.sanders@mha.co.uk.

 

/s/ Paul T. Belazis
Paul T. Belazis (0030356)

Malone, Ault & Farrell
7654 W. Bancroft Street
Toledo, Ohio 43617
(419) 843–1333 tel
(419) 843–3888 fax
belazis@maf-law.com

*Counsel for Firexo, Inc*