# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| FIREXO INC., | Case No. 3:21-cv-02336 |
| Plaintiff, | Hon. Jack Zouhary |
| v. | |
| FIREXO GROUP LIMITED, *et al.*, | |
| Defendants. | |

## MOTION TO STAY JUDGMENT PENDING APPEAL
## AND MEMORANDUM IN SUPPORT

Pursuant to Federal Rule of Appellate Procedure 8(a) and Federal Rule of Civil Procedure 62(c), Firexo Corporation ("Corp.") moves to stay the judgment pending appeal entered against it on December 3, 2025.

Respectfully submitted,

*/s/ James P. Silk, Jr.*
James P. Silk, Jr. (0062463)
Teresa L. Grigsby (0030401)
SPENGLER NATHANSON P.L.L.
900 Adams Street
Toledo, OH  43604
Telephone:  (419) 241-2201
Facsimile:  (419) 241-8599
jsilk@snlaw.com
tgrigsby@snlaw.com
*Counsel for Defendant Firexo Corporation*

**MEMORANDUM IN SUPPORT**

**I.     INTRODUCTION**

On December 3, 2025, this Court entered an Order Joining Defendant in which it found that Firexo Corporation ("Corp") was liable as Firexo Group Limited's ("FGL") successor "and is bound by the Default Judgment to the same extent as FGL." (Doc 73 at 18). This Court also granted Firexo Inc.'s ("Plaintiff") request for an appointment of a receiver. *Id*. The receiver's appointment was for the "purpose of identifying, preserving, and applying those assets toward satisfaction of the Default Judgment entered against FGL (and now Corp)." *Id*. On December 10, 2025, the Order Joining Defendant was appealed along with an order dated October 17, 2025, denying Corp. motion to strike Plaintiff's motion to join (Doc. 62). (Doc. 75). On December 10, 2025, the Court entered an Interim Receivership Order. (Doc. 76). In that order, this Court took "exclusive jurisdiction of the assets, of whatever kind and wherever situated, of, or under the control of, the Defendant Firexo Corporation." ("Receivership Defendant").

For the below reasons, Corp. is requesting this Court stay the judgment pursuant to Federal Rule of Appellate Procedure 8(a).

**II.     LAW AND ARGUMENT**

In *Titan Tire Corp. of Bryan v. Local 890L, USW*, 673 F. Supp. 2d 588, 590 (N.D. Ohio 2009), this Court identified the factors to consider when evaluating whether to grant a stay under Federal Civil Rule 62(c), as follows:  (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. *Id.*, citing *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (1991); *see also Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)) (noting that the

2

factors are the same under Federal Appellate Rule 8(a)). "These factors are not separate elements that a movant must satisfy but are interrelated considerations that must be balanced together." *Id.*, citing *Griepentrog*, 945 F.2d at 153. Furthermore, "the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [movant] will suffer absent the stay." *Id.*

Applying these factors, as stay is warranted here. The first two factors are the most important in determining whether to grant a stay. *United States v. Ahmed*, No. 2:12-cv-951, 2017 U.S. Dist. LEXIS 223063, 2017 WL 6508179 (S.D. Ohio Oct. 31, 2017) (citing *Ohio State Conference of NASCP v. Husted*, 769 F.3d 385, 387 (6th Cir. 2014)). A movant does not always "need to establish a high probability of success on the merits" to satisfy the first factor. *State ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987) (citing *Cuomo v. United States Nuclear Regulatory Com.*, 772 F.2d 972, 974, 249 U.S. App. D.C. 54 (D.C. Cir. 1985)). Generally, "the probability of success that must be shown is inversely proportional to the degree of irreparable injury the plaintiffs will suffer absent an injunction." *Cuomo*, 772 F.2d at 974. To succeed in a motion to stay, the moving party must "address each of the factors regardless of its strength" and provide "facts and affidavits supporting these assertions." *State ex rel. Celebrezze*, 812 F.2d at 290.

### A. Likelihood of Success on the Merits

Plaintiff provided no admissible evidence in support of its motion to join Corp. as a defendant. Plaintiff did not rely on any affidavits, presented no witnesses at the hearing, and did not cross-examine Corp.'s witness at the hearing.

Given that lack of evidence, the Court could not and did not base its determination that Corp. should be joined as a defendant on admissible evidence.

3

Instead, the Court apparently relied on allegations set forth in Plaintiff's memorandum in support of its motion to join (Doc. 55) and hearsay exhibits attached to Document 14 titled Joint Stipulations. (See Doc. 73 2-3, 8-9). The exhibits relied upon by the Court was a shareholder circular dated September 1, 2021 (Doc. 14-7) and An Agreement and Plan of Exchange By and Between 1. Firexo Corp. and 2. Firexo Group Limited and 3. Scot Smith (Doc. 14-11). Based on this "evidence," the Court found that "The record here clearly demonstrates that FGL's core business, assets, and ownership interest were transferred to and continued through Corp." (Doc. 73 at 8).

    In contrast, in support of its position, Corp. relied upon the admissible evidence of David Breith through his affidavit (Doc. 68-1) and the testimony of Corp.'s solicitor Peter Coyle at the hearing on October 22, 2025. The Court apparently did not consider this evidence. At the hearing, Mr. Coyle explained in great detail the nature of the transaction set forth in the agreement between Corp, FGL, and FGL shareholders. (Doc. 14-11, Exhibit A at hearing). Mr. Coyle explained that the purpose of the share transfer was to enable the issuance of an IPO in the United States. Mr. Coyle stated the transaction did not affect the business operations of FGL in any respect. There was no transfer of assets from FGL to Corp. FGL continued to maintain its assets, continued its business operations, continued employing its staff, and functioned exactly as it had before the share transfer. Mr. Breith also stated that no assets were transferred from FGL to Corp. (Doc. 68-1 ¶ 7, 18).

    Considering the entire record, the Court's finding that an interest in intellectual property was transferred from FGL to Corp. is incorrect. It is supported neither by the admissible presented by Corp., or even by the inadmissible evidence contained within Plaintiff's Document 14.

The Court found that "FGL transferred all its stock and intellectual property to Corp. through a "drag along" provision citing Doc. 14-11. Yet the November 5, 2021, agreement does not result in any transfer of intellectual property or any other asset from FGL to Corp. Pursuant to the terms of the agreement, the shareholders of FGL became the shareholders of Corp. Corp. became the sole shareholder of FGL. There simply was no transfer of assets, and the admissible evidence makes that point indisputable.

Prior to this litigation, pursuant to an Intellectual Property Deed of Assignment dated September 8, 2021, that was entered into between FGL and Firexo Holdings Limited the rights to intellectual property was assigned from FGL to Firexo Holdings Limited. As part of the analysis as to whether FGL should enter Voluntary Liquidation, two licensed insolvency practitioners evaluated the assets of FGL. (Doc. 68-1, ¶12). Based on the independent valuation of FGL's assets, the FGL board determined that that the assignment between FGL and Firexo Holdings Limited had not yet generated consideration for FGL. *Id.* at ¶13. Based on that determination, Firexo Holdings Limited agreed to pay £225,00 to the joint liquidators of FGL. This payment represented consideration for the assignment of the intellectual property. Two important notes; first, the transfer of the intellectual property was for value and prior to this litigation being initiated. In fact, the assignment was prior even to the formation of Corp. Second, it was later determined that given the potential insolvency of FGL, the consideration was insufficient and as a result FGL was paid for the value of the IP. Those funds are being administered by the liquidators in the U.K. *Id.* Likewise, shares of Firexo S.R.L., Firexo Limited, and Firexo Motorsport Limited were evaluated by independent valuers. *Id.* FGL retained a firm to conduct an independent valuation of FGL assets to ensure that FGL received fair value for any assets prior to be placed in Voluntary Liquidation. *Id.*

5

As the Court properly noted, for there to be successor liability, an "interest" of FGL had to be transferred to Corp. As discussed above, there was no interest transferred from FGL to Corp. FGL's business operations continued the same before and after the share exchange between FGL and Corp. Likewise, FGL's assets remained the same before and after the share exchange. The Court's determinations that there was a de facto merger, that Corp. was a mere continuation of FGL, or that Corp. was an alter ego of FGL are incorrect given the facts. It appears that the Court relied heavily on an email from Mr. Breith to shareholders dated October 16, 2024, in its determination that assets had been transferred from FGL to Corp. (Corp. Exhibit B at hearing). The intent at the time of the share exchange was that Corp. become a public company through the issuance of an IPO and that FGL continue its business operations. That did not occur, in large part, because of this litigation and litigation brought by Plaintiff and its shareholder in the U.K. It is not evidence as to whether assets or interests were transferred from FGL to Corp. (Doc. 68-1 ¶3). At the hearing, Mr. Coyle explained the email and its context. If this case had proceeded in a normal course, Corp. would have moved for summary judgment as to whether it was a successor-in-interest to FGL. The facts, admissible or otherwise, are undisputed that there was no transfer of any interest from FGL to Corp.

Corp. is also likely to prevail on its motion to strike Plaintiff's motion to join. (Doc. 62). The Court denied this motion without issuing an opinion. For the reasons set forth in Documents 62 and 69, Corp. cannot be substituted as a party under Delaware law. It is undisputed that Corp. is a void corporation under Delaware law. Pursuant to Title 8 Del.Code §510 and the holding in *Paul Rivera & Kalibrr v. Angkor Capital Ltd.*,

6

2024 DelCh. LEXIS 297; Civil Action No. 2022-0671-MTZ (August 20, 2024), Corp. as a void corporation cannot be sued.

### B. Irreparable Harm

Evaluation of potential harm if the stay is granted relies on three factors: "(1) the substantiality of the injury alleged, (2) the likelihood of its occurrence, and (3) the adequacy of the proof provided." *Ohio ex. rel. Celebrezze*, 812 F.2d at 290 (citing *Cuomo*, 772 F.2d at 977). Irreparable harm that is "certain and immediate" is key and "mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough." (*Mich. Coal. of Radioactive Material Users, Inc.*, 945 F.2 at 154.

David Breith is the CEO of Corp. (Breith Aff. ¶ 1, attached as **Exhibit 1**). Corp. is a holding company that has never traded or carried out business operations. *Id*. Corp. held shares in other Firexo entities around the world. *Id*. at 2. The appointment of a receiver has already had implications for Corp. and its operations. *Id*. at 3. There are already rumors arising from the receivership order that Corp. is going "bust." *Id*.

Corp. is not profitable nor cash positive and relies upon significant external investment for it to grow for sale and provide a return for investors. *Id*. at 5. Interference with Corp.'s business operations will result in Corp. being unable to secure existing or alternative funding. *Id*. at 6. An appointment of a receiver would permit business suppliers to cancel contracts pursuant to contractual provisions relating to insolvency and receiverships. *Id*. at 7. An appointment of a receiver would require Corp. to notify its fianciers of the action and will result in Corp. losing working capital facilities. *Id*. at 8. Banking arrangements and payments could be frozen. *Id*.

7

Additionally, potential agreements with governments to sell firefighting products will be jeopardized. *Id.* at 9.

Under the terms of the receivership order, the Firexo Group's banking facilities will be frozen and employee salaries will not be paid. *Id.* at 10. Further, the impact on funding would result in no product being delivered to Corp. subsidiaries. *Id.* at 11. The likely result of the appointment of a receiver is that Corp. and its subsidiaries will be forced to be closed and wound up. *Id.* at 12. There will be no new investment which is critical to the survival and growth of the Firexo Group. *Id.* at 13, 14. The appointment of a receiver will result in Corp. and its subsidiaries shutting down. *Id.* at 15. Corp. meets the standard of irreparable harm. The harm to Corp. of not staying the Court's decision pending the appeal will be immediate and substantial. The appointment of a receiver itself jeopardizes many business relationships that Corp. and its subsidiaries need to maintain to survive. Further, given the size of the judgment, any attachment of Firexo Group assets will result in the business be wound up.

### C.    Balance of Equities and Public Interest

The harm to the public and others will be substantial if a stay is not granted pending the outcome of the appeal. Employees of Firexo Group companies will lose their jobs. (Breith Affidavit ¶¶ 10, 15). Contracts with third parties will be breached and trade creditors will not be paid. *Id.* ¶¶ 9, 14, 15. The consequences of Firexo Group entities ceasing business operations negatively effects its suppliers, distributors, customers, and shareholders.

### III.   CONCLUSION

With all due respect, the Court erred in joining Corp. as a defendant in this litigation. As discussed above, the facts do not support the determination. Based on the

8

above, it is likely that the Sixth Circuit Court of Appeals will reverse this finding. If that scenario occurs, and a stay is not imposed, the effects on the Firexo Group of companies will be devastating and irreversible. As such, it is appropriate for this Court to stay the judgment pending the outcome of the appeal.

          Respectfully submitted,

          */s/ James P. Silk, Jr.*
          James P. Silk, Jr. (0062463)
          Sarah K. Skow (0081468)
          Teresa L. Grigsby (0030401)
          SPENGLER NATHANSON P.L.L.
          900 Adams Street
          Toledo, OH  43604
          Telephone:  (419) 241-2201
          Facsimile:  (419) 241-8599
          jsilk@snlaw.com
          sskow@snlaw.com
          tgrigsby@snlaw.com
          *Counsel for Defendant Firexo Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically filed this 29th day of December, 2025. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

          */s/ James P. Silk, Jr.*
          James P. Silk, Jr.
          *Counsel for Defendant Firexo Corporation*

785757