**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| FIREXO INC., | Case No. 3:21-cv-02336 |
| Plaintiff, | Hon. Jack Zouhary |
| v. | |
| FIREXO GROUP LIMITED, *et al.*, | |
| Defendants. | |

---

### AFFIDAVIT OF DAVID BREITH

---

I, David Breith, swear and attest that I have personal knowledge of the matters contained in this Affidavit and am competent to testify to the matters stated herein.

1.    I am CEO of Firexo Corporation ("Corp."). Corp. is a holding company that has never traded or carried out business operations.

2.    Prior to its 'void' status for non-payment of Delaware franchise taxes in March 2025, Corp. was a holding company only. It held shares in numerous other Firexo entities across the world, principally in Europe, being the only substantive market for the sale or Firexo's fire safety products. Firexo's products are no longer sold into the USA. The business now has no presence in the USA, apart from Corp.'s domicile in Delaware; a legacy of plans in 2021 (long since abandoned) to become a publicly-listed corporation on the Nasdaq Capital Exchange in New York.

3.    The appointment of a receiver to seize assets of Corp. will have (and is already having – more detail below)  significant implications for Corp.'s operations,

EXHIBIT 1

assets (all of which are outside the jurisdiction of this Court – principally in the UK and the EU), and contractual relationships. Since the Order was issued for the appointment of a receiver to Corp., Firexo's UK distributor of products has received a call from a wholesale customer worried about product delivery because he was told "Firexo is bust and going into receivership".

4.      The 'rumour mill' (as we call it in the UK) is already being ratcheted up, and I genuinely fear for the survival of the global business if a receiver is appointed to Corp. prior to the determination of our appeal. More specifics are given in paragraphs 5 to 15 below.

5.      Corp.'s overall business is currently not profitable nor cash positive and it relies upon significant external investment in order to grow it for sale and a return for all investor shareholders.

6.      Any interference with Corp.'s business operations will result in significant lost sales and greater negative cash flow. It will simply be impossible to secure existing or alternative funding if Corp. is in receivership (which has a penetratingly negative insolvency connotation in the UK and in the EU where the business operates).

7.      An appointment of a receiver would permit business suppliers to cancel contracts immediately due to standard contractual provisions relating to insolvency and receiverships.

8.      An appointment of a receiver would require Corp. to notify all of its financiers of the action and this will result in Corp. losing working capital facilities. Banking arrangements and payments could be frozen with immediate effect.

9.      Agreements currently being negotiated (some in advanced positions) to supply governments with firefighting products will be jeopardized.

2

10.     Given the above effects of the appointment of a receiver, it is almost certain that employees would leave particularly given the very real risk of the Firexo Group's banking facilities being frozen, which will obviously prevent salaries from being paid.

11.     The appointment of a receiver and its impact on funding would also result in no further products being delivered to Corp. subsidiaries.

12.     If a receiver is appointed, the value of Corp. and its holdings will decrease significantly. Unless this process is halted pending our appeal, I fear that the Group's business value will be diminished to nothing. The business as a whole will be forced to close and be wound up.

13.     In order to grow Corp. and survive, Corp. needs new investment. The appointment of a receiver would absolutely preclude new investment.

14.     Further, Corp.'s subsidiaries have secured loans and have creditors to pay. An appointment of a receiver will affect the viability of all subsidiaries.

15.     If a receiver is appointed, there will be no further access to funding or investment, current and potential business relationships will end, supplies will be cut off, employees will lose jobs, and trade creditors will not be paid. In short, Corp. and all of its subsidiaries will be forced to shut down.

Affiant further sayeth naught.

DAVID BREITH

_____
David Breith

3

Anna Pulkownik
Krzywoustego 332/1
Psie Pole
Wroclaw
51-312
Poland
+48 71 387 85 20
konrad.czerski@gmail.com
Protocol  _3306 / 2025_

    I, Anna Pulkownik, a Notary Public authorized to practice in Poland with the offices at Krzywoustego 332/1, Psie Pole, Wroclaw, Poland, certify that on this _15_ day of December, 2025:

1. I have identified David Breith from his United Kingdom of Great Britain and Northern Ireland passport.

2. The Said David Breith swore and signed the above Affidavit in my presence as witness on the _15_ day of December, 2025.

Signed and sealed at Krzywoustego 332/1, Psie Pole, Wroclaw, Poland this ____ day of December, 2025.

_____
Anna Pulkownik

785461

4

**Repertorium A nr   3306/2025**

Notariusz Anna Pułkownik poświadcza, że powyższy podpis na niniejszym dokumencie własnoręcznie złożył w jej obecności: ----------------------------------

**DAVID BREITH,** urodzony dnia 29 sierpnia 1969 r. w miejscowości Amersham, (Zjednoczone Królestwo Wielkiej Brytanii i Irlandii Północnej), według oświadczenia posiadający PESEL: 69092914515, obywatel Zjednoczonego Królestwa Wielkiej Brytanii i Irlandii Północnej, który oświadcza, że włada językiem angielskim, według oświadczenia zamieszkały: 50-206 Wrocław, ul. Księcia Witolda numer 25/13, którego tożsamość notariusz stwierdziła na podstawie Paszportu Zjednoczonego Królestwa Wielkiej Brytanii i Irlandii Północnej numer 562411814, ----------------------------------

- **działający w imieniu i na rzecz** Spółki pod firmą: **Firexo Spółka z ograniczoną odpowiedzialnością z siedzibą we Wrocławiu** (adres: 51-317 Wrocław, ulica Bierutowska numer 55, REGON 521405469, NIP 5252898061), wpisanej do Krajowego Rejestru Sądowego pod numerem **KRS 0000957681** – jako Prezes Zarządu uprawniony do samodzielnej reprezentacji Spółki,--------------------

**w obecności tłumacza przysięgłego języka angielskiego Konrada Wita Czerskiego,** imiona rodziców: Ireneusz i Jadwiga, PESEL: 77122800537, zamieszkałego według oświadczenia: 51-640 Wrocław, ul. Braci Gierymskich nr 92, którego tożsamość notariusz stwierdziła na podstawie dowodu osobistego CEB 699944, wpisanego na listę tłumaczy przysięgłych prowadzoną przez Ministra Sprawiedliwości pod numerem **TP/90/09** dnia 27 października 2009 r. --------------------------------------------------------

*Notariusz poinformowała Stawającego, że niniejsza czynność obejmuje poświadczenie własnoręczności podpisu, a nie obejmuje treści, pod którą podpis został złożony.*-------------------------------------------------------------
**Kancelaria Notarialna we Wrocławiu,** -------------------------------------------------
**ulica Bolesława Krzywoustego nr 332 lok. 1.**----------------------------------------
Pobrano: ---------------------------------------------------------------------------------------
- na podstawie § 13 pkt 1 lit. b)  rozp. Ministra Sprawiedliwości z dnia 28.06.2004 r., w sprawie maksymalnych stawek taksy notarialnej... **20,00 zł**
- podatek VAT na podstawie art. 41 ust. 1 w zw. z art 146aa ustawy z dnia
   11.03.2004 r. o podatku od towarów i usług (VAT 23 %) .............. **4,60 zł**
Razem pobrano: ................................................................. **24,60 zł**
Wrocław, dnia piętnastego grudnia dwa tysiące dwudziestego piątego roku (15-12-2025 r.). --------------------------------------------------------

Anna Pułkownik

Elektronicznie podpisany przez Anna Pułkownik
Data: 2025.12.15 10:14:53 +01'00'