UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


FIREXO, INC.,                              Case No. 21-cv-02336-JZ
                                           COA No. 25-3972
            Plaintiff,
                                           Toledo, Ohio

       vs.                                 Friday, October 17th, 2025
                                           8:59 a.m.

FIREXO GROUP LIMITED, et al.,

            Defendants.


                          -   -   -


          TRANSCRIPT OF ORAL ARGUMENT PROCEEDINGS
            BEFORE THE HONORABLE JACK ZOUHARY
          SENIOR UNITED STATES DISTRICT JUDGE


                          -   -   -


Official Court Reporter:   Stacey L. Kiprotich, RMR, CRR
                           United States District Court
                           1716 Spielbusch Avenue, Suite 120
                           Toledo, Ohio 43604
                           (419) 213-5520
                           Stacey_kiprotich@ohnd.uscourts.gov


Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

APPEARANCES:

For Plaintiff:                    **Paul T. Belazis, Esq.**
                                  Malone, Ault & Farell
                                  7654 West Bancroft Street
                                  Toledo, OH 43617
                                  419-843-1333
                                  Belazis@maf-law.com


                                  **Adam S. Nightingale, Esq.**
                                  Eastman & Smith
                                  27th Floor
                                  One SeaGate
                                  P.O. Box 10032
                                  Toledo, OH 43699
                                  419-247-1728
                                  Asnightingale@eastmansmith.com


For Defendant:                    **James P. Silk, Jr., Esq.**
                                  Spengler Nathanson
                                  900 Adams Street
                                  Toledo, OH 43604
                                  419-252-6210
                                  Jsilk@snlaw.com


                                  **Teresa L. Grigsby, Esq.**
                                  Spengler Nathanson
                                  900 Adams Street
                                  Toledo, OH 43604
                                  419-252-6261
                                  TGrigsby@Snlaw.com

**Friday, October 17th, 2025**

- - -

**(Proceedings commenced at 8:59 a.m.)**

- - -

THE COURT:  Good morning.

We're here on Case Number 21-cv-2336, *Firexo, Inc. versus Firexo Group Limited*.  And we have several motions pending in the case.

I'm going to ask counsel to introduce themselves for the record and who they represent, and we'll start with my left and then go to my right.

MR. BELAZIS:  Paul Belazis, Your Honor.  I represent plaintiff, Firexo, Inc.  And I'm here today with Adam Nightingale, my co-counsel.

THE COURT:  And I'm going to ask you to use these microphones, please.  Make sure the green light is lit.  And as you can see, if I pull it closer to me, I can be heard better.  Depending on your volume is where you place the microphone.  You don't have to stand.  You can if you want when you speak.  I just want to hear you, as does the court reporter, and don't talk too fast.

Next.

MR. SILK:  Your Honor, James Silk and Teresa Grigsby on behalf of Firexo Corporation.

THE COURT:  We have several motions pending,

and I want to tackle a couple of them right off the bat. Let's start with Firexo, Inc.'s motion to strike the appearance of co-counsel, who are sitting in the courtroom with us, and their law firm. That was followed by a memorandum in opposition, and followed by a reply. Those are all reflected on the docket with filing numbers 60, 63, and 65.

The matter is fully briefed. I don't know if anyone has anything to add to what's already in the briefing. If you want to be heard on it, you may. If not, I'm prepared to rule.

Again, you don't have to say anything. You can if you want. I've read what you've written. If you have something in addition to what I've already read, fine. If not, then I will rule.

MR. BELAZIS: Judge, unless you have some questions.

THE COURT: I don't. And that's a fair comment. I have no questions.

I'm going to deny the motion to strike their appearance. I'm allowing the appearance for the limited purpose of this post-judgment litigation, which I believe is the only reason they are entering into the fray at this stage of the game. So, the record can reflect that that motion, Document Number 60, is denied.

Next, I want to address the other motion to strike. It has also had full briefing.  It is Document 62, followed by 67 and 69, the response and the reply briefs.  And I have no questions.  And unless you have something to add, I am going to -- I should indicate, for the record, this is the Corporation's motion to strike Firexo, Inc.'s motion to join Firexo Corporation to this action.  And I'm going to deny the motion to strike.  Again, this is simply a motion to strike, and I'm going to deny the motion to strike, which now leads me to the primary reason we're all here today and which has produced this paperwork, and that is the original motion, Document Number 55.  That is the motion to join the Corporation as a party to this action and for the appointment of a receiver.  And that is followed by Documents 68 and 70, those being the memorandum in opposition and the reply filed by the parties.

We have an affidavit which has been filed in the case. And I know there was some discussion about postponing this hearing to allow the individual to appear.  I don't know what the status of that is.  We do have an affidavit from the proposed witness, and I'm not sure if you have anything to add to that declaration.  There has been a note in the briefing that that declaration is unsigned and undated, which certainly may be a problem for this Court to take into consideration, but if the purpose of appearing before this

Court in person was to cure that defect, I think there's another way to do it, but I'm happy to hear from counsel on this point, and on anything to do with the motion requesting joinder and appointment of a receiver.

I'll let plaintiff go first.

MR. BELAZIS: Thank you, Judge.

Do you want me up here? Yes? Okay. It is probably a good idea for me to apologize in advance because I have a very soft voice, as I'm told. So, please, if you can't hear me, or if I forget to speak into the microphone, don't hesitate to let me know or call me on it.

THE COURT: In this current noisy environment, it is kind of nice to have a soft voice.

MR. BELAZIS: Yep. So, Judge, with respect to whether or not a hearing is necessary, we don't think that it is necessary in order to resolve the Rule 25(c) motion, and we think that you can resolve it on the basis of what's already in the record and that no further testimony or evidence is necessary.

I'm not going to give you a lot of background about Firexo Group Limited because you've already heard lots of evidence and briefing, and I'm sure you're very familiar with it.

So, I just want to address the legal issue of substitution and some of the factual issues that are in the

record that we believe bear on that.

So, as we indicated in the briefing, the question of whether Firexo Corporation is a successor is guided by Ohio law. And, of course, the Ohio Supreme Court has spoken about this issue in *Welco*. It has identified, I believe, four different bases for recognizing a successor in interest. The Sixth Circuit in *Mickowski* has also addressed this issue, and they -- those grounds for recognizing a successor, of course, each differ, but there is one that we believe follows exactly the facts that are in the record of this case, and that is the mere continuation of a corporation.

And we believe, and we respectfully submit, that FGL, Firexo Group, Inc., which I will refer to as FGL, have simply morphed into Firexo Corporation, which I will refer to as Corp, and that one is a mirror image of the other.

Now, the primary criteria that have been outlined for recognizing a mere continuation is whether or not the two corporations have the same directors, whether they have the same officers, and whether they have the same shareholders, and that is exactly the case here.

What we know is that Firexo Group Limited was the parent corporation for this business, and it had been up until November of 2021. And at that point, the company decided, through Mr. Breith, who was the primary

shareholder, the director -- managing director, and CEO, determined that they were going to try to seek money through an initial public offering, an IPO, to generate what they believed would be roughly $15 million.  That's what they thought their company was worth and their product.  And in order to do that, he was advised by consultants in the area that it would be better to establish a company in the U.S. so that they could try to get on the Nasdaq exchange, and that's what they did.  They issued a circular to their shareholders, which is in the record as Document 14-7, advising all of their shareholders that they were going to attempt this IPO process, and that they would, through a drag-along provision that was associated with all of their shares that would allow them to move their shares into another corporation, they were going to exchange one for one.  So, for every share of Corp, they would -- for every share of their FGL stock, they would get a share of Corp stock.  So, it was a one-for-one exchange of stock, and that was made crystal clear.  And Mr. Breith went all in to say in the same circular that if, for any reason, that IPO transaction didn't transpire, those shares of stock would go right back into FGL, and things would be back the way they were.

In the meantime, it was aborted.  It just didn't happen, and --

THE COURT: Do we know why it was aborted?

MR. BELAZIS: Well, Mr. Breith gives a number of reasons. He says -- I think he refers to COVID, and just a sort of difficult economic times, uncertainty in the market, those kinds of things, I think, were the reasons that he gave for giving it up. He also indicated that they were able to identify other investors to put money into the corporation, and they felt like they didn't need to do the IPO at that point in time. But the point is, there was never going to be a separation of the two entities. They were going to be the same.

Now, there was an identity of shareholders, but in addition, the two directors of Corp were Mr. Breith and Mr. -- I'm sorry, I've got his name -- Mr. Staring. I'm sorry. So those were the two directors of Corp, and Mr. Breith and Mr. Staring are also the directors of FGL, or at least they were up until the recent liquidation. So, there was identity of officers and directors. Mr. Breith was the CEO of Corp. He was also the CEO of FGL.

And the business stayed exactly the same. I mean, they produced this fire extinguishing product through FGL and tried to market it around the world. They did exactly the same thing with the exact same product once everything was moved over to Corp.

Now, in the end, they decided that they would reveal

the shareholders, but they did not do this until October 16th, 2024, so this was three years later; that from the beginning, Corp was going to remain the top Corporation, the parent company.  And if you look at the chart showing the corporate subsidiaries and who they report to as of 2024, every one of them, including FGL, flows into Firexo Corporation.  So, it is without question the TopCo, as Mr. Breith referred to it in his communications.  Prior to that, FGL was the TopCo.  And he assured shareholders in his communications that their shares would always be in the TopCo -- that was the word he used -- and that's what happened.

But in October of 2024, he revealed, for the first time, that he was putting the company into liquidation; that, more importantly, he revealed that FGL has effectively been dormant since the share exchange, and that it was simply an empty husk that was used to be the repository of debt, most of which was related to litigation that they were involved in, some of which was related to a bank that they still owed money to.

And then he indicates also in the same email to all of the shareholders that, "In these circumstances, Firexo Corporation remains the ultimate Firexo holding entity which we all share."  And what he means by "we all share" is "we all shared those shares in FGL, and we continue to now share

it in Firexo Corporation."

So, there isn't any question that the two companies are mirror images of one another, and that they have the same business, the same officers, the same directors, they have the same shareholders.  I mean, there's identity of every aspect of the two corporations.

And as the Sixth Circuit said in *Mickowski*, the key element in establishing continuation is the common identity of stockholders, directors, and stock, and, of course, we have all of those things.

THE COURT:  When did counsel withdraw in the case before me while all this was happening in England?  Where was the proceeding in England at the time counsel withdrew, and counsel was never substituted?

MR. BELAZIS:  FGL's counsel.

THE COURT:  Right.

MR. BELAZIS:  That's correct.  FGL's counsel withdrew --

THE COURT:  Before counsel withdrew, did counsel ever indicate that there was something going on in England that might impact the case before me?

MR. BELAZIS:  Oh, no, never, at least not to us --

THE COURT:  Right.

MR. BELAZIS:  -- of course.

And by the way, counsel was just, from my point of view, a very fine lawyer.  He did a very good job on the case.  The only explanation that he gave was that he was withdrawing under the rules of professional responsibility, and he cited to a provision of it, but there was no detail that was provided, and that's all we know, Judge.

THE COURT:  Which provision, I'm curious, if you can recall?

MR. BELAZIS:  Well, it's the one that, if I remember right, when I looked at it --

THE COURT:  Is it in writing?  Did he do it in writing?

MR. BELAZIS:  Oh, yeah, he filed -- well, he emailed me.

THE COURT:  Right.  That's not on the docket, though.

MR. BELAZIS:  No, it's not on the docket.  I can tell you what it said.

THE COURT:  No.  I want to actually see the email.

MR. BELAZIS:  That he sent to me?

THE COURT:  Yes.

MR. BELAZIS:  I can get it for you.  I mean, all he says is that --

THE COURT:  Does it cite to a section of the

Code of Professional Responsibility in the email?

MR. BELAZIS:  I don't think so.  But he did --

THE COURT:  Is it on the docket?

MR. SILK:  Your Honor, I believe that they attached it to one of their briefs.  I do -- because I recall seeing that email, so it might be an exhibit.

MR. BELAZIS:  I don't -- geez, if it's in the record, Judge, I don't remember that.

THE COURT:  That's okay.

MR. BELAZIS:  He did file a motion to withdraw.

THE COURT:  And I apologize.  I've got a ten o'clock.  I have a ten o'clock hearing in another matter, so I want to move this along a bit, if I can.

If it's filed, and counsel represents it is, we'll try to find it, but if either side can point us to it, I would appreciate it.

In any event, move on.  Go ahead, what's your next point?

MR. BELAZIS:  Okay.  Judge, I guess the next issue relates to the -- well, the next issue relates to the personal jurisdiction.  And the Sixth Circuit has been very clear that if you determine this is a successor in interest, that's the end of it.  You have personal jurisdiction.

Then the final thing is the issue of abstention.

THE COURT:  I'm not going to --

MR. BELAZIS:  I'm sorry?

THE COURT:  I don't find abstention to be a problem for me.  I'll put it that way.  I'm not going to abstain.  This matter has been before me a long time.  I have a lot of information and a couple of more answers I need.  So, don't worry, I'm not going to abstain.  I am going to rule on the motion one way or another.

MR. BELAZIS:  Okay.  Well --

THE COURT:  But before you go, one of the arguments they make against you is you could have joined the Corp earlier on in the case.

(Stenographer clarification.)

THE COURT:  Whoa, whoa.  Your mike is not on. That happens.

(Discussion held off the record.)

THE COURT:  So, the question is, why didn't you join them sooner?

MR. BELAZIS:  The first point, Judge, is that it's not required under the case law, as long as the transfer occurred after the litigation began, which it did.

The second thing is that there's no reason to.  We didn't have a judgment yet, and we didn't know if we were going to get a judgment.  And frankly, I mean, think about what we're going through now and the amount of time and

litigation that we're going through in order to resolve the issue of successorship.  And I know we had a default judgment, but that didn't mean that we were going to be awarded any damages.  And while we thought we were entitled to it, we certainly didn't have any -- any expectation that this Court would award damages after -- at the hearing, and we ended up having to put in pretty extensive evidence and testimony in order to support our position.

THE COURT:  And certainly, the Firexo entities had an opportunity to bring counsel in after their counsel withdrew.  We never got a reason or an explanation why counsel wasn't substituted.  We did get a couple phone calls from an individual from Firexo calling my chambers querying the status of the litigation, which I thought a bit odd at the time, when they weren't even taking the time to retain new counsel.

Did anyone communicate with you during this time period from one of the Firexo groups?

MR. BELAZIS:  Not outside of what you just described and the status conferences that we had.  But just to make one more point related to that, Judge:  Mr. Breith, as you pointed out, was involved personally.  He was given many opportunities to retain counsel.  He never did.  And the docket made very clear that when -- that we would have an opportunity to pursue a motion for -- to join Corp at the

appropriate time. They had every opportunity to intervene. We also sent all of the pleadings to the liquidators. I mean, everybody was kept abreast of what was going on in this case, and they all had an opportunity to talk with lawyers and make a legal judgment about whether or not to intervene and get involved and at what point. They never did so until very, very recently.

Thank you.

THE COURT: Thank you.

Mr. Silk, you're up.

MR. SILK: Your Honor, do you have a preference of whether I stay here or go up there?

THE COURT: Just, again, so long as I can hear you. You can have your papers in front of you. You can stay seated or stand, whatever you are comfortable doing. And as long as our court reporter can hear you, we're good.

MR. SILK: All right. Excellent. Thank you.

So, just to start at the end, the reason they didn't intervene, my understanding, is because FGL filed for voluntary liquidation in October of 2024. They didn't have any assets. That's why they couldn't defend this case. That's why they couldn't defend the case in England, because of just the enormous amounts that were spent on attorney's fees. That's what eventually drove them into voluntary liquidation, and also had an effect as to why an IPO wasn't

issued was because of litigation brought by plaintiff and plaintiff's major shareholder.

In fact, Corp -- Firexo Corp is owed 2.7 million by FGL because they were funding the defense of these lawsuits, and finally, it didn't become feasible for them to continue to defend FGL when FGL had no assets because they had all been expended through litigation.

And, again, to your point about why they didn't join Firexo Corp back when you granted them leave to do so, I mean, it's gamesmanship.  I mean, it makes sense, you know, why not get a default judgment against a company that's involved in voluntary liquidation and unopposed, and then once you get that, then you can go after whomever, right.  So, it made sense.  And not only did they then go after the successor corporation that they are alleging, but then they tried to not allow Firexo Corp to have counsel to defend itself.  So, you know, obviously, it was thought out as a strategy.

THE COURT:  Well, there was a strategy on the other side as well.

MR. SILK:  Yes.

THE COURT:  The strategy that your client now clearly undertook during the course of the litigation: Instead of continuing to defend the case and fund it in any way they deemed appropriate, they rolled the dice.

MR. SILK:  I don't think they rolled the dice because they did everything the right way.  There was no rolling of the dice.  They -- FGL --

THE COURT:  I'm sorry.  I'm going to interrupt you, Mr. Silk.  The timeline that is represented in the filings I have have a terrible odor to them of what they were doing across the waters while this case was ongoing -- active on my docket.

MR. SILK:  All right.  Then you may have to help me out because --

THE COURT:  Well, address what you just heard: Same shareholders, same directors.

MR. SILK:  Oh, that's a different -- okay. I'm more than happy to do that.

THE COURT:  Okay.

MR. SILK:  But first, just briefly -- I know it's in front of you -- both parties agree that the Delaware case *Rivera versus Angkor Cap.* Applies here as far as void corporations.  You can't apply that piecemeal.  You can't say, "They can't sue, but they can be sued."  It's either all or nothing, and we think it's all.  And we think that that case is the correct analysis of Delaware law regarding a void corporation, and therefore, Firexo Corp cannot be sued based on that case because it's a void corporation. It's not a dissolved corporation.  So, I guess that's our

first argument that I would like to just make sure is clear for the record.

Second of all, the jurisdiction issue. The case cited by the plaintiff, *Thompson*, is a Sixth Circuit case, but it doesn't involve 25(c), right. This is a different proceeding. This is a motion for substitution of a party. And the case that we cited, which I believe plaintiff cited along the way as well, is *Panther Pumps versus Hydrocraft*, 566 F.2d 8, a Seventh Circuit case where the Court actually found that the alleged successor corporation was the alter ego, but said, "That's fine, but we can't exercise personal jurisdiction." Even though we found them to be the alter ego, they don't have any contacts with this jurisdiction; therefore, we can't exercise personal jurisdiction over them.

THE COURT: Your client did have contact with this jurisdiction. I just heard from you that they were paying the bills of counsel that was named in the case on which we had many proceedings.

MR. SILK: I don't think they were paying the bills of counsel. They may have been paying FGL, right, I mean, you know, and as a loan to FGL, which is common among companies. I don't think there's anything wrong with that, with --

THE COURT: It just tells me it's all one in

the same.

MR. SILK:  With a company giving a loan to a subsidiary?

THE COURT:  So, are we hiding behind these labels when, in fact, they are paying -- according to you -- substantial amounts of money on behalf of the party before me during litigation that was active for a number of months?

In any event, I hear what you're saying.  I will consider it.

MR. SILK:  So, getting back -- and I know we have a short period of time, but --

THE COURT:  You have a half an hour.  Use it all if you want.

MR. SILK:  So, this is a complex issue, and, you know, as the Court may be aware, there's two issues with 25(c).  The first is determining whether or not a party is a successor in interest, and that's a factual question, right.  That's where my client is entitled to due process, entitled to a hearing.

THE COURT:  How have you not had due process?  What do you want?  You had an opportunity to brief, and you have a --

MR. SILK:  I want to have my client be able to testify.

THE COURT:  What would your client say that is

not already included in his multiple-page declaration?

MR. SILK:  So, what I would say is that there was a reply filed.  And I anticipated, based on the Court order, that there was going to be a hearing, at which point -- so, I could have made that declaration 20 pages longer.  My intent was to show that there is an issue of fact, have a hearing, and present evidence as to why all the corporate formalities were followed.

THE COURT:  Why could your person not be available today?

MR. SILK:  They were available today.

THE COURT:  Why didn't you put them on for part of the time, and if we ran out of time, we could pick it up later in the day or another day?

MR. SILK:  In fact, my client emailed me this morning to say, "It's true that I don't need to testify today?"  Because an email from your court said today was just going to be oral argument, no testimony necessary.

THE COURT:  Okay.

MR. SILK:  I would have had him -- I will try to get him on.  I think he's in Poland right now.  I will try to get him on, and I would love the opportunity to have him testify.

THE COURT:  He can testify, if you can identify for me what he would say that is not already

included in his multiple-page declaration.  What topics would he cover?  Or do you want me to ignore the declaration and have him testify live?  I mean, let's not duplicate.

MR. SILK:  So, I mean, again, plaintiffs have provided no affidavit, no evidence other than attachments, right.

THE COURT:  Yeah, but things that I can consider that are of record and appropriate.  They didn't feel, apparently, they needed a witness, and, frankly, I don't think they did either --

MR. SILK:  Okay.

THE COURT:  -- because -- because.

MR. SILK:  Well, I can tell the story that I anticipate my client would have told.  Okay.  So, in 2021 --

THE COURT:  Is this a story that is already included in his declaration?

MR. SILK:  No.

THE COURT:  Okay.  This is totally new to my ears then.

MR. SILK:  There may have been some slight overlap, but, again --

THE COURT:  You know what I would like you to do?  I would like you to talk to him.  I'm happy to hear from him, and I want to hear from him next week.  I want to hear from him. . .

Off the record.

(Discussion held off the record between the Court, the courtroom deputy, and counsel.)

THE COURT: Let's go back on the record.

We have been off the record talking about accommodating counsel who wants to present testimony from Mr. Breith. And he correctly noted that we -- "we," our chambers, limited today to argument due to the shortness of time.

We have shared with counsel two dates and times next week for entertaining his testimony. Counsel will confer, talk with chambers, and we'll pick, hopefully, one of those dates and times so that we can hear from him. And I don't know if you have any witnesses you want to have stand by, or if you have any other witnesses that you think you might want to, but please clear it with us. Right now, we're going to set aside time for one witness.

And you can complete today any other arguments based on what you heard earlier, if you wish. I would like to use this time if we can. So, hit any legal points you want with us, keeping in mind the adage: Just because you can, doesn't mean you should.

MR. SILK: Right. I'm a firm proponent of that as well.

Your Honor, essentially, what I would be doing is just

walking you through why they kept corporate formalities, and that this is a common practice, and that there was no transfer of assets whatsoever to Corp is essentially what my witness will testify to.  So, I don't think it will be helpful today for me to sort of reiterate what's in our brief and what's going to be coming next week, so. . .

THE COURT:  Okay.  I appreciate that.  I don't think I have anything further.  I appreciate your time today, and happy to hear from you again next week, whether it be Monday or Wednesday.  Do try to let us know today if you can.  I don't know if the phones are going to work next week when they shut us down.

MR. SILK:  What does that mean for you for the shutdown?  Does that mean --

THE COURT:  We'll talk about that off the record.

We're adjourned.

(Proceedings concluded at 9:38 a.m.)

- - -

**C E R T I F I C A T E**

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter prepared from my stenotype notes.

*/s/ Stacey L. Kiprotich*                    *12/29/25*__
STACEY L. KIPROTICH, RMR, CRR              DATE