IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Firexo, Inc., | Case No. 3:21 CV 2336 |
| Plaintiff, | <u>ORDER DENYING STAY</u> |
| -vs- | JUDGE JACK ZOUHARY |
| Firexo Group Limited, | |
| Defendant. | |

## INTRODUCTION

In December 2025, this Court joined Defendant Firexo Corporation ("Corp") as a successor Defendant (Doc. 73) and appointed an interim receiver (Doc. 76) to aid in enforcing the prior Default Judgment (Doc. 51). Corp now moves to stay this Court's judgment pending appeal (Doc. 79). Plaintiff Firexo Inc. ("Firexo") opposes (Doc. 81).

## STANDARD

Federal Civil Rule 62(b) permits a judgment debtor to obtain a stay of execution as of right by posting a bond approved by this Court. Firexo's opposition correctly notes that this traditional mechanism was available to Corp, but Corp elected not to post a bond (Doc. 81 at 1–2). Corp instead invokes this Court's inherent authority to issue an unsecured stay under Federal Civil Rule 62(c) and Federal Appellate Rule 8(a). In evaluating such a discretionary stay pending appeal, this Court considers four familiar factors:

(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal;

(2) the likelihood that the moving party will be irreparably harmed absent a stay;

(3) the prospect that others will be harmed if judgment is stayed; and

(4) the public interest in granting the stay.

*DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743, 746 (6th Cir. 2020) (citation omitted). These factors are "interrelated considerations that must be balanced together," and "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [the movant] will suffer absent the stay." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) (citation omitted).

The Sixth Circuit has emphasized that the first two factors -- likelihood of success and irreparable harm -- are the "most critical." *Ohio St. Conf. of NAACP v. Husted*, 769 F.3d 385, 387 (6th Cir. 2014) (citation omitted). A movant must address each factor and support its assertions with facts and adequate proof. *Ohio ex rel. Celebrezze v. Nuclear Regul. Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987). Irreparable harm must be "certain and immediate"; "[m]ere injuries, however substantial, in terms of money, time and energy . . . are not enough." *Griepentrog*, 945 F.2d at 154 (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

## DISCUSSION

**Likelihood of Success on the Merits**

Corp's showing on likelihood of success is, as Firexo observes, "not a showing at all; it is a disagreement with this Court's factual findings and legal conclusions" (Doc. 81 at 4). The Order joined Corp as FGL's successor and indicated that this Court would appoint a limited receiver based on three independent doctrines -- de facto merger, alter ego/mere continuation, and fraudulent transfer of substantially all assets (Doc. 73 at 9–15). Each of those determinations rested on a detailed factual record, including (*see* Docs. 55 at 1–9; 73 at 5–8, 12–14):

- The September 1, 2021 shareholder circular describing the planned restructuring and shareholder transaction;

- the November 5, 2021 share-for-share exchange through which Corp became the "TopCo" and obtained control of the Firexo group's equity and intellectual property; and

- later communications by Corp's CEO, David Breith, confirming that FGL had been "effectively dormant" since the share exchange, that its only function was to defend litigation, and that Corp, not FGL, had become "the ultimate Firexo holding entity."

### *Standard of Review and the Evidentiary Record*

On appeal, the Federal Civil Rule 25(c) joinder and the scope of post-judgment equitable relief will be reviewed for abuse of discretion, with underlying fact findings reviewed for clear error. *See, e.g.*, *The Charter Oak Fire Ins. Co. v. SSR, Inc.*, 2015 WL 10890126, at *4 (E.D. Ky. 2015) ("Joinder or substitution under Rule 25(c) is merely a procedural device, thus a Rule 25(c) decision is generally within the discretion of the court."). The Order cited and weighed the documentary evidence, including the corporate records and communications described above, together with the parties' competing positions on jurisdiction, international comity, and Corp's "holding company" characterization (Doc. 73 at 2–4, 8–14).

Corp insists that Firexo "provided no admissible evidence" because Firexo did not call live witnesses at the earlier joinder Hearing and relied in part on the Joint Stipulations and corporate documents produced in discovery (Doc. 79 at 3–4). That argument misstates the record. Firexo submitted documentary evidence in support of its position, including corporate records and emails from Corp's leadership (Docs. 55 at 2–14; 14-7; 14-11). At the Hearing, Firexo relied on the same corporate records and communications on which this Court relied in entering the Order (e.g., the September 2021 shareholder circular, the November 2021 share-for-share exchange agreement, and later communications concerning the liquidation of Firexo Group Limited ("FGL") and the continued Firexo business under Corp) (*see* Doc. 71). Those materials are not mere "allegations" -- they are documentary evidence that was properly considered.

3

Breith did not attend or testify at the Hearing.  Instead, Peter Coyle, Corp's general counsel, described the November 2021 transaction and its intended role in a planned IPO (Doc. 79 at 4–5).  But Coyle resigned in July 2024 and was therefore unfamiliar with the October 2024 liquidation proceedings.  His testimony largely repeated arguments previously made in briefing and did not materially alter the factual record (*id.* at 3–8).  Weighing that testimony and Breith's written statements against the contemporaneous documents, this Court concludes that Corp's evidence did not undermine -- and in some respects corroborated -- this Court's earlier findings about the share exchange, FGL's dormancy, and the continued operation of the Firexo enterprise under Corp's umbrella.

A party's "bald conclusion" about "serious legal issues" does not establish a likelihood of success on appeal.  *Titan Tire Corp. of Bryan v. Local 890L, United Steelworkers of Am.*, 673 F. Supp. 2d 588, 590 (N.D. Ohio 2009).  And Corp's disagreement with this Court's evaluation of the evidence does not amount to a strong showing of probable reversal.

### *Multiple Independent Grounds for Successor Liability*

The Order held that Corp is bound by the existing judgment under three independent successor-liability theories (Doc. 73 at 9–14).  Firexo's Opposition correctly notes that Corp must show a strong likelihood of overturning the successor-liability determination "as a whole" -- it is not enough to re-argue one facet of the record or express dissatisfaction with this Court's procedural management (Doc. 81 at 5–6).

The evidence of continuity of ownership and management, the transfer of FGL's business and core assets into Corp, and the deliberate dormancy and liquidation of FGL while the enterprise continued under Corp, support de facto merger, alter ego/mere continuation, and fraudulent transfer theories under the authorities cited in the Order and Firexo's briefing (*see* Docs. 70 at 3–9; 73 at 9–14).  Corp does not identify any clear error in those findings or show that this Court abused its

4

discretion in concluding that Corp is the proper successor entity against which Firexo's judgment should be enforced. *See Est. of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (recognizing successor/alter-ego concepts in the jurisdictional and enforcement context).

### Corp's "Void Corporation" Argument

Corp briefly argues that because it is "void" under Delaware law for failure to pay franchise taxes, it "cannot be sued," and thus the Order is likely to be reversed (Doc. 79 at 6–7). Firexo outlines why this argument does not warrant a stay (Doc. 81 at 6–7).

Rule 25(c) is a procedural device intended to ensure that a judgment follows the entity that now holds the relevant interest. It exists precisely to prevent defendants from evading judgments through post-suit restructuring (*see* Doc. 73 at 10–14). FGL, and now Corp, have actively appeared through counsel and litigated in this forum for years; it does not contend that it lacks capacity to defend itself here, only that its own failure to maintain good standing in Delaware should insulate it from post-judgment enforcement.

Corp's own failure to pay Delaware franchise taxes, and its choice not to cure that deficiency, do not create a substantial likelihood that the Sixth Circuit will reverse a Rule 25(c) joinder order that merely aligns an existing judgment with the successor entity holding the business and assets at issue. As Firexo notes, equity does not favor allowing a judgment debtor's corporate noncompliance to operate as a shield against a federal judgment and a preservation receivership tailored to prevent dissipation (Doc. 81 at 6–7). On this record, Corp has not made the "strong showing" on likelihood of success required to justify a discretionary stay. *Husted*, 769 F.3d at 387.

### Irreparable Harm to Corp

Corp next contends that it will suffer irreparable harm absent a stay, pointing to potential loss of working capital facilities, possible freezing of bank accounts, risk to contracts, and the specter that

the Firexo group "will be forced to be closed and wound up" if the receivership proceeds (Doc. 79 at 7–8).

As the Sixth Circuit has repeatedly held, however, anticipated business disruptions, increased costs, and other monetary harms -- even if substantial -- are not irreparable. *Griepentrog*, 945 F.2d at 154; *Celebrezze*, 812 F.2d at 290. Corp claims loss of investment, potential contract defaults, and possible operational consequences. But these are normal economic harms and, in this case, they are speculative. Corp repeatedly asserts that banking "could be frozen" and salaries "will not be paid," but identifies no concrete facts showing that such events are "certain and immediate" (Docs. 79 at 7–8; 81 at 7). Corp does not identify any specific directive that would freeze accounts, prevent payroll, or terminate customer relationships and instead relies on predictions about what "could" occur if counterparties reacted negatively to the existence of a receivership. This Court does not credit these speculative projections as "certain and immediate" harm.

Finally, this Court has restricted the pending receivership "for the limited purpose of identifying, preserving, and applying [Corp's] assets toward satisfaction of the judgment," and has expressly weighed any potential harm to Corp or other stakeholders against the risk that the Default Judgment will become uncollectible absent asset preservation (Doc. 73 at 15–18). The limited receivership is designed to preserve, not destroy, Corp's assets. The ordinary consequences of complying with an adverse judgment are not the kind of "substantial irreparable harm" that can overcome a low likelihood of success. *Titan Tire*, 673 F. Supp. 2d at 590. Corp has therefore not carried its burden on the second of the most critical factors.

**Harm to Firexo and Other Parties**

The third factor, which examines whether others will be harmed if a stay is granted, strongly favors Firexo. Firexo already holds a final judgment based on findings of fraud and conscious

disregard for safety (Doc. 51). FGL, the original judgment debtor, is now in U.K. liquidation and no longer operates the business that generated the judgment (Doc. 73 at 12–14).

In the Joinder Order, this Court found a "substantial risk" that assets would be "further dissipated or moved beyond the reach of this Court" absent a receivership (Doc. 73 at 16). A stay would remove the very protections this Court imposed to prevent irreparable injury to Firexo's ability to collect on its judgment (Doc. 81 at 9).

Corp's suggestion that "the public and others" will be harmed if a stay is denied focuses on employees, trade creditors, and third parties (Doc. 79 at 8). But this Court has already tailored the receivership to minimize disruption while preventing further asset shifting. The risk that a judgment debtor's stakeholders may be affected by enforcement efforts does not outweigh the harm to the judgment creditor when enforcement is stayed in the face of demonstrated dissipation risk -- particularly where the judgment rests on findings of fraud and safety-related misconduct.

In short, granting a stay would significantly endanger Firexo's ability to collect a lawfully obtained judgment; denying a stay leaves Corp facing, at most, economic and reputational consequences that do not rise to the level of irreparable harm. The third factor therefore also weighs against a stay.

**Public Interest**

The public interest factor does Corp no better. The public interest is served when courts enforce final judgments and prevent parties from using corporate restructuring and asset shifting to evade lawful obligations (*see* Doc. 81 at 9–10). That interest is heightened where, as here, the underlying judgment reflects findings of fraud and conscious disregard for safety (Doc. 73 at 2–4, 10–14).

Corp has not identified a countervailing public interest that would justify an unsecured stay of a post-judgment asset-preservation order. Its generalized concern that a receivership might make financing more difficult or signal distress is not a public-interest concern. This is, at most, a claim of

business harm. By contrast, the public has a strong interest in the integrity and enforceability of federal judgments and in ensuring that sophisticated parties cannot sidestep judgment through insolvency maneuvers.

## Conclusion

Balancing all four factors, this Court concludes that a discretionary, unsecured stay pending appeal is not warranted. Corp has not demonstrated a substantial likelihood of success on the merits; its allegations of irreparable harm are speculative; the risk of harm to Firexo is significant if enforcement is stayed; and the public interest favors enforcing the judgment.

The Motion to Stay Judgment Pending Appeal (Doc. 79) is denied.

IT IS SO ORDERED.

                                            s/ *Jack Zouhary*
                                           JACK ZOUHARY
                                           U. S. DISTRICT JUDGE

                                           January 13 , 2026