**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| FIREXO INC., | Case No. 3:21-cv-02336 |
| Plaintiff, | Hon. Jack Zouhary |
| v. | |
| FIREXO GROUP LIMITED, *et al.*, | |
| Defendants. | |

**FIREXO CORPORATION'S REPLY IN SUPPORT OF ITS
MOTION TO STAY JUDGMENT PENDING APPEAL
AND MEMORANDUM IN SUPPORT**

On January 6, 2026, Firexo Inc. ("Plaintiff") filed its opposition to Firexo Corporation's ("Corp.") motion to stay judgment pending appeal. (Doc. 81). In its opposition Plaintiff asserts that Corp. is making the same arguments it has previously presented, that Corp. has not established that it will be irreparably harmed, and that Corp. can submit a bond pursuant to Fed.R.Civ.P. 62(B).  The parties agree as to the four factors that this Court should evaluate a request for a stay pending appeal. *See*, *DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 385, 387 (6th Cir. 2014). For the reasons set forth below, Corp. has established that a stay is appropriate.

**Corp. Has Demonstrated That It is Likely to Succeed on the Merits**.

Plaintiff asserts that Corp. is presenting the same arguments that the Court did not find persuasive when briefed. That is the nature of this type of motion. Corp. is not requesting this Court reverse its decision, but recognize that there are significant issues

for appeal. As Plaintiff notes, the Court relied upon the language in a September 2021 shareholder circular to determine that assets were transferred from Firexo Group Limited ("FGL") to Corp. (Doc. 81 ¶ 10). There is no document that shows that any assets, including intellectual property, was transferred from FGL to Corp. In fact, the evidence shows the contrary. At the October 22, 2025, hearing, Peter Coyle testified in detail regarding the share swap transaction which included FGL, Corp., and FGL shareholders. The hearing has been transcribed. (Doc. 82). Mr. Coyle is a solicitor and was company secretary and general counsel for FGL. (Doc. 82, PageID # 2018, 2019). Mr. Coyle described the transfer of shares from FGL to Corp. and the required consent from FGL shareholders. (Doc. 82, PageID # 2021). This share swap did not involve any transfer of assets from FGL to Corp. The business operations of FGL did not change following the share swap. The employees of FGL remained the employees of FGL after the share swap. (Doc. 82, PageID # 2023). At the time of the share swap, FGL had minimal assets. (Doc. 82 PageID # 2023). Prior to the share swap, FGL had assigned its intellectual property to Firexo COTM Limited. (Doc. 82 Page Id 2023, 2035).

FGL had the same assets before and after the share swap. The assets included subsidiaries. FGL still retained its interest in the subsidiaries after the share swap. (Doc. 82 PageID # 2024). Corp. has no assets other than shares in other group entities. *Id*. Ironically, not only were there no assets transferred from FGL to Corp., Corp. provided FGL with well over a million dollars to fund the defense of litigation. (Doc. 82, PageID # 2027, 2032). Corp. is a creditor of FGL in the ongoing voluntary liquidation of FGL. (Doc. 82, PageID # 2027).

Mr. Coyle also explained a shareholder email dated from October 16, 2024, that Plaintiff relied upon for the statement that FGL had been effectively dormant since the

share swap was not accurate and that FGL engaged in the same business operations before and after the share swap. (Doc. 82, PageID # 2030). Further, prior to the share swap, upon the advice of the IPO attorneys, Firexo COTM Limited ("Limited") was incorporated to hold the intellectual property assets of FGL. (Doc. 82, PageID # 2035). In September 2021, IP was assigned from FGL to Limited. No IP was ever assigned to Corp. In 2024, during FGL's liquidation evaluation it was determined that the value of the IP should be independently valued and paid to FGL to be distributed to its creditors. (Doc. 82, PageID # 2035; Doc. 68-1, PageID # 1697). Thus, the only IP that FGL owned was assigned to Limited prior to this litigation and prior to the share swap. During the liquidation process the value of the IP from transferred from FGL to Limited was independently valued at 225,000 pounds. This amount was paid to FGL and will be distributed to its creditors, including Plaintiff, Mr. Coyle's firm, and Corp. *Id*.

Likewise, during the evaluation process of FGL assets prior to the voluntary liquidation, FGL's interests in other companies were evaluated and FGL was paid the determined value. (Doc 68-1, PageID # 1697). In short, the transactional documents, the affidavit of David Breith, and the testimony of Peter Coyle each show that no assets were transferred from FGL to Corp. as part of the share swap. The purpose of the share swap was to create an American holding corporation so that an IPO could be issued. FGL maintained all its assets following the transaction. It struggled as a business due to the burdensome litigation which eventually led to the scrapping of the IPO and it entering Voluntary Liquidation. Without any transfer of assets from FGL to Corp., Corp. can't be subject to successor liability any under theory.

3

**Corp. Has Demonstrated Irreparable Harm Absent a Stay.**

Plaintiff claims that Corp. harms are economic and speculative. Neither are true. The appointment of a receiver with the authority to dispose of Corp. assets to satisfy the judgment in the case will result in Corp. and its subsidiaries shutting down. In his affidavit, Corp. CEO explains the ramifications of a receiver. It would be devastating to Corp., its subsidiaries, employees of the subsidiaries, group creditors, and group suppliers. This is not surprising. Most companies that are subject to a judgment for more than four million dollars would not survive if a receiver was appointed and all assets are sold.

Plaintiff argues that Corp. cannot identify any concrete action which would cause the harm it forecasts, and that the receivership is designed to preserve, not destroy the enterprise. Plaintiff is very aware of the financial condition of Corp. as it receives shareholder reports. The appointment of the receiver will have two significant consequences. The immediate consequence is that the appointment of the receiver will impact current loans, potential loans, and other contractual relationships. The other near-term consequence is that the receiver can "[a]pply those assets, consistent with applicable law, to satisfy the Default Judgment in this case." This is a broad grant of authority to a receiver. The receiver has full reign to identify assets and sell those assets to satisfy the judgment. The authority of a receiver to identify and sell assets or Corp. and its subsidiaries is not designed to preserve Corp., rather.

**The Balance of Harms Favor a Stay.**

Not surprisingly, Plaintiff does not address the harm the appointment of a receiver would have on the employees of Corp.'s subsidiaries, its suppliers, its customers, its creditors, or its shareholders. Rather it focuses on its own ability to satisfy its judgment.

4

Without a doubt, the sale of Corp. assets will have far ranging effects on individuals and other entities.

### The Stay Should Not Be Conditioned on Posting a Bond.

First, Corp. does not have the funds or resources to post a four-million-dollar bond. Second, the appointment of a receiver in this case is extraordinary and for the reasons set forth above will have significant impact on Corp. and others. In its Interim Receivership Order this Court Ordered that Corp. not take any actions outside the ordinary course of business that would affect Receivership Assets.  (Doc. # 76). Corp. has complied with that Order and has no intent in taking any action to transfer, conceal, or encumber any assets outside the ordinary course of business during the pendency of this appeal.

    Respectfully submitted,

*/s/ James P. Silk, Jr.*
James P. Silk, Jr. (0062463)
Teresa L. Grigsby (0030401)
SPENGLER NATHANSON P.L.L.
900 Adams Street
Toledo, OH  43604
Telephone:  (419) 241-2201
Facsimile:  (419) 241-8599
jsilk@snlaw.com
tgrigsby@snlaw.com
*Counsel for Defendant Firexo Corporation*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing has been electronically filed this 13th day of January, 2026. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

                                               */s/ James P. Silk, Jr.*
                                               James P. Silk, Jr.
                                               *Counsel for Defendant Firexo*
                                               *Corporation*

787366