IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

FIREXO, INC.,

      Plaintiff,

v.

FIREXO GROUP LIMITED, *et al.*,

      Defendants.

CASE NO. 21-cv-02336

JUDGE JACK ZOUHARY

RECEIVER'S MOTION TO COMPEL
AND TO SHOW CAUSE WHY FIREXO
CORPORATION, DAVID BREITH AND
PETER COYLE SHOULD NOT BE HELD
IN CONTEMPT, AND FOR FURTHER
EQUITABLE RELIEF

GORANSON, PARKER & BELLA
BY: Christopher F. Parker (0009338)
405 Madison Ave., Suite 2200
Toledo, Ohio 43604
(419) 244-9500-- telephone
(419) 244-9510-- facsimile
cparker@gpblaw.com – e-mail

COUNSEL FOR RECEIVER

\*    \*    \*    \*    \*

Now comes the Receiver, The Skutch Arlow Group, by and through counsel, and respectfully requests an Order from the Court providing the following relief: **(1)** compelling Firexo Corporation ("Corp"), along with its current and former representatives Mr. David Breith (Corp's Chief Executive Officer and director) and Mr. Peter Coyle (a former corporate secretary acting in active concert with Corp under Fed. R. Civ. P. 65(d)(2)), to comply with Paragraphs 9 and 10 of the February 9, 2026 Order Appointing Receiver (Doc. 94); **(2)** ordering Firexo Corporation and Messrs. Breith and Coyle to show cause why they should not be held in civil contempt; **(3)** imposing coercive per-diem fines until full compliance; **(4)** voiding the

September 24, 2025 allotment of 110,000,000 shares in Firexo Holdings Limited as a fraudulent transfer; and **(5)** granting the further equitable relief requested herein.  The grounds in support are set forth herein.

Respectfully submitted,

/s/ Christopher F. Parker
Christopher F. Parker

## I.  INTRODUCTION

The Receiver finds this Motion necessary because Corp has produced virtually none of the documents and information the Court ordered it to produce in the Order Appointing a Receiver filed on February 9, 2026 [Doc. 94]. The Court's Order broadly applied to Corp and all of its subsidiaries, assets of which are included as "Receivership Assets." [*See, also,* Doc. 94, Page ID. 2114; ¶¶'s 10, 13-18 and 24.]  The Order imposed an asset freeze (¶3), required disclosures within 10 days (¶9), and required a sworn accounting with documentation within 20 days (¶10). Three months later, Corp has produced (i) a six-paragraph witness statement from a man who resigned as company secretary in July 2024, and (ii) board minutes from a UK affiliate.  There was an additional spread sheet provided in an April 16 e-mail with some responses from questions posed by the Receiver.  No other documents or other information been provided.

The Coyle witness statement is not just inadequate.  It directly contradicts Coyle's own sworn hearing testimony from five months earlier.  In October 2025, Coyle testified under oath that Firexo Group Limited "borrowed quite significant amounts from Firexo Corporation to help fund the litigation." (Doc. 82 at 17). In March 2026, Coyle swears under penalty of contempt that Firexo Corporation "has no assets at all in the United States of America" and has "no trade anywhere in the world." One of those statements is false. Corp now relies on the second.

The record also discloses a sequence of new transactions that were designed to eliminate value, undertaken after Corp was on notice of the proceedings in this litigation. On September 24, 2025, seven weeks after Plaintiff moved to join Corp as a defendant and to appoint a Receiver [Doc. 55] and well after Corp appeared in this action with counsel, an affiliated entity Firexo Holdings Limited (FHL) purported to

allot 110,000,000 new shares to former Corp shareholders. This allotment was not disclosed to Companies House until December 30, 2025, published on January 8, 2026 by way of an SH01.  The document was signed by David Breith using Peter Coyle's law office address.  Corp did not originally disclose the allotment to the Receiver.  No consideration for the purported transaction is documented. This is important for several reasons: (1) as this Court has already recognized, FHL was a primary depository for the assets of the Firexo business [Doc. 73, Page ID # 1907]; (2) prior to this new purported allotment, only one share of FHL had been issued (and it was issued to Corp); and (3) the single share of FHL was the only asset Corp disclosed to the Receiver.  In other words, it is plainly evident that the effect of the allotment was/is to substantially dilute Corp's ownership interest in its only known asset, subjecting the interest to significantly diminished fraction.

The relief requested herein addresses the violation, the controlling individuals who direct it, and the asset transfers that have continued in spite of the Receivership Order.

## II.  PROCEDURAL BACKGROUND

Defendants Firexo Group Limited and Firexo Corporation are joint and several judgment debtors on a $4,135,042.00 default judgment [Doc. 84]. After granting Plaintiff's motion to join Corp and to appoint a Receiver [Doc. 73], the Court denied Corp's motion to stay enforcement pending appeal [Doc. 85; reconsideration denied, Doc. 89]  The Court entered the Order Appointing Receiver on February 9, 2026 [Doc. 94]. Corp has appealed the Judgment and the Order Appointing Receiver [Doc. 95].

Counsel for the Receiver extended the 10- and 20-day disclosure deadlines set forth in the Order Appointing A Receiver as a courtesy, pending a conference on February 19, 2026.  On March 4, the Receiver demanded full compliance by week's end. Corp responded on March 13 providing only a "witness statement" from Peter Coyle.  As the Court knows from prior hearings, Mr. Coyle is a Solicitor and Corp's former company secretary, having resigned in July 2024. The Receiver advised on March 17 that the statement was not responsive to ¶¶9 and 10 of the Order Appointing a Receiver. Further correspondence through April and into early May produced no documents and no compliance. As a result, this Motion is presented to secure compliance with the Orders of this Court or to face sanctions for the deliberate failure to comply.

3

### III. SPECIFIC VIOLATIONS OF THE ORDER APPOINTING RECEIVER

The Order Appointing A Receiver requires production of fourteen distinct categories of documents and information. As of the filing of this motion, every category remains outstanding. The following chart sets out, paragraph by paragraph, what the Court required and what Corp produced.

| ORDER ¶ | WHAT THE COURT REQUIRED | WHAT CORP PRODUCED |
|---|---|---|
| ¶ 9 (10-day disclosure) | Sworn statement listing (a) identity, location, and estimated value of all Receivership Property; (b) all employees, personnel, attorneys, accountants, agents, or contractors; (c) names, addresses, and claim amounts of all known creditors. | No sworn statement from any current officer. A March 13, 2026 witness statement from Peter Coyle (a former secretary who resigned in July 2024 and has no current authority to bind Corp). No employee list. No creditor list. No valuation of any property.<br><br>Following additional conversations between the Receiver and Defendants' US legal counsel, and in an Excel document attached to an April 16, 2026 e-mail, Mr. Breith and/or Mr. Coyle stated the following: "A sworn statement from Dave Breith will confirm that (a) the only property of Firexo Corp is a single ordinary share in Firexo Holdings Limited, a company registered in England and Wales; (b) the Receivership Defendant is void and does not have any employees, other personnel, accountants or agents. It was the corporations failiure [sic] to pay franchise taxes in Delaware which led to its void status in March 2025 (c) its only creditors are the State of Delaware and Firexo Inc." |
| ¶ 10(A) (20-day accounting— Receivership Property) | Documentation of all Receivership Property, wherever located, held by or in the name of the Receivership Defendant and its subsidiaries, including securities, investments, funds, real estate, automobiles, jewelry, and all accounts at any bank, brokerage, or financial institution, with account statements. | Nothing. The Coyle statement asserts Corp "has no assets at all in the United States of America" and that its only asset is a single ordinary share in Firexo Holdings Limited. No documentation supports the assertion. Coyle's sworn October 22, 2025 testimony that FGL "borrowed quite significant amounts from Firexo Corporation" (Doc. 82 at 17) contradicts the asset denial.<br><br>In an Excel document attached to an April 16, 2026 e-mail, Mr. Breith and/or Mr. Coyle stated the following: "From January, 1 2025 to the present, Firexo Corp has not had any Receivership Property within the jurisdiction of this court. The accounting will show Zero as a void company cannot hold assets or liabilities."<br><br>The Excel document also contained the following statement: "As above, since the 1st March, Firexo Corporation has had no control over the assets of the Group and only a fractional share, holding 1 share in 110,000,000" |

4

| ORDER ¶ | WHAT THE COURT REQUIRED | WHAT CORP PRODUCED |
|---|---|---|
| ¶ 10(B) (account signatory authority) | Identification of every account at every bank, brokerage, or financial institution over which the Receivership Defendant or any subsidiary has signatory authority, or that was opened by, in the name of, for the benefit of, or used by, the Receivership Defendant or any subsidiary. | Nothing.<br><br>In an Excel document attached to an April 16, 2026 e-mail, Mr. Breith and/or Mr. Coyle stated the following: "Firexo Corp. has never had any banking facilities within the jurisdiction of this Court." |
| ¶ 10(C) (payment cards) | Identification of all credit, bank, charge, debit, or other deferred payment cards issued to or used by the Receivership Defendant or any subsidiary, with issuing institution, account numbers, authorized users, balances, and twelve months of statements. | Nothing.<br><br>In an Excel document attached to an April 16, 2026 e-mail, Mr. Breith and/or Mr. Coyle stated the following: "As above" – referencing the answer to item 10(B). |
| ¶ 10(D) (assets received) | All assets received by any of them from any person or entity, including value, location, and disposition. | Nothing.<br><br>In an Excel document attached to an April 16, 2026 e-mail, Mr. Breith and/or Mr. Coyle stated the following: "Firexo Corp has never received any assets." |
| ¶ 10(E) (expenditures over $1,000) | All expenditures exceeding $1,000 made by any of them, including those made on their behalf by any person or entity. | Nothing.<br><br>In an Excel document attached to an April 16, 2026 e-mail, Mr. Breith and/or Mr. Coyle stated the following: "Firexo Copr [sic] has never expended more than $1,000." |
| ¶ 10(F) (asset transfers) | All transfers of assets made by any of them. | Nothing. The September 24, 2025 share-allotment transaction at Firexo Holdings Limited (which diluted Corp's sole asset) was not disclosed by Corp; the Receiver learned of it through Companies House public filings.<br><br>In an Excel document attached to an April 16, 2026 e-mail, Mr. Breith and/or Mr. Coyle stated the following: "Firexo Corp has never transferred any assets." |
| ¶ 10(G) (accounting software access) | Full and unfettered access to any accounting software used by the Receivership Defendant, with login script and password access to any online accounting service. | Nothing.<br><br>In an Excel document attached to an April 16, 2026 e-mail, Mr. Breith and/or Mr. Coyle stated the following: "Firexo Corp has never used any accounting software as it is a non trading entity." |
| Receiver's March 4, 2026 demand (post-Receivership transactions) | Identification of all transactions undertaken in the United States and abroad since February 9, 2026 by the Defendant entities and all subsidiary entities. | Nothing. |
| Receiver's March 17 – April demand (SH01 / share allotment) | Seventeen specific categories of documents concerning the September 24, 2025 allotment of 110,000,000 new shares in Firexo Holdings Limited—proposed shareholders, consideration, communications, appraisals, subscription agreements, resolutions, meeting notices, IP-allocation impact, and financial information for FHL and FGL from January 1, 2025 to present. | Nothing other than the September 24, 2025 minutes (the referenced "Annex" was withheld). No subscription agreement. No consideration documentation. No communications between Breith, Coyle, and Dr. Winand Staring. No appraisal or valuation. No financial records for FHL or FGL. |

5

| ORDER ¶ | WHAT THE COURT REQUIRED | WHAT CORP PRODUCED |
|---|---|---|
| Receiver's demand for Harvard Business Services and Delaware communications | All communications issued by the State of Delaware and Harvard Business Services concerning Corp's void status. | No documents provided as Defendants claim their resident agent never provided any notice of any kind.<br><br>The Receiver initiated contact directly with Harvard Business Services, the Delaware resident agent.  Harvard Business Services provided very general information, refusing to respond specifically as to the involved Defendants without a subpoena. |
| Receiver's demand for intercompany loan documentation | All documents associated with the loans Coyle testified FGL took from Corp to fund litigation, including loan agreements, supporting documents, and identification of any shareholder loans. | Nothing.<br><br>Corp invokes a "right of privacy" for an alleged shareholder lender.  Corp also claimed lack of control since FGL is now in voluntary liquidation under the control of appointed liquidators. |
| Receiver's demand for IP transfer documentation | All documents concerning the registration of FGL intellectual property in the United States, the creation of the IP-holding entity in connection with the aborted IPO, and the appraisal sought by the UK liquidators. | Nothing.<br><br>In an Excel document attached to an April 16, 2026 e-mail, Mr. Breith and/or Mr. Coyle stated the following: "The draft Registration Statement was only draft on a proposed IPO that was aborted and never completed." |

The foregoing chart identifies multiple violations of a "definite and specific order of the court." *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 598 (6th Cir. 2015). Each violation is supported by clear and convincing evidence: (1) the Order Appointing A Receiver, (2) the Receiver's communications, and (3) Corp's own admissions through Coyle that no responsive material will be produced.

### IV.  THE COYLE STATEMENTS ARE MUTUALLY INCONSISTENT AND CANNOT BOTH BE TRUE

In a hearing before this Court on October 22, 2025, Peter Coyle testified under oath about the FGL–Corp relationship. Specifically, Coyle testified that "Firexo Group Limited borrowed quite significant amounts from Firexo Corporation to help fund the litigation …." [Doc. 82 at p. 17]. Coyle confirmed the loans existed, they came from Corp, and they were used by FGL for litigation expenses.

On March 13, 2026, Coyle submitted a written statement, made under threat of contempt, to the Receiver in response to the Receiver's request for information.  Coyle states, under threat of contempt, that Corp "has no trade anywhere in the world", that it "has no employees", that it "has no bank account",  and that it "has no assets at all in the United States of America." Coyle Witness Statement ¶3 (Mar. 13, 2026).

Either Corp had assets sufficient to loan "quite significant amounts" to FGL or it did not.  Coyle's hearing testimony was under oath.  His March 13, 2026 statement was under threat of contempt, presumed to be analogous to a statement under oath.  The assertions are obviously inconsistent, leading to the inevitable conclusion that one must be false. Coyle's earlier sworn testimony established the existence of intercompany loans.  His March 13 statement contradicts the prior testimony in what can only be determined to be a litigation-driven retraction. The Court should credit the earlier testimony over the later contradiction. At a minimum, the contradiction defeats any reliance on the March 13 statement as a substitute for the production required by Paragraphs 9 and 10 of the Order.

### V.  THE SEPTEMBER 24, 2025 SHARE ALLOTMENT WAS A FRAUDULENT TRANSFER

Corp's only disclosed asset is a single ordinary share in Firexo Holdings Limited (FHL), a UK company. Coyle Witness Statement ¶ 4 (Mar. 13, 2026). That single share was, until purported action occurring on September 24, 2025, FHL's only issued share.  Thus, Corp was FHL's sole shareholder. Corp acquired the share on November 3, 2021. [*See* Minutes of October 22, 2025 Record Motion Hearing and Plaintiff's Motion Hearing Exhibit. 10 (showing Corp's subsidiary structure as of July 10, 2025).]

On September 24, 2025, seven weeks after Plaintiff moved to join Corp as a defendant and to appoint a Receiver [Doc. 55], FHL purported to allot 110,000,000 new shares to former Corp shareholders, on the stated reasoning that Corp's void status under Delaware law had rendered FHL a company without a lawful shareholder. The minutes were originally withheld from the Receiver and ultimately produced only after demand. The annexed shareholder list referenced in the minutes was not produced. The corresponding SH01 was not filed with Companies House until December 30, 2025.  The document was not published by Companies House until January 8, 2026, more than three months after the asserted date of allotment.

Section 555 of the UK Companies Act 2006 requires SH01 filings within one month of allotment. The December 30, 2025 filing was three months late on a one-month statutory deadline. The delay raises serious questions whether the allotment in fact occurred on the asserted September 24, 2025 date. The SH01 was signed by David Breith using the address of Mr. Coyle's law office. The use of Mr. Coyle's law office

address by Mr. Breith on a corporate filing made months after Mr. Coyle's resignation as Corp's company secretary is evidence of continuing coordination between the two, relevant to both the active-concert finding under Fed. R. Civ. P. 65(d)(2) and the badges-of-fraud insider-transferee analysis.

The badges of fraudulent intent under Ohio's Uniform Voidable Transactions Act, Ohio Rev. Code §1336.04(B) (and Delaware's equivalent, Del. Code Ann. tit. 6, § 1304(b)), are uniformly present:

- **Transfer to insiders**. The allottees were former Corp shareholders. Rev. Code § 1336.04(B)(1).

- **Transfer made or concealed during pending litigation**. The motion to join Corp and appoint a Receiver was filed August 7, 2025 [Doc. 55]; the allotment occurred September 24, 2025 and was not filed publicly until December 30, 2025. Rev. Code §§ 1336.04(B)(3), (4).

- **Concealment**. The allotment was not disclosed to the Receiver.  Corp permitted the Receiver to learn of it through Companies House public filings. Rev. Code § 1336.04(B)(3). Breith also concealed the allotment by waiting more than 90 days, until after this Court's adverse ruling, to disclose the allotment via the Companies House filing.

- **Lack of reasonably equivalent value**. The minutes disclose no consideration. The SH01 lists a nominal per-share value with no documentary support. Rev. Code § 1336.04(B)(8).

- **Transferor was insolvent or rendered insolvent**. Corp is a default-judgment debtor for $4,135,042 with one disclosed asset, which the allotment dilutes to near zero. Rev. Code § 1336.04(B)(9).

- **Transfer was substantially all the debtor's assets**. FHL is Corp's only disclosed asset. Rev. Code § 1336.04(B)(5).

Based on the foregoing, this Court has three independent grounds to set aside the September 24, 2025 allotment:

1.	This Court's authority to set aside as the receivership court. The Sixth Circuit has held that "a district court has broad powers in fashioning relief in an equity receivership proceeding." *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). Those powers include recovering or restoring property transferred away from the estate, and this Court has applied them to authorize a receiver to pursue assets unlawfully diverted by insiders. *Liberte Capital Grp. V. Capwill*, 419 F. Supp. 2d 992, 1001–02 (N.D. Ohio 2006) (Katz, J.); *see also Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624–25 (6th Cir. 2003).

2.	Ohio's Uniform Voidable Transactions Act (UVTA) independently authorizes avoidance. The allotment transferred Corp's interest in an asset within the UVTA's broad statutory definition of "transfer": any "mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or

8

parting with an asset or an interest in an asset." Ohio Rev. Code § 1336.01(L). Pre-allotment, Corp held the single ordinary share that constituted 100% of FHL.  The September 24, 2025 issuance of 110,000,000 new shares diluted that interest to an inconsequential fraction. The share dilution is, itself, a transfer of Corp's interest in FHL.

Alternatively, FHL is Corp's alter ego. Corp was FHL's sole shareholder. Mr. Breith was simultaneously the Chief Executive Officer of Corp and a director of Corp [Doc. 68 at 1; Breith Decl. ¶1; Doc. 73 at 2 (this Court's finding: "David Breith, a director and chief executive of FGL and Corp")].  He was also a director of FGL through its November 7, 2024 voluntary liquidation (*id.*), and a director of FHL, *see* Companies House, Officers - Firexo Holdings Limited, https://find-and-update.company-information.service.gov.uk/company/13592954/officers (last visited May 11, 2026). The same controlling individual directed all three entities through a common corporate apparatus; FHL's act of allotting shares without consideration in favor of former Corp shareholders is, in substance, Corp's act. See *Belvedere Condominium Unit Owners' Association v. R.E. Roark Cos.*, 67 Ohio St. 3d 274, 287–89 (1993) (three-prong test: (1) control so complete that the corporation has no separate mind, will, or existence of its own; (2) control exercised to commit fraud or an illegal act; (3) injury or unjust loss resulted).

Where actual intent to hinder, delay, or defraud is established (and the six badges of fraud above suffice), the creditor is entitled to "[a]voidance of the transfer or obligation to the extent necessary to satisfy the claim," Ohio Rev. Code § 1336.07(A)(1); *see Aristocrat Lakewood Nursing Home v. Mayne*, 133 Ohio App. 3d 651, 661–65 (Ohio Ct. App. 1999), with injunctive relief, appointment of a receiver to take charge of the asset, and "any other relief that the circumstances may require," Ohio Rev. Code § 1336.07(A)(3)(a)–(c).

3.      The Court has contempt power when its Orders are ignored.  Paragraph 10(F) of the Order Appointing Receiver required Corp, within twenty (20) days of February 9, 2026, to produce documentation of "all transfers of assets made by any of them" covering the period January 1, 2025 to the present. The September 24, 2025 dilution was a transfer of Corp's interest in FHL within that period. Corp did not disclose it in spite of repeated requests for documents required by the Order. The non-disclosure is the post-Order

contempt and supports a contempt-based remedy that restores the Receiver to the position the Order entitled the Receiver to occupy. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991).

The Receiver requests that the Court declare the September 24, 2025 allotment void, that the Court Order Firexo Holdings Limited to restore Corp's pre-allotment ownership, and that the Cout direct a corrective SH02 filing with Companies House.

## VI.  LAW AND AUTHORITY

The relief requested by the Receiver is supported by three settled bodies of authority: (A) the federal contempt power; (B) the corporate-officer compulsion rule; and (C) the receivership court's broad equitable authority.

## A.      THE CONTEMPT POWER.

18 U.S.C. §401 vests federal courts with authority to punish disobedience of their orders by contempt. "All orders and judgments of courts must be complied with promptly." *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 590 (6th Cir. 1987). A finding of civil contempt is appropriate where a party disobeys a lawful order. *Glover v. Johnson*, 138 F.3d 229, 245 (6th Cir. 1998). The contempt power is "a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on [the courts] by law." *NLRB*, 829 F.2d at 590–91.

The Sixth Circuit standard requires the movant to show by clear and convincing evidence that the contemnor "violated a definite and specific order of the court requiring [it] to perform or refrain from performing a particular act or acts with knowledge of the court's order." *CFE Racing*, 793 F.3d at 598. The contemnor's subjective intent is not relevant. *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996). The chart contained in Section III herein supplies the requisite showing for each subparagraph of the Order Appointing Receiver and the lack of compliance with the terms of the Order.

Civil contempt sanctions may be coercive, compensatory, or both. *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 827–29 (1994). Coercive sanctions, most commonly per-diem fines, are designed to compel compliance and are purgeable upon compliance. *Id.* at 829. Compensatory sanctions include the

moving party's reasonable attorneys' fees and costs. *Elec. Workers Pension Tr. Fund of Local Union No. 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 385 (6th Cir. 2003).

**B.      THE CONTROLLING INDIVIDUALS VIOLATED THEIR DUTIES.**

A corporate officer may be held personally in contempt for the corporation's failure to produce corporate records. *Wilson v. United States*, 221 U.S. 361, 384–86 (1911). The rule applies regardless of whether the officer was separately served, because the duty to produce runs from the entity's knowledge of the order through the officers who control it. *Id.*; *Elec. Workers*, 340 F.3d at 382 (officer who controls the corporation may be held personally liable for the corporation's contempt).

Mr. Breith is reached on two independent grounds. First, he is Corp's Chief Executive Officer and a director of Corp; under *Wilson*, the duty to produce Corp's records runs through him personally, regardless of separate service. [Doc. 68 at 1; Breith Decl. ¶ 1; Doc. 73 at 2]. Second, Fed. R. Civ. P. 65(d)(2) reaches him independently as one of "the parties' officers, agents, servants, employees, and attorneys."

Mr. Coyle is reached under Fed. R. Civ. P. 65(d)(2) as a person "in active concert or participation" with Corp. Mr. Coyle resigned as Corp's company secretary in July 2024 and is no longer an officer; he is not within *Wilson*. He is, however, in active concert with Corp as evidenced by the following: (i) on October 22, 2025 he appeared and testified for Corp at a hearing before this Court (Doc. 82 at 17); (ii) on March 13, 2026 he submitted a sworn witness statement to the Receiver purporting to bind Corp; and (iii) Mr. Breith used Mr. Coyle's law office address on the December 30, 2025 SH01 filing with Companies House, a corporate filing made months after Mr. Coyle's resignation as company secretary. The pattern establishes active concert plainly illustrating that he is within Rule 65(d)(2).

A contemnor cannot escape civil contempt by invoking an impossibility of his own making. *Elec. Workers*, 340 F.3d at 382–83 (the "present inability to comply" defense "requires that the contemnor show that he is not responsible for the present inability"); *United States v. Lay*, 779 F.2d 319, 320 (6th Cir. 1985) ("self-induced inability to comply with a court order is not a defense in a contempt proceeding," where the contemnor "consciously and willfully placed himself in a financial status in order to avoid responsibility"

11

through "property and monetary conveyances to other family members"); *cf. FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999).

Any defense that FGL's UK liquidation renders Corp's compliance with Paragraphs 9 and 10 impossible fails on its own terms. The records the Order requires are Corp's own records: Corp's bank accounts (or a sworn certification that none exist), Corp's employees and officers, Corp's intercompany loan documentation (which Coyle's October 22, 2025 testimony confirmed exists), Corp's U.S.-registered intellectual property, and Corp's accounting. None of that is in the UK liquidators' custody, and none of it is made inaccessible by FGL's separate liquidation. To the extent FGL's liquidation creates any obstacle at all, it is an obstacle Mr. Breith created in his capacity as a director of FGL.  In fact, he initiated the November 15, 2024 voluntary winding-up. The impossibility is self-induced as to him.

The Court has personal jurisdiction over Corp and Mr. Breith. It can order them to produce Corp's records, wherever those records are held. *United States v. First National City Bank*, 379 U.S. 378, 384 (1965).

## C.      EQUITABLE AUTHORITY OF THE RECEIVERSHIP COURT.

A district court that has appointed an equitable receiver enjoys "broad powers and wide discretion" to fashion remedies necessary to administer the receivership estate. *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986); *SEC v. Wencke*, 622 F.2d 1363, 1369–71 (9th Cir. 1980). That authority includes the power to bind third parties with notice of the Order, Fed. R. Civ. P. 65(d)(2); to direct the receiver to pursue clawback and to void fraudulent transfers of receivership property once the wrongdoer has been removed from the receivership entity, *Scholes v. Lehmann*, 56 F.3d 750, 754–55 (7th Cir. 1995); and to issue ancillary orders compelling individuals subject to the court's in personam jurisdiction to take affirmative action with respect to property under their control, including property held abroad, *First National City Bank*, 379 U.S. at 384.

Independent of the receivership theory, Federal Rule of Civil Procedure 69(a)(2) provides that, in aid of execution of a judgment, the judgment creditor "may obtain discovery from any person - including the judgment debtor - as provided in these rules or by the procedure of the state where the court is located."

Plaintiff holds a $4,135,042.00 judgment [Doc. 84]. In coordination with Plaintiff as the judgment creditor, the Receiver may invoke Rule 69(a)(2) as an alternative procedural footing for the discovery Corp has refused.

## VII. RELIEF REQUESTED

For the reasons stated above, the Receiver respectfully requests that the Court:

1. Find Firexo Corporation, Mr. David Breith (Corp's Chief Executive Officer and director), and Mr. Peter Coyle (a former corporate secretary in active concert with Corp under Fed. R. Civ. P. 65(d)(2)) in civil contempt for failure to comply with Paragraphs 9 and 10 of the February 9, 2026 Order Appointing Receiver.

2. Order Firexo Corporation and Mr. Breith, within ten (10) days, to file and serve a verified statement personally signed under oath, addressing each subparagraph of Paragraphs 9 and 10 of the Order individually, with documentary support, and stating under penalty of perjury for any subparagraph for which no responsive documents exist.

3. Impose coercive per-diem fines, joint and several against Firexo Corporation and Mr. Breith, accruing daily until full compliance, in an amount the Court finds sufficient and appropriate to compel compliance.

4. Declare the September 24, 2025 allotment of 110,000,000 shares in Firexo Holdings Limited void as a fraudulent transfer, and Order Firexo Holdings Limited to restore Corp's pre-allotment ownership on its share register.

5. Order Firexo Corporation and Mr. Breith to execute, in form satisfactory to the Receiver, all consents, waivers, and authorizations within their authority, including consent to disclosure of records they hold, control, or have an interest in, and to refrain from opposing, directly or indirectly, any disclosure of records by the UK liquidators of Firexo Group Limited to the Receiver.

6. Authorize the Receiver, in his own name and as Receiver, to seek international judicial assistance in obtaining records held by the UK liquidators and other UK custodians by means of letters

rogatory transmitted under 28 U.S.C. §1781 and the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, without further leave of this Court.

7. Order Harvard Business Services, Inc. to comply with Paragraph 11 of the Order Appointing Receiver by producing to the Receiver, within ten (10) days of written demand, all records concerning Firexo Corporation, without need for further subpoena.

8. Establish that Corp's continued failure to produce documents, records and/or responses supports an adverse inference (a) that the share exchange transferred assets and not merely shareholders, (b) that intercompany loan balances exist, and (c) that the November 15, 2024 voluntary liquidation of FGL was undertaken in anticipation of these proceedings.

9. Award the Receiver his reasonable attorneys' fees and costs incurred in bringing this motion and assess same against Defendants.

10. Set a status conference within twenty-one (21) days of entry of an order on this motion to determine the state of compliance and the imposition of further sanctions, including body attachment, if necessary.

Respectfully submitted,

/s/ Christopher F. Parker
Christopher F. Parker
Counsel for Court Appointed Receiver

CERTIFICATION

This is to certify that a copy of the foregoing was sent by e-mail ONLY this 22nd day of May, 2026 to:

Paul Belazis, Esq. (belazis@maf-law.com);

Adam S. Nightingale, Esq (asnightingale@eastmansmith.com);

James P. Silk, Jr., Esq. (jsilk@snlaw.com); and

Teresa L. Grigsby, Esq. (tgrigsby@snlaw.com).

/s/ Christopher F Parker
Christopher F. Parker

14