**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| FIREXO INC., | Case No. 3:21-cv-02336 |
| Plaintiff, | Hon. Jack Zouhary |
| v. | |
| FIREXO GROUP LIMITED, *et al.*, | |
| Defendants. | |

**MEMORANDUM IN OPPOSITION TO RECEIVER'S
MOTION TO COMPEL AND TO SHOW CAUSE WHY FIREXO
CORPORATION, DAVID BREITH, AND PETER COYLE SHOULD NOT
BE HELD IN CONTEMPT, AND FOR FURTHER EQUITABLE RELIEF**

## I.   INTRODUCTION

On May 22, 2026, the Receiver, the Skutch Arlow Group (the "Receiver") filed a motion to compel, a request for a contempt finding against Firexo Corporation ("Corp"), David Breith and Peter Coyle, and further equitable relief. The Receiver claims that Corp failed to comply with Paragraphs 9 and 10 of the February 9, 2026 Order Appointing Receiver ("Order"). The Receiver also requests the Court void a September 24, 2025 allotment (the "Allotment") of 110,000,000 shares in Firexo Holdings Limited ("Limited") as a fraudulent transfer.

As discussed below, Corp has complied with the Order in good faith. Corp has produced a responsive and accurate sworn statement and responded to the Receiver's inquiries. The issue is that the Receiver and Plaintiff are unhappy with the consequences of the responses. Corp has offered, from the beginning, to have a meeting with the

Receiver and the Receiver's counsel to address any questions and concerns regarding the responses. This offer was renewed several times.

In addition to actual compliance with the Order, the Receiver's requested relief is overbroad and beyond the jurisdiction of this Court. The primary complaint of the Receiver was the Allotment.  This transaction was implemented by Limited, which is a UK entity, and not a party to this case. The Allotment occurred in September 2025, well before this Court's determination that Corp was liable as a successor corporation. It was also well before the Order was signed.

Further complicating compliance with the Order is that Corp is a void company under Delaware law. As such, pursuant to Delaware law, it has no powers and has effectively ceased to exist. Both parties had raised this issue with this Court through motions to strike which were denied by the Court without discussion.

## II.    FACTUAL BACKGROUND

This Court issued the Order on February 9, 2026. There were immediate discussions between the undersigned and the Receiver's counsel. At the time, it was contemplated that Corp would file a motion to stay enforcement of the Order in the Sixth Circuit. During this minimal period, the Receiver was patient. When it was determined that Corp would not be filing the motion, discussions were had regarding Corp providing information. On March 13, 2026, the Receiver was provided with the witness statement of Peter Coyle.  In that statement, the items referenced in Paragraphs 9 and 10 of the Order were fully and truthfully addressed. As the witness statement notes, there are no responsive documents to either paragraph. There were no receivership property, bank accounts, credit cards, received assets, expenditures, transfer of assets, or accounting software.

When Corp was determined to be a void corporation by the state of Delaware in March of 2025, its asset was one share of Limited. Following the Allotment in September 2025, Corp's asset remained one share of Limited. That share was significantly diluted by the Allotment, but as discussed below, Limited relied upon professional advice to take the action. When the Order went into effect in February 2026, Corp's asset remained one share of Limited. Limited is a UK company with no contacts with the United States other than a small percentage of shareholders.

Exhibit 1 to this Memorandum is a Declaration of David Breith. He was the CEO of Corp. (Breith Declaration, ¶ 1). Breith, given his extensive travelling on behalf of Firexo, requested Coyle respond to the Order. Breith reviewed the Coyle witness statement prior to it being provided to the Receiver and deemed it accurate. *Id.* at ¶ 2-3 (Coyle Witness Statement, attached to Breith Declaration as Exhibit A). Breith confirmed that Corp had no assets other than an interest in Limited, and that there were no responsive documents to Paragraph 10. *Id.* Corp was a void company that was conducting no business nor had any subsidiaries. Again, the Receiver was invited to discuss these responses with Corp.

On March 25, 2026, the Receiver emailed a spreadsheet to the undersigned that requested further information pursuant to the Order and other questions. *Id.* at ¶ 4 (Spreadsheet attached to Breith Declaration as Exhibit B). Corp responded to each of the questions in a responsive spreadsheet on April 16, 2026. *Id.* at ¶¶ 5-6 (Responsive Spreadsheet attached to Breith Declaration as Exhibit C). In his Declaration, Breith confirms the accuracy of the responses set forth in the spreadsheet. *Id.* Following the production of the responses, Corp again offered to discuss the spreadsheet or any other questions of the Receiver. The next written communication from the Receiver was an

email dated May 22, 2026 with a courtesy copy of the motion to compel. In response, the undersigned reiterated that Corp was willing to schedule a meeting to discuss any issues.

In his motion to compel, the Receiver alleges that one of Mr. Coyle's statements had to be false. (Doc. 100, PageID ## 2299, 2303). The Receiver is mistaken. The Receiver misunderstood the loan transaction between Corp and FGL. FGL borrowed significant amounts of money from Corp to fund the litigation with Plaintiff. The funds provided to FGL were wired from a shareholder/investor to an account at Mr. Coyle's law firm. The funds were then wired directly to FGL, a UK company. Corp did not have any bank accounts in which funds could be deposited. *Id.* at ¶ 8. Further, these loans occurred when FGL was still represented by counsel in this case.

The Receiver appears most concerned about the Allotment transaction. (Doc. 100, PageID ##2304-2307). This transaction occurred prior to the Order and prior to any judgment being entered against Corp. It could not have violated any Order from this Court. Further, the Allotment was not because of any action taken by Corp. In fact, as a void company, Corp could not take any corporate action nor could it own shares in a UK company. The action to allot additional shares was made by Limited.

Additionally, as the Court has noted, if the IPO was not successful, the top company would return to the UK. *Id.* at ¶ 9. The Allotment was planned before the default judgment against FGL. Prior to the Allotment, there were discussions with international tax attorneys and advisory services on how to accomplish returning the top company to the UK. *Id.* at ¶ 10. The Allotment by Limited was based on professional advice and correctly implemented pursuant to UK law. *Id.* at ¶ 10. It was not consummated to avoid obligations to creditors as the decision was made well before Corp was determined to be void, before Plaintiff moved to join Corp, and before any judgment against Corp. *Id.* at ¶ 13. Also, at

4

the time of the Allotment, it was not believed that Corp would be found to have successor liability given that it was a void company and the fact that no assets were transferred from FGL to Corp. As the Court is aware, these issues are on appeal. *Id.* at ¶ 14.

Limited received significant professional guidance prior to consummating the Allotment transaction. *Id.* at ¶¶ 14-16 (RSM UK Tax and Advisory Services engagement letter and report, attached as Exhibits E and F to Breith Declaration). Limited was further advised that Corp's status as a void company prevented it from owning shares in limited. *Id.* at ¶ 17. Corp is a void company which currently owns one share of Limited. Limited is a separate entity that Corp does not control because of its void status and minimal interest in Limited. Further, Corp has no control over the liquidation process of the FGL. *Id.* at ¶ 18.

## III.    LAW AND ARGUMENT

Federal Rule of Civil Procedure 66 provides that "the practice in administering an estate by a receiver or similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." "A litigant may be held in contempt if his adversary shows by clear and convincing evidence that "he violate[d] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order."" *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987). "The definite and specific requirement guards against arbitrary exercises of the contempt power." *Gascho v. Global Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017). "Contempt cannot be based on a decree too vague to be understood but is instead reserved for those who fully understand the meaning of a court order and yet choose to ignore its mandate." *Id.*

To justify a finding of civil contempt, the movant must show: (1) that a prior order "clearly and unambiguously imposed an obligation on the opposing party;" (2) clear and convincing evidence of the opposing party's noncompliance; and (3) the opposing party did not diligently attempt to comply with the order." *Int'l Union Sec., Police & Fire Pros. Of Am. (SPFPA) v. Maritas*, No. 13-CV-11734, 2014 U.S. Dist. LEXIS 207337, 2014 WL 12660123, at *5 (E.D. Mich. Jan. 16, 2014). It is well established that this "clear and convincing" civil contempt standard is "not a light burden" and requires something more than the preponderance of the evidence." *Elec. Workers Pension Tr. Fund of Loc. Union 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003). In evaluating appropriate sanctions, a court should consider four factors: (1) whether the failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced; (3) whether the party was warned; and (4) whether less drastic sanctions were imposed or considered. *Harmon v. CSX Transp.*, 110 F.3d 364, 366-67 (6th Cir. 1997).

The Receiver has set forth areas in which he believes the Order was violated.

## A.      Corp Complied with the Order.

The Receiver claims that Corp failed to produce information and/or documents responsive to Paragraphs 9 and 10 of the Order and the Receiver specific inquiries. (Doc. 100, PageID ## 2301-2303). As discussed above and set forth in the Declaration of David Breith, Corp has responded fully to the paragraphs and the inquiries from the Receiver. Again, the Peter Coyle witness statement and the spreadsheet Corp produced to the Receiver addressed all the items in the Paragraph as well as the Receiver's inquiries. Corp has no assets other than one share in Limited. The same has been true since Plaintiff first filed it Motion to Join Corp as a defendant. The Receiver is not claiming that Corp has not responded. Instead, the Receiver is skeptical of the responses. As noted above, Corp has

6

repeatedly offered to discuss any concerns that the Receiver had regarding the responses and the Receiver has failed to accept the offer.

**B.     The Receiver Claims That the Coyle Statements are False and/or Inconsistent.**

The Receiver believes that the Coyle statements that Corp loaned money to FGL and has no bank accounts are inconsistent. As discussed above and set forth in the Breith Declaration, the Receiver is incorrect. (Breith Declaration, ¶ 8). FGL did borrow significant amounts of money from Corp to defend this litigation. However, the loan did not require Corp to have bank accounts or assets in the United States. Instead, the funds for the loan were secured from a shareholder/investor and wired to FGL, a UK company. In any event, this loan occurred when FGL was still represented by counsel and well before Plaintiff filed its motion to join Corp.  Again, Corp would have been able to describe the timing of the loan and the logistics of the loan had the Receiver agreed to meet.

**C.     The Receiver Seeks to Void the Allotment.**

The Receiver claims that the September 24, 2025 share Allotment was a fraudulent transfer. (Doc. 100, PageID, ## 2304-2307). This argument fails in several respects. First, there was no transfer. The action was taken by Limited, not Corp. Corp was not involved in the transaction and its consent was not required. If the Receiver believes that Corp has a claim against Limited for the Allotment, the Receiver can bring the claim on behalf of Corp in the UK.

Second, the Allotment occurred prior to the judgment against Corp and before the Order Appointing Receiver was Ordered. As such, the Allotment could not have violated the Order.

Third, as discussed in the Breith Declaration, the decision to bring the top company back to the UK was conveyed to shareholders even before the share exchange between

7

FGL and Corp. Further, Limited sought professional advice as to the appropriate method to return the top company to the UK prior to the default judgment against FGL and the Motion to Join Corp as a defendant. Limited was also advised that because Corp was a void company under Delaware law, it could not hold an interest in Limited.

Fourth, this Court does not have jurisdiction over the actions of Limited. Limited is a UK company that has no contacts with the United States other than a minimal shareholder interest. The Receiver cites Ohio law in support of its claim that this Court should void the Allotment. The Receiver is requesting that the Court order Limited to void the transaction and file notice with the Companies House. This transaction occurred in the UK. Corp, the void company affected by the Allotment, is a Delaware corporation. The Receiver does not cite any law that shows that this Court has jurisdiction over a UK company regarding a transaction that occurred in the UK.

Fifth, the Receiver's claims that he was somehow misled by Corp are disingenuous. The Allotment was not a result of Corp transferring any interest. Even so, the Receiver was provided with the Limited board minutes discussing the Allotment.

Not only does the Receiver demand the Court void action taken by a UK company in the UK, but it also seeks to do so without presenting any evidence. Limited is not a party to this litigation and is not subject to jurisdiction in this Court. If the Receiver believes that Corp was wrongfully deprived of an interest, it can initiate proceedings in the UK.

**D.     The Receiver Has Failed to Establish Any Contempt.**

For the reasons stated above, there should be no finding of contempt. The last written communication between Corp and the Receiver was the spreadsheet produced on April 16, 2026. This spreadsheet responded to Paragraphs 9 and 10 of the Order and

responded to the Receiver's specific requests. Instead of continuing any further communications, the Receiver chose, over a month later, to file a motion to compel. This is despite the fact that Corp continued to offer to discuss any issues. Additionally, the Receiver has not been prejudiced. The status of Corp remains precisely the same as the day the Order was issued. It remains a void corporation under Delaware law and still has one share of Limited.

A Delaware court engaged in a lengthy discussion as to the effects of a determination that a corporation is void. Ultimately, the court found that plaintiff corporation was void under 8 Del. C. § 510 and that "[a]ll powers granted to it under the Delaware General Corporation Law (the "DGCL") are inoperative. These include the powers to sue, be sued, to dissolve, and to wind up." *Paul Rivera and Kalibrr, Inc. v. Angkor Capital Ltd.*, 2024 WL 3873050; See also *Colston v. The Greens at Wyo. Homeowners Ass'n*, 2026 Del. Ch. LEXIS 225 *12-13, 2026 WL 1407600 (Court of Chancery); *Neem Int'l CV v. Shulman*, 2025 Del.Ch. LEXIS 2076 * 27. As such, Corp has ceased to exist as a corporate entity and, as such, cannot be held in contempt.

Both Mr. Breith and Mr. Coyle are non-parties. Despite having no obligation to comply with the Order directed to a void company, both have made good faith efforts to be responsive to the Order. As noted above, the Order has not been ignored. Given the status of Corp, there are simply no responsive documents. Simply because a party is unhappy with the facts does not lead to a finding of contempt. Corp has been willing to engage in dialogue with the Receiver in the hope that it can alleviate any concerns the Receiver may have.

It is particularly galling that the Receiver seeks for the Court to hold Mr. Coyle in contempt of court. Mr. Coyle was not an officer of Corp and had no obligations to respond

to the Order. Mr. Coyle is a solicitor in the UK with an unblemished record. Instead of reaching out prior to filing the Motion to Compel to discuss a resolution, the Receiver chose to take this unsupported and extreme action. Mr. Coyle attempted to provide information despite having no obligation to do so. Further, Mr. Coyle and Mr. Breith live in the UK and are not subject to jurisdiction in the United States.

For the foregoing reasons, Corp, Mr. Peter Coyle, and Mr. David Breith respectfully request that this Court dismiss the Receiver's Motion to Compel.

Respectfully submitted,

/s/ James P. Silk, Jr.
James P. Silk, Jr. (0062463)
Sarah K. Skow (0081468)
Teresa L. Grigsby (0030401)
SPENGLER NATHANSON P.L.L.
900 Adams Street
Toledo, OH 43604
Telephone: (419) 241-2201
Facsimile: (419) 241-8599
jsilk@snlaw.com
sskow@snlaw.com
tgrigsby@snlaw.com
*Counsel for Defendant Firexo Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically filed this 12th day of June, 2026. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ James P. Silk, Jr.
James P. Silk, Jr.
*Counsel for Defendant Firexo Corporation*

803504

10