IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Firexo, Inc.,                                      Case No. 3:21 CV 2336

                Plaintiff,                ORDER RE: MOTION TO COMPEL

      -vs-                                   JUDGE JACK ZOUHARY

Firexo Group Limited,

                Defendant.

## INTRODUCTION

The Receiver moves to compel compliance with this Court's Receivership Order (Doc. 94) and to hold Defendant Firexo Corporation ("Corp"), David Breith, and Peter Coyle in contempt (Doc. 100).  Corp opposes (Doc. 104) and this Court heard argument.[1]

## BACKGROUND

This Court joined Corp as a successor Defendant in December 2025 (Doc. 73).  Corp sought a stay, which this Court denied (Doc. 85).  This Court later entered the Order Appointing a Receiver (Doc. 94).

The Receivership Order aims to preserve assets for collection of Firexo's judgment. Paragraph 9 required Corp, within 10 days, to file and serve a sworn statement listing: the identity, location, and estimated value of all Receivership Property; Corp's employees, personnel, attorneys, accountants, agents, or contractors; and Corp's known creditors (*id.* at 5).

---

[1] The citation "Tr." refers to the draft Transcript of the Hearing held June 17, 2026.

Paragraph 10 required Corp, within 20 days, to file and serve a sworn statement and accounting, with complete documentation, covering January 1, 2025 to the present (*id.* at 5–6).  That accounting includes assets, accounts, cards, assets received, expenditures over $1,000, transfers of assets, and accounting software access (*id.* at 6).

The Receiver asserts Corp produced virtually no documents.  Instead, Corp produced a witness statement from Peter Coyle, former company secretary, and a spreadsheet (Doc. 100 at 2–6).  The Receiver says those materials do not satisfy Paragraphs 9 and 10 and do not explain, with documents, Corp's single disclosed asset -- one share in Firexo Holdings Limited ("FHL"), an interest later diluted by a September 24, 2025 allotment of 110,000,000 FHL shares (*id.* at 7– 10).

Corp responds that there is little to produce, as it is void under Delaware law, has no business, no employees, no bank accounts, no U.S. assets, and no assets other than the single FHL share (Doc. 104 at 2–5).  Corp relies on Breith's declaration, saying Coyle responded at Breith's direction, the Coyle statement and spreadsheet responses are accurate, and Corp has no documents responsive to Paragraph 10 (Doc. 104-1 at 1–3).  At argument, Corp emphasized it had provided a spreadsheet, counsel had offered to discuss questions, and Corp's position remained that it had no assets other than the FHL share (Tr. at 17–19).  The Receiver maintained that the spreadsheet did not comply with the document-production requirements of this Court's Order (*id.* at 16–17).

## LAW

"[A] district court has broad powers and wide discretion to determine relief in an equity receivership." *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006) (citation omitted). A receiver is an officer of the court, appointed "to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Id.* And this Court's equitable authority allows it to require meaningful disclosure, direct cooperation with the Receiver, and authorize discovery necessary to identify and preserve assets.

A court may enforce its orders through civil contempt. A party seeking civil contempt must show "by clear and convincing evidence" an alleged violation of "a definite and specific order" that required a particular act, with knowledge of the order. *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 598 (6th Cir. 2015) (citation omitted). *See also N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 590–91 (6th Cir. 1987) ("In contempt proceedings, the basic proposition is that all orders and judgments of courts must be complied with promptly.") (citation modified). As civil contempt is a serious remedy, an order must be clear, and the proof of noncompliance must be clear and convincing. *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017); *Elec. Workers Pension Tr. Fund of Loc. Union 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003). Any civil contempt sanctions may be coercive or compensatory. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827–29 (1994) ("[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard.").

3

### DISCUSSION

**Corp's responses are incomplete.**

Corp's central answer is that there is nothing to produce.  That may prove true as to some categories, but it is not a substitute for compliance with the Receivership Order.  Paragraph 9 required a sworn statement from Corp listing assets, personnel, agents, and creditors.  Paragraph 10 required a sworn accounting with complete documentation.  Those requirements fall within this Court's broad "equitable powers" to protect and marshal receivership property.  *Liberte Cap. Grp*, 462 F.3d at 551.  Corp produced a statement from Coyle, later confirmed by Breith, and spreadsheet responses, which do not answer each category in the form required by this Court's Order.

The primary problem is Corp's answers are incomplete.  If Corp has no documents, Corp must say so under oath, category by category.  If documents exist but are held by Breith, Coyle, counsel, agents, FHL, FGL liquidators, or other custodians, Corp must identify the custodian and explain what Corp has done to obtain them.  At the Hearing, Corp argued that it had no property, no employees, no bank accounts, and only one FHL share (Tr. at 18–20). But those assertions do not identify custodians, explain what records were searched, or supply the documents supporting the assertion that nothing exists.  A party resisting contempt must show it took "all reasonable steps within [its] power to comply."  *Elec. Workers Pension Tr. Fund*, 340 F.3d at 379 (citation omitted).  A bare assertion that documents do not exist, or are held elsewhere, is not enough where this Court ordered a sworn accounting and the responding party has not identified custodians or explained its efforts to obtain the records.

4

Corp's Delaware status may affect what records exist and who has them.  But a void corporation is not free to ignore a receivership order.  Corp relies on *Paul Rivera & Kalibrr, Inc. v. Angkor Capital Ltd.*, where the Delaware Court of Chancery explained that a corporation void under 8 Del. C. § 510 has inoperative powers, including the powers to sue, be sued, dissolve, and wind up.  2024 WL 3873050, at *1 (Del. Ch. 2024).  That authority examined a void corporation that *initiated* litigation.  However, it neither erases this Court's Order, nor excuses Breith from providing complete and accurate responses.

**The Coyle loan testimony requires explanation and documents.**

The Receiver also points to an apparent inconsistency.  Coyle testified in October 2025 that FGL "borrowed quite significant amounts from Firexo Corporation" (Doc. 100 at 4).  Later, Corp stated it had no bank accounts and essentially no assets.  Corp responds that there is no inconsistency because shareholder or investor funds were wired through Coyle's law firm account to FGL, without Corp maintaining a bank account (Doc. 104 at 7).  At argument, Corp asserted the loans occurred in 2023 or 2024, before the Motion to join Corp (Tr. at 29).  The Receiver responded that, timing aside, questions remain: what happened to the funds and were they treated as a loan, investment, asset, or receivable (*id.* at 30).

Corp has dodged the Order. Where are the records -- loan documents, wire records, board minutes, emails, investor communications, accounting entries, or correspondence reflecting authority for each transaction?  If those records do not exist, Corp must explain under oath why not.  If they exist but are held by others, Corp must identify the custodians.  The issue is control and reasonable effort, not simply the location of the documents.  *See United States v. First Nat'l City Bank*, 379 U.S. 378, 384 (1965) (explaining that once personal jurisdiction exists, a court may direct a party concerning property under its control, even if located abroad).

5

This Court makes no finding, on the current record, that Coyle testified falsely -- but there is certainly some concern given his two sworn statements.  Either way, the Receiver is entitled to a complete explanation and supporting documents.

**The FHL allotment may be investigated.**

The Receiver asks this Court to declare void the September 24, 2025 allotment of 110,000,000 FHL shares and to order FHL to restore Corp's pre-allotment ownership (Doc. 100 at 13).  The allotment is plainly relevant.  Corp concedes its only asset is one FHL share and the allotment apparently diluted that asset.  The timing also warrants scrutiny, as it occurred after Firexo moved to join Corp and to appoint a receiver, and before the Receivership Order.

The Hearing further demonstrated why discovery is appropriate.  Firexo notes the allotment may not have resulted in completed downstream share distributions and Corp may remain the only actual shareholder of FHL (Tr. at 44).  And Corp acknowledged that additional documents from FHL could provide a clearer picture of Corp's ownership interest because, on the current record, "nobody knows" (*id.* at 45).

But FHL is a UK entity and is not currently a party before this Court.  Corp argues the allotment was taken by FHL, not Corp, and before the Receivership Order (Doc. 104 at 7–8). This Court will not unwind a foreign company's share allotment or determine the transfers to be fraudulent on the current record.  Equity receivership authority is broad, not limitless.  The present record supports discovery into the FHL allotment, but does not yet support final relief against FHL.  That request is therefore denied without prejudice.  The Receiver may pursue discovery and, if warranted, later seek appropriate relief.

The Receiver may need records from UK custodians, FGL liquidators, FHL, Companies House, or other third parties.  The Receiver is authorized to pursue those records through lawful process, including subpoenas, letters rogatory, requests under 28 U.S.C. § 1781, and the Hague Evidence Convention.  The Receiver may also serve subpoenas or written demands on Harvard Business Services, Inc. as authorized by the Receivership Order and the Federal Civil Rules. Corp and Breith, or another authorized representative with knowledge, must sign reasonable authorizations, consents, or waivers necessary to permit release of Corp records.

**Contempt is premature.**

The Receiver has shown Corp failed to comply with this Court's production and accounting requirements.  *Some* responses does not mean complete responses, nor does it excuse noncompliance.   Corp, Breith, and any person acting for Corp, must comply with this Order. Failure to do so may result in contempt sanctions or other appropriate relief without further warning.  *See Bagwell*, 512 U.S. at 827–29 (noting that civil contempt sanctions may be coercive or compensatory, so long as they are tied to an adequate record and tailored to the violation).

## CONCLUSION

The Receiver's Motion (Doc. 100) is granted in part and denied in part.  Corp shall file and serve a verified statement, signed under oath by Breith, addressing each requirement of Paragraphs 9 and 10 separately by **Thursday, July 30, 2026**.  For each category, the statement shall identify all responsive documents produced, state whether additional responsive documents exist, identify all known custodians, and explain whether Corp, Breith, Coyle, counsel, agents, FHL, FGL liquidators, or any other person or entity has possession, custody, or control of those documents.  If no responsive documents exist for a category, the statement shall say so plainly and under penalty of perjury.

Corp shall also produce all responsive documents in its possession, custody, or control concerning Corp's one FHL share, the September 24, 2025 FHL allotment, any dilution of Corp's interest in FHL, any loan or advance from Corp or on Corp's behalf to FGL, any funds routed through Coyle's law firm, investors, shareholders, or other intermediaries for FGL's litigation expenses, and any legal, tax, accounting, or corporate advice concerning the aborted IPO, the return of TopCo to the UK, the FHL restructuring, or the FHL allotment.  This production shall include communications with FHL, FGL liquidators, Companies House, Harvard Business Services, Delaware authorities, accountants, lawyers, or advisors concerning Corp's assets, liabilities, ownership interests, or records.

Corp and Breith shall execute reasonable authorizations, consents, and waivers within their authority that are necessary for the Receiver to obtain Corp records from third parties.  Corp, Breith, Coyle, and anyone acting in concert with them shall not obstruct or discourage production of Corp records to the Receiver.  Additionally, the Receiver is authorized to pursue third-party and international discovery, including subpoenas, letters rogatory, requests under 28 U.S.C. § 1781, and requests under the Hague Convention, without further leave of this Court.

Finally, the request to declare the FHL allotment void is denied without prejudice.  The requests for contempt findings, per-diem fines, and immediate fee-shifting are also denied without prejudice, for now.

IT IS SO ORDERED.

s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

July 8, 2026

8