IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

FIREXO INC.,

Plaintiff,

v.

FIREXO GROUP LIMITED,

Defendant.

Case No. 3:21-cv-02336

Hon. Jack Zouhary

---

**AFFIDAVIT OF DAVID BREITH**

---

I, David Breith, swear and attest that I have personal knowledge of the matters contained in this Affidavit and am competent to testify to the matters stated herein.

1.      I was the CEO of Firexo Corp. ("Corp.").

2.      In response to paragraph 9(a) of the Order Appointing Receiver, the only Receivership Property is Corp.'s ownership of one share of Firexo Holding Limited ("Limited"). Corp. is also a creditor of Firexo Group Limited ("FGL"), which is currently in liquidation. These documents showing the share allotment and information regarding the FGL liquidation have been produced.

3.      In response to paragraph 9(b), Corp. has no employees, personnel, accountants or other agents. Corp. is a void corporation under Delaware law. Corp. has retained an attorney solely for this litigation.

4.      In response to paragraph 9(c), the creditors of Corp. may include the State of Delaware, United States of America, and Firexo Inc. ("Plaintiff"). It is unknown what

amount may be owed the State of Delaware or the United States.  The judgment in favor of Plaintiff was $3,998,802 plus attorney fees.

5. In response to paragraph 10(A), as set forth in paragraph 3, Corp. has no Receivership Property.  Attached as Exhibit A is the financial balance sheet for Corp. Documents regarding the share allotment in September 2025 have been produced. There are no other responsive documents.

6. In response to paragraph 10(B), Corp. has never had any banking facilities. Because there have never been any banking facilities, there are no responsive documents. As noted above, Corp. is a creditor of FGL.  It is a creditor of FGL because it loaned money to FGL to fund the litigation involving Plaintiff. Because Corp. had no banking facilities, the funds from shareholder loans were wired to Peter Coyle's law firm escrow account. The funds were then disbursed directly to FGL and other subsidiaries.  The loans from Corp to FGL were in 2023 and 2024.  I am not aware of any written loan agreements that are in place for intercompany loans. The loans were prior to January 2025 and before the default judgment taken against FGL.  Attached as Exhibit B to this affidavit is an email showing the method of how funds were transferred to group entities. The funds transferred from shareholder to FGL were treated as a loan from Corp. to FGL and a loan from Sir Clive Cowdery to Corp.  The loan was primarily used by FGL to pay attorney fees.

7. In response to paragraph 10(C), Corp. does not have any banking relationships.  Further, Corp. does not have any subsidiaries since the share allotment. Prior to the share allotment, Firexo Holdings was a subsidiary. There are no responsive documents as Corp. did not have any banking activities.



2

ⒹⒷ

8. In response to paragraph 10(D), Corp. has not had received any assets since January 1, 2025. There are no responsive documents. Corp. was a holding company that did not possess assets.

9. In response to paragraph 10(E), Corp. has not expended more than $1,000 since January 1, 2025. There are no responsive documents showing the lack of expenditures. Any legal and accounting fees related to Corp. have been paid by other group entities as Corp. has no cash or bank accounts. These costs would have been recharged via intercompany transactions. As shown on Exhibit A, other than the intercompany positions and shareholder loans, the other items are provisions for Legal Fees and Franchise Taxes. The franchise tax position is based on the best estimate of what the outstanding amount owed was at that time. Both items are provisions, not cash movements.

10. In response to paragraph 10(F), Corp. has not transferred any assets since January 1, 2025. There are no responsive documents that would show that no assets have been transferred.

11. In response to paragraph 10(G), Corp. has not used any accounting software as it is a nontrading entity. There are no documents that would show that Corp. had never owned or used accounting software. The files that have been produced are manual accounts that were produced in excel.

12. Based on advice from professionals, I understand that Corp. became a void corporation under Delaware law due to its failure to pay Delaware taxes.

13. The effect of the share agreements made between Corp., FGL, and FGL shareholders did not transfer assets from FGL to Corp. The effect of the transaction was to transfer shareholders from one entity to the other, but not any assets. Attached as

3



Exhibit C are the FGL financials that show that the FGL assets before and after the share agreement were of the same nature. The only material change in the net asset position of FGL post transaction was the increase in the intercompany liability as a result of the money loaned to it from Corp.

14. In September 2025, Limited issued a share allotment of 110,000,000 shares. It was always understood that if the IPO did not occur, the top company would return to the UK. The planning of the share allotment transaction was prior to the default judgment being entered against FGL. The first engagement with professionals regarding the return of the top company to the UK was September 27, 2024.

15. Corp. retained the services of RSM UK Tax and Advisory Services to provide guidance on the method to return topco to the UK. As discussed in paragraph 16, when it was learned in August 2025 that Corp. was a void company Shaw Gibbs was engaged to provide advice.

16. Further complicating the transfer was when it was learned that Corp. was deemed a void corporation under Delaware law. As a void corporation, it was advised that Corp. could not own assets or liabilities and had no legal standing. Attached as Exhibit D is advice received from accountants and tax advisers at Shaw Gibbs regarding the issue of share allotment. Limited followed the advice provided by Shaw Gibbs regarding the share allotment.

17. Corp. has never maintained physical offices.

18. In responding to the Order, I have coordinated with Luke Gemici-Haggett to locate responsive documents. Because Corp. was simply a holding company, there are minimal responsive documents. Historically, the individuals who have held records are myself, Luke Gemici-Haggett, Peter Coyle, attorney, and external accountants. I am not

4

aware that FHL, other agents, Peter Coyle's law firm, or FGL liquidators would have any additional responsive documents.  These entities have been contacted to determine if they have any additional responsive documents.

19.     I will make myself available to discuss any of the content of my affidavit or any other questions the Receiver may have regarding Corp.

Further affiant sayeth naught.

David Breith

That on 30 July before me Lizel van Deventer, a Notary Public with practice number 42726, a duly sworn and admitted Notary practicing at Randburg, Gauteng South Africa, and in my presence executed this document before me.

Lizel van Deventer
NOTARY PUBLIC
E-mail: lizel@gebersohn.co.za
Lifestyle Riverfront Office Park
Office 5,7,&8 21 Bosbok Road
Randpark Ridge, Randburg
South Africa



I hereby certify that David Breith _____ executed this document in my presence at Randpark Ridge, Randburg, Gauteng, South Africa, on 30 July 2026

Quod Attestor
Notary Public
Lizel van Deventer
Practice number: 42726

5

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been electronically filed this 30th day of July, 2026. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

I further certify that Exhibit A to the Affidavit is being served via email transmission upon all counsel of record this 30th day of July, 2026. Exhibit A will also be submitted to the Court for manual filing on July 31, 2026.

/s/ James P. Silk, Jr.
James P. Silk, Jr.
*Counsel for Defendant Firexo*
*Corporation*

809895